1    SQUIRE, SANDERS & DEMPSEY L.L.P.
     Douglas J. Rovens (State Bar # 106562)
2    *drovens@ssd.com*
     James E. McDonald (admitted *Pro Hac Vice*)
3    *jmcdonaldt@ssd.com*
     Daniel T. Balmat (State Bar # 230504)
4    *dbalmat@ssd.com*
     One Maritime Plaza, Suite 300
5    San Francisco, CA  94111
     Telephone:   +1.415.954.0383
6    Facsimile:   +1.415.393.9887

7    Attorneys for
     ALPHAMED PHARMACEUTICALS CORP.
8

9                    UNITED STATES DISTRICT COURT

10                   NORTHERN DISTRICT OF CALIFORNIA

11        On Appeal from the United States Bankruptcy Court
               for the Northern District of California
12                   Hon. Edward D. Jellen

13   In re                              | Case No. 08-00825-SI

14   ARRIVA PHARMACEUTICALS, INC., a    | (Appeal from Adversary Proceeding No. 07-
     California corporation,            | 4181 in Chapter 11 Bankruptcy Case No. 07-
15                                       | 42767 AJ)
                     Debtor.
16
     Tax ID:  94-3287067                | **E-FILING**
17
     AlphaMed Pharmaceuticals Corp.     | **PLAINTIFF-APPELLANT ALPHAMED'S**
18                                       | **OPENING BRIEF IN APPEAL FROM**
             Plaintiff                   | **BANKRUPTCY ADVERSARY**
19                                       | **PROCEEDING**
             vs.
20
     Arriva Pharmaceuticals, Inc.
21
             Defendant.
22

23

24

25

26

27

28

SQUIRE, SANDERS &
DEMPSEY L.L.P.
One Maritime Plaza, Ste. 300
San Francisco, CA 94111

# TABLE OF CONTENTS

**Page**

TABLE OF CONTENTS .................................................................................................. i

TABLE OF AUTHORITIES ........................................................................................... ii

STATEMENT OF APPELLATE JURISDICTION ..................................................... 1

STATEMENT OF ISSUES .......................................................................................... 1

STANDARD OF REVIEW ........................................................................................... 1

STATEMENT OF THE CASE ...................................................................................... 1

STATEMENT OF FACTS ............................................................................................ 2

      A.     The History Between AlphaMed And Arriva Prior To The Commencement Of Litigation By Allan Wachter ................................................................................. 2

      B.     The Florida Federal Action. ......................................................................... 5

      C.     The Bankruptcy Court's Erroneous Dismissal Of The AlphaMed Complaint Seeking A Determination That The Protease/Arriva License Is Invalid. ......................................................................................................... 7

ARGUMENT .................................................................................................................. 9

I.     THE BANKRUPTCY COURT ERRED IN HOLDING THAT ALPHAMED LACKED STANDING. ...................................................................................... 9

      A.     The AlphaMed Complaint Satisfies The Notice Pleading Requirements Under The Federal Civil Rules. .................................................................... 9

      B.     AlphaMed Has Standing To Seek Declaratory Relief. ......................... 11

            1.     The AlphaMed Complaint Sets Forth a Justiciable Controversy ............. 12

            2.     AlphaMed Has a Direct Interest in the Resolution of the Controversy. ..................................................................................................... 13

            3.     AlphaMed Established Standing by Demonstrating that it is a Party-in-Interest with Both a Financial Interest and Practical Stake in the Outcome of Debtor Arriva's Chapter 11 Bankruptcy. ............................... 18

II.    THE BANKRUPTCY COURT ERRED IN ALTERNATIVELY HOLDING THAT THE ALPHAMED COMPLAINT SHOULD BE DISMISSED UNDER THE ROOKER-FELDMAN DOCTRINE ...................................................... 19

III.   THE BANKRUPTCY COURT FURTHER ERRED IN RELYING UPON FULL FAITH AND CREDIT TO DISMISS THE ALPHAMED COMPLAINT. ..................... 22

CONCLUSION ............................................................................................................. 25

SQUIRE, SANDERS &
DEMPSEY L.L.P.
One Maritime Plaza, Ste. 300
San Francisco, CA 94111

-i-

TABLE OF CONTENTS
Case No. 08-00825-SI

## TABLE OF AUTHORITIES

### U.S. CONSTITUTION

**Page**

U.S. Const. art. IV, § 1("Full Faith and Credit Clause") ............................................................ 22

### FEDERAL CASES

*In re Acequia, Inc.*, 787 F.2d 1352 (9th Cir. 1986)................................................................. 1

*AlphaMed Pharmaceuticals Corp. v. Arriva Pharmaceuticals, Inc.*, 432 F. Supp. 2d 1319
(S.D. Fla. 2006)................................................................................................................... 6, 25

*Batzel v. Smith*, 372 F. Supp. 2d 546 (C.D. Cal. 2005).............................................................. 23

*Bell Atl. Corp. v. Twombly*, 127 S. Ct. 1955 (2007) ................................................................ 10

*Bly-Magee v. California*, 236 F.3d 1014 (9th Cir. 2001)........................................................... 11

*In re Catholic Bishop of Spokane*, 329 B.R. 304 (Bankr. D. Wash. 2005)................... 7, 11, 12, 15

*See In re Commercial W. Fin. Corp.*, 761 F.2d 1329 (9th Cir. 1985) ......................................... 1

*Committee of Tort Litigants v. The Catholic Diocese of Spokane*, 2006 U.S. Dist. LEXIS
6025 (E.D. Wash. Jan. 24, 2006) .................................................................................... *passim*

*DCD Programs, Ltd. v. Leighton*, 833 F.2d 183 (9th Cir. 1987).................................................. 11

*Hood v. Encinitas Union Sch. Dist*, 486 F.3d 1099 (9th Cir. 2007). ........................................... 1

*District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462 (1983) .................................. 20

*Erickson v. Pardus*, 127 S. Ct. 2197 (2007) ........................................................................... 10

*Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280 (2005) ................................. 20, 21

*Fisher v. Tucson Sch. Dist.*, 625 F.2d 834 (9th Cir. 1980) ........................................................ 10

*In re Folks*, 211 B.R. 378 (9th Cir. B.A.P. 1997) .................................................................... 16

*In re Fondiller*, 707 F.2d 441 (9th Cir. 1983)..................................................................... 15, 16

*Gilligan v. Jamco Dev. Corp.*, 108 F.3d 246 (9th Cir. 1997) ................................................... 10

*In re Harbin*, 486 F.3d 510 (9th Cir. 2007) ............................................................................ 20

*In re Hutchinson*, 5 F.3d 750 (4th Cir. 1993) ......................................................................... 18

*Int'l Trade Admin. v. Rensselaer Polytechnic Inst.*, 936 F.2d 744 (2d Cir. 1991)....................... 19

*In re James Wilson Assocs.*, 965 F.2d 160 (7th Cir. 1992) ....................................................... 19

*Johnson v. De Grandy*, 512 U.S. 997 (1994) ......................................................................... 20

SQUIRE, SANDERS &
DEMPSEY L.L.P.
One Maritime Plaza, Ste. 300
San Francisco, CA 94111

**TABLE OF AUTHORITIES (Cont'd)**

Page

**FEDERAL CASES (Cont'd)**

*Kalb, Voorhis & Co. v. American Financial Corp.*, 8 F.3d 130 (2d Cir. 1993) ................... 15, 16

*Kougasian v. TMSL, Inc.*, 359 F.3d 1136 (9th Cir. 2004)................................................ 21

*In re Lopez*, 367 B.R. 99 (B.A.P. 9th Cir. 2007) ............................................... 20, 21

*Lance v. Dennis*, 546 U.S. 459 (2006) ........................................................ 20

*Noel v. Hall*, 341 F.3d 1148 (9th Cir. 2003) ......................................... 20, 23

*Or. Advocacy Ctr. v. Mink*, 322 F.3d 1101 (9th Cir. 2003) ....................................... 12

*Palmer & Cay, Inc. v. Marsh & McLennan Cos.*, 404 F.3d 1297 (11th Cir. 2005) .................... 23

*In re Peachtree Lane Assocs., Ltd.*, 188 B.R. 815 (N.D. Ill. 1995) ............................. 18

*In re Phenylpropanolamine (PPA) Liab. Litig.*, 460 F.3d 1217 (9th Cir. 2006) .................. 10

*Rooker v. Fidelity Trust Co.*, 263 U.S. 413 (1923) ........................................ 20

*Semtek Int'l Inc. v. Lockheed Martin Corp.*, 531 U.S. 497 (2000) ............................. 23

*Sierra Club v. Morton*, 405 U.S. 727 (1972) .............................................. 12

*In re Stoll*, 252 B.R. 492 (B.A.P. 9th Cir. 2000)............................................ 11

*In re Thirteen Chapter 7 Cases of Former Trustee Germain*, 182 B.R. 375 (Bankr. D. Conn. 1995)................................................................................... 18

*Unofficial Comm. of Zero Coupon Noteholders v. The Grand Union Co.*, 179 B.R. 56 (Bankr. D. Del. 1995)................................................................... 18

**FEDERAL STATUTES**

Bankruptcy Code § 1109................................................................. 18

11 U.S.C. § 1109...................................................................... 18

11 U.S.C. § 1101 *et seq.*............................................................ 18

28 U.S.C. § 158(a) ..................................................................... 1

28 U.S.C. § 1738 ................................................................ *passim*

Fed. R. Civ. P. 8 .................................................................... 10

Fed. R. Civ. P. 8(a)............................................................... 9, 10

Fed. R. Civ. P. 12(b) ............................................................. 7, 9

SQUIRE, SANDERS &
DEMPSEY L.L.P.
One Maritime Plaza, Ste. 300
San Francisco, CA 94111

-iii-

TABLE OF AUTHORITIES
Case No. 08-00825-SI

## TABLE OF AUTHORITIES (Cont'd)

**Page**

### FEDERAL STATUTES (Cont'd)

Fed. R. Civ. P. 12(b)(6)..................................................................................................... 11

Fed. R. Civ. P. 50 ............................................................................................................... 6

### STATE CASES

*Baxas Howell Mobley, Inc. v. BP Oil Co.*, 630 So. 2d 207 (Fla. Ct. App. 1993) ........................ 23

*Carnival Corp. v. Middleton*, 941 So. 2d 421 (Fla. Ct. App. 2006) ............................................ 24

*Chaney Bldg. Co. v. City of Tucson,* 716 P.2d 28 (Ariz. 1986) .................................................... 24

*Dadeland Depot, Inc. v. St. Paul Fire & Marine Ins. Co.*, 945 So. 2d 1216 (Fla. 2006) ............. 24

*Hicks v. Hoagland*, 953 So. 2d 695 (Fla. Ct. App. 2007) ........................................................... 23

*State Street Bank & Trust Co. v. Badra*, 765 So. 2d 251 (Fla. Ct. App. 2000) ........................... 23

### MISCELLANEOUS

*Allan Wachter, et al. v. John Lezdey, et al.*, Case No. CV1999-009334 (Superior Court for the State of Arizona, Maricopa County) (the "Arizona StateAction") ........................................... 5

*AlphaMed Pharmaceuticals Corp. v. Arriva Pharmaceuticals, Inc.*, Case No. 03-20078 (S.D. Fla.) (the "Florida Federal Action") ...................................................................................... 5

1 COLLIER ON BANKRUPTCY P 1109.04[4] (Alan N. Resnick & Henry J. Sommer eds., 15th ed. rev. 2007) ................................................................................................................ 19

SQUIRE, SANDERS & DEMPSEY L.L.P.
One Maritime Plaza, Ste. 300
San Francisco, CA 94111

TABLE OF AUTHORITIES
Case No. 08-00825-SI

1

**STATEMENT OF APPELLATE JURISDICTION**

2

Appellant AlphaMed Pharmaceuticals Corp. ("AlphaMed") brings this appeal from the

3

final judgment entered by the Bankruptcy Court in Adversary Proceeding No. 07-4181 in *In re*

4

*Arriva Pharmaceuticals, Inc.*, Bankruptcy Case No. 07-42767 (Bankr. N.D. Cal.).   On January

5

11, 2008, the Bankruptcy Court entered its order dismissing AlphaMed's Complaint for

6

Declaratory Relief with prejudice.  (Combined Appendix for Appeal Nos. 08-0691, 08-0692, 08-

7

0693 AND 08-0825 ("Apx.") filed concurrently at 463-66).

8

AlphaMed timely filed its Notice of Appeal on January 23, 2008.  (Apx. at 467-68).  This

9

Court has jurisdiction under 28 U.S.C. § 158(a)(1).

10

**STATEMENT OF ISSUES**

11

1.      Did the Bankruptcy Court err in granting Reorganized Debtor-Appellee Arriva

12

Pharmaceuticals, Inc.'s ("Arriva") motion to dismiss with prejudice AlphaMed's Complaint for

13

Declaratory Relief on the ground that AlphaMed purportedly lacked standing?

14

2.      Did the Bankruptcy Court err in holding alternatively that AlphaMed's Complaint

15

should be dismissed under the very limited *Rooker-Feldman* doctrine?

16

3.      Did the Bankruptcy Court err in holding alternatively that AlphaMed's Complaint

17

should be dismissed based upon the full faith and credit statute, 28 U.S.C. § 1738?

18

**STANDARD OF REVIEW**

19

The Bankruptcy Court's conclusions of law are reviewed *de novo*, and this Court may

20

substitute its own legal conclusions for those of the Bankruptcy Court.  *See In re Commercial W.*

21

*Fin. Corp.*, 761 F.2d 1329, 1333 (9th Cir. 1985); *In re Acequia, Inc.*, 787 F.2d 1352, 1357 (9th

22

Cir. 1986).  Mixed questions of law and fact also are reviewed *de novo*.  *Hood v. Encinitas Union*

23

*Sch. Dist*, 486 F.3d 1099, 1104 (9th Cir. 2007).

24

**STATEMENT OF THE CASE**

25

On August 29, 2007, Arriva filed a voluntary petition for relief under Chapter 11 of the

26

Bankruptcy Code.  (Apx. at 001-003).  On October 30, 2007, AlphaMed filed a Complaint for

27

Declaratory Relief (the "AlphaMed Complaint") against Arriva in the Bankruptcy Court.  (Apx.

28

at 059-067).  AlphaMed sought a declaration that a purported license agreement between Protease

SQUIRE, SANDERS &
DEMPSEY L.L.P.
One Maritime Plaza, Ste. 300
San Francisco, CA 94111

-1-

ALPHAMED'S APPEAL FROM ADVERSARY
PROCEEDING
Case No. 08-00825-SI

1  Sciences, Inc. ("Protease") and Arriva (hereinafter the "Protease/Arriva License") scheduled by

2  Arriva as an asset was not property of the estate.

3      On November 7, 2007, Arriva moved to dismiss the AlphaMed Complaint. (Apx. at 139-

4  157). On December 13, 2007, the Bankruptcy Court held a hearing on Arriva's motion and

5  dismissed the AlphaMed Complaint, principally on the ground that AlphaMed lacked standing.

6  (Apx. at 469-523).

7      On January 11, 2008, the Bankruptcy Court entered a final order dismissing the

8  AlphaMed Complaint with prejudice. (Apx. at 463-66). This timely appeal ensued. (Apx. 467-

9  68).

10                          **STATEMENT OF FACTS**

11      The AlphaMed Complaint seeks a declaration that the purported Protease/Arriva License,

12  which is the most critical claimed asset of Arriva and the backbone of its business and

13  reorganization plan, is not property belonging to Arriva's estate. (Apx. at 059-067). This is the

14  type of controversy that routinely is decided by bankruptcy courts because it is essential that the

15  assets of the debtor be determined. AlphaMed's adversary proceeding in Arriva's Chapter 11

16  case is part of AlphaMed's overall effort to reverse a long-running scheme by Arriva and its

17  affiliates to wrongfully assert ownership and control over intellectual property that was

18  fraudulently obtained by Arriva and now belongs to AlphaMed. As the history between the

19  parties reveals, Arriva has attempted to deny AlphaMed its legal rights and has asserted rights to

20  intellectual property that rightfully belong to AlphaMed, not Arriva.

21  **A.    The History Between AlphaMed And Arriva Prior To The Commencement
22         Of Litigation By Allan Wachter.**

23      In the early 1990s, John Lezdey ("Lezdey"), a patent attorney, in his name and that of

24  Allan Wachter ("Wachter"), a doctor, patented certain methods for using a protein known as

25  Alpha1-antitrypsin ("AAT"), an anti-inflammatory agent that has proven to be very successful in

26  treating several medical conditions (the "AAT Patents"). Thereafter, Lezdey and Wachter formed

27  a Nevada limited liability company known as Sonoran Desert Chemicals, L.L.C. ("Sonoran").

28  Lezdey and Wachter assigned all of their rights in the AAT Patents to Sonoran, which was owned

SQUIRE, SANDERS &
DEMPSEY L.L.P.
One Maritime Plaza, Ste. 300
San Francisco, CA 94111
-2-
ALPHAMED'S APPEAL FROM ADVERSARY
PROCEEDING
Case No. 08-00825-SI

1   by Lezdey and his entities and Wachter and his entities.  Lezdey and Wachter also formed

2   Protease to act as Sonoran's agent.  (Apx. at 062).

3       On or around December 31, 1992, Sonoran entered into an agreement with Protease (the

4   "Protease Agency Agreement") whereby Protease was appointed as Sonoran's agent for various

5   purposes including negotiating and entering into licensing, distribution and other agreements for

6   and on behalf of Sonoran worldwide, subject to Sonoran's approval.  (Apx. at 062).  The Protease

7   Agency Agreement specifically provided, however, that Sonoran retained all rights to the patents.

8   (Apx. at 062, 110).  The Protease Agency Agreement also expressly provided that any licensing

9   agreement entered into by Protease had to be ratified by Sonoran.  (Apx. at 062, 110).

10      In 1997, Arriva (then known as AlphaOne Pharmaceuticals, Inc.) was incorporated in

11  California by its founders, Lezdey, Wachter, Philip Barr ("Barr") (whom Lezdey and Wachter

12  brought in to head up research and development work), and David Kent (whom Barr brought in to

13  head up investment related activities).  (Apx. at 062).

14      In November 1997 Arriva and Protease signed a Term Sheet, which outlined the terms of

15  a proposed license agreement.  As a precondition to moving forward with an exclusive,

16  worldwide license agreement, Arriva was required to meet express financial milestones.  The

17  Term Sheet, to remain in effect for a period of twelve months, was signed by both Lezdey and

18  Wachter.  (Apx. at 063).

19      During the spring of 1998 Arriva and Protease began negotiating the terms of a proposed

20  license agreement that would be executed on the condition that the financial requirements and

21  other conditions of the Term Sheet were met and all other terms and conditions were satisfactory

22  to Lezdey and Sonoran.  As a result of disagreements over the terms of the proposed license and

23  Arriva's failure to raise the required capital, Protease consistently refused to enter into any license

24  agreement with Arriva.  (Apx. at 063).

25      In November 1998, Lezdey, on behalf of Protease, agreed to extend the Term Sheet for an

26  additional thirty days, through December 31, 1998, based on representations that Arriva was close

27  to obtaining the required financing.  The funding, however, was never achieved and the Term

28  Sheet expired by its own terms on December 31, 1998.  (Apx. at 063-064).

SQUIRE, SANDERS &
DEMPSEY L.L.P.
One Maritime Plaza, Ste. 300
San Francisco, CA 94111

-3-

ALPHAMED'S APPEAL FROM ADVERSARY
PROCEEDING
Case No. 08-00825-SI

1    Unbeknownst to Lezdey at the time, Arriva induced Wachter, who was an officer and

2    board member of Arriva at the time, to sign on Protease's behalf the draft Protease/Arriva

3    License.  (Apx. at 064).  Wachter had no authority to sign the agreement on behalf of Protease or

4    Sonoran.  At the time the purported Protease/Arriva License was signed by Wachter, Lezdey was

5    the president of Protease.  Protease's bylaws provide that the president (Lezdey) held the office of

6    Chief Executive Officer.  (Apx. at 064, 101).  Wachter was the secretary and vice president of

7    Protease—positions that, according to the Protease bylaws, did not afford him the right to execute

8    the purported Protease/Arriva License.  Furthermore, because Protease never owned the patents,

9    any license entered into by Protease had to be ratified by Sonoran, which it was not.  (Apx. at

10   064).   The limitation on Wachter's authority was known to Arriva and to its officers and

11   directors.  (Apx. at 064, 386-430).

12   Moreover, Protease did not have the ability to convey an interest in the AAT patents

13   because all rights, title, and interest in the patents were owned by Sonoran for the United States

14   and by Lezdey and Wachter, individually, throughout the rest of the world.   Furthermore, as

15   Arriva knew, Sonoran and Lezdey had to approve any licensing agreement entered into by

16   Protease.  Arriva did not seek or obtain Sonoran's consent and knew Lezdey did not approve or

17   ratify the agreement on Sonoran's behalf.  (Apx. at 064-065).

18   In or around March or April 1999, based on the unauthorized and fraudulent

19   Protease/Arriva License, Arriva entered into an unauthorized sublicense with Prometic

20   BioSciences for exploitation of the AAT patents for dermatological applications.  In or around

21   July 1999, based on the unauthorized and fraudulent Protease/Arriva License, Arriva entered into

22   a joint venture agreement with Baxter Healthcare Corporation for the worldwide right to make,

23   use, and sell AAT.  Arriva failed to obtain the required consent and approval of Protease or

24   Sonoran to enter into these agreements.  (Apx. at 065).

25   Protease informed Baxter that Arriva did not have rights to the AAT patents or any license

26   under which to issue a sublicense.  In response, Arriva and Wachter filed or sponsored five

27   separate lawsuits concurrently in four different states against John Lezdey, his family, and his

28   companies, including a 1999 lawsuit brought in Arizona state court by Wachter and his

SQUIRE, SANDERS &
DEMPSEY L.L.P.
One Maritime Plaza, Ste. 300
San Francisco, CA 94111

-4-

ALPHAMED'S APPEAL FROM ADVERSARY
PROCEEDING
Case No. 08-00825-SI

1  companies against John Lezdey, his wife Noreen, his sons Darren and Jarrett, and several of their

2  companies.  *See Allan Wachter, et al. v. John Lezdey, et al.*, Case No. CV1999-009334 (Superior

3  Court for the State of Arizona, Maricopa County) (the "Arizona State Action").[1]

4      **B.      The Florida Federal Action.**

5      In response to wrongful conduct by Arriva, AlphaMed filed a lawsuit against Arriva in the

6  United States District Court for the Southern District of Florida alleging misappropriation of trade

7  secrets, tortious interference with business relations, and unfair competition.  *See AlphaMed*

8  *Pharmaceuticals Corp. v. Arriva Pharmaceuticals, Inc.*, Case No. 03-20078 (S.D. Fla.) (the

9  "Florida Federal Action").  The case was tried to a jury and after a three and a half month trial

10 resulted in a unanimous jury verdict in favor of AlphaMed against Arriva for $78 million,

11 including $30 million in punitive damages.

12     During the more than three months of trial, the validity of the purported Protease/Arriva

13 License was directly at issue.  The jury ultimately returned a special verdict specifically finding

14 that the Protease/Arriva License was *invalid* and that Arriva *knew* that it was invalid.  (Apx. at

15 301-302).

---

16

17 [1]  On February 2, 2000, Wachter obtained a preliminary injunction in the Arizona State Action
   enjoining John Lezdey and his family from acting on behalf of Protease or Sonoran or contacting

18 any business prospects of Protease's without Wachter's consent.  (Apx. at 359-367).  Just prior to
   the trial, the Arizona court entered judgment in favor of Wachter and against Darren and Jarett

19 Lezdey on the issue of liability as a discovery sanction.  (Apx. at 363-364).  The trial on the issue
   of damages proceeded against John Lezdey's family *in abstentia*, and the Arizona court

20 ultimately entered a judgment against Noreen, Darren and Jarett Lezdey, and J.L. Technology in
   favor of Wachter.  (Apx. at 381-385).  The Court also entered a Permanent Injunction (Apx. 162-

21 176), which, among other things, purported to find that the draft license agreement between
   Protease and Arriva signed by Wachter was in effect because Lezdey advised Wachter that the

22 agreement was valid and authorized Wachter to sign the agreement—a finding that a federal jury
   in Florida unanimously rejected (after hearing all of the evidence and arguments presented by

23 both Arriva and AlphaMed).  The validity of the Protease/Arriva License was not actually
   litigated on the merits because the so-called factual findings set forth in the Permanent Injunction

24 were the product of a default judgment against the defendants who were not represented by
   counsel.  Those findings were prepared by counsel and signed virtually verbatim by the Arizona

25 court.  (Apx. at 162-176).

26 *By their express terms, none of the Arizona injunctions bind AlphaMed.*  (Apx. at 359, 162-176,
   178-181).  Indeed, neither AlphaMed nor Arriva were parties to the Arizona State Action.  In

27 addition, John Lezdey is not bound by the Permanent Injunction or judgment entered by the
   Arizona court because he filed for personal bankruptcy on January 14, 2002, prior to the

28 commencement of the Arizona trial.  (Apx. at 368-380).  To date, Arriva has failed to obtain a
   permanent injunction against Mr. Lezdey in the Arizona State Action.  (Apx. at 310-346).

SQUIRE, SANDERS &
DEMPSEY L.L.P.
One Maritime Plaza, Ste. 300
San Francisco, CA 94111

-5-

ALPHAMED'S APPEAL FROM ADVERSARY
PROCEEDING
Case No. 08-00825-SI

1    Specifically, when asked by an interrogatory to specify unauthorized acts of Arriva, the

2    jury foreperson wrote out in longhand the following jury finding:

3        When AlphaOne/Arriva improperly accepted the signature of Alan
         [sic] Wachter as Protease Science CEO the process of unfair
4        competition began as the Protease Science By-Laws do not provide
         for said office and give authority for signing contracts to the
5        President.

6    (Apx. at 066; Apx. at 301-302).

7    Following trial, Arriva moved for and obtained a post-verdict judgment as a matter of law

8    (the "JNOV") under Federal Rule of Civil Procedure 50(b).  The Florida District Court ultimately

9    granted post-trial relief to Arriva on the narrow ground that AlphaMed, as a start-up company,

10   failed to prove lost profit damages (a finding that AlphaMed vigorously contests and has appealed

11   to the Eleventh Circuit Court of Appeals).  Significantly, however, the Florida District Court did

12   *not* overturn or set aside the jury's special verdict as it relates to the invalidity of the

13   Protease/Arriva License or Arriva's tortious actions against AlphaMed.  Indeed, Arriva never

14   challenged the jury's factual findings regarding liability.  To the contrary, as the District Court

15   correctly recognized, "AlphaMed presented competent and sufficient evidence to prove to the

16   jury's satisfaction that 1) Arriva and Spinelli exhibited tortious and anti-competitive behavior,

17   and that 2) AlphaMed was unable to execute its business plan."  *AlphaMed*, 432 F. Supp. 2d at

18   1334.  The District Court entered its JNOV solely because it concluded (erroneously) that

19   AlphaMed had failed to "link these findings" regarding Arriva's conduct to the actual damages

20   suffered by AlphaMed in the form of lost anticipated profits.  *Id.*[2]

21   AlphaMed's lawsuit against Arriva is significant because it is the *one* and *only* time the

22   validity of the purported Protease/Arriva License, which is the most critical claimed asset of

23   Arriva and the backbone of its reorganization plan, actually has been litigated by a party to the

24   alleged license.

25   *///*

26

---

27   [2]    The Florida District Court's erroneous decision on damages is the key issue in AlphaMed's
     pending appeal before the Eleventh Circuit, which is scheduled to hear oral argument on the
28   matter on August 27, 2008.

SQUIRE, SANDERS &
DEMPSEY L.L.P.
One Maritime Plaza, Ste. 300
San Francisco, CA 94111

-6-

ALPHAMED'S APPEAL FROM ADVERSARY
PROCEEDING
Case No. 08-00825-SI

C.     **The Bankruptcy Court's Erroneous Dismissal Of The AlphaMed Complaint Seeking A Determination That The Protease/Arriva License Is Invalid.**

On October 30, 2007, AlphaMed filed a Complaint for Declaratory Relief against Arriva in the Bankruptcy Court in Adversary Proceeding No. 07-4181. (Apx. at 059-067). AlphaMed sought a determination that the purported Protease/Arriva License was not property of the estate.

In demonstrating particularized injury to itself and distinguishing itself from the other bankruptcy creditors, AlphaMed alleged in paragraph 5 of the AlphaMed Complaint that it "is a creditor of the Debtor, and has an interest in the intellectual property that is the subject of the purported license agreement . . . ." (Apx. at 060). AlphaMed further alleged in paragraph 11 of the Complaint that it received the interest in the property "by assignment" from Sonoran. (Apx. at 061).

On December 13, 2007, the Bankruptcy Court held a hearing and dismissed the AlphaMed Complaint. (Apx. at 469-523). The Court set forth several reasons to support its ruling.

First, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, the Bankruptcy Court held that AlphaMed had no standing to bring the adversary action. The Court concluded that AlphaMed had not alleged "any particularized injury" because it was "not trying to quiet [its] own title to anything." (Apx. at 514). According to the Bankruptcy Court, because AlphaMed was seeking a declaration that a particular asset *was not* property of the estate, as opposed to a declaration that the asset *was* part of the estate, AlphaMed's cause of action was too generalized and there was "no specific injury" alleged. (Apx. at 514-515). According to the Bankruptcy Court, "[i]f there were standing to assert such a cause of action it would lie in every single creditor in the estate," and "the law is that not every single creditor in the estate has the right to prosecute actions to determine what is and isn't property of the estate . . . ." (Apx. at 515).

In so ruling, the Bankruptcy Court expressly rejected AlphaMed's reliance on the decisions in *In re Catholic Bishop of Spokane*, 329 B.R. 304 (Bankr. D. Wash. 2005), and *Committee of Tort Litigants v. The Catholic Diocese of Spokane*, 2006 U.S. Dist. LEXIS 6025 (E.D. Wash. Jan. 24, 2006), which held that a creditor had standing to seek a declaration as to whether assets are part of the bankruptcy estate. The Bankruptcy Court initially attempted to

SQUIRE, SANDERS &
DEMPSEY L.L.P.
One Maritime Plaza, Ste. 300
San Francisco, CA 94111

-7-

ALPHAMED'S APPEAL FROM ADVERSARY
PROCEEDING
Case No. 08-00825-SI

1   distinguish *Catholic Diocese*.  The Bankruptcy Court first found it significant that the case

2   involved "an action to bring in property of the estate not to exclude property from the estate."

3   (Apx. at 515).  The Court further stated that unlike the party in *Catholic Diocese*, AlphaMed was

4   not a creditor on the record before it.  The Bankruptcy Court, however, also went further and

5   rejected *Catholic Diocese* outright on the ground that it was "wrongly decided" and "I don't want

6   to follow it."  (Apx. at 515).  The Bankruptcy Court stated that "to the extent *Catholic Diocese*

7   would support AlphaMed's position, I decline to follow it and believe that it is not correctly

8   decided."  (Apx. at 516-517).

9        As an alternative ground for dismissing the AlphaMed Complaint, the Bankruptcy Court

10  stated that "AlphaMed is, indeed, subject to the *Rooker-Feldman* doctrine."  (Apx. at 517).

11  However, the Bankruptcy Court never explained how AlphaMed could be bound by the Arizona

12  State Action given that AlphaMed was never a party to that action and was thus not a "losing

13  party" to the state proceedings—a necessary requirement for applying the *Rooker-Feldman*

14  doctrine.  (Apx. at 517).

15       Finally, the Bankruptcy Court stated that "[o]n top of *Rooker-Feldman* there is . . . 28

16  U.S.C. 1738, which is a full-faith-and-credit statute which requires Federal Courts [to] give full

17  faith and credit to decisions of state courts.  And here, I have to give full faith and credit to the

18  Florida court's ruling."  (Apx. at 517).  The Bankruptcy Court never provided additional

19  reasoning to support this alternative ruling.  It did not explain how the Florida litigation (which

20  was a federal action, not state action) supported the dismissal of the AlphaMed Complaint given

21  that there was no finding in that lawsuit that the Protease/Arriva License was valid.  To the

22  contrary, the Florida jury in the Florida Federal Action unanimously found that the

23  Protease/Arriva License was *invalid* and that Arriva *knew* that it was invalid.  (Apx. at 301-302).

24  ///

25  ///

26  ///

27  ///

28  ///

SQUIRE, SANDERS &
DEMPSEY L.L.P.
One Maritime Plaza, Ste. 300
San Francisco, CA 94111

-8-

ALPHAMED'S APPEAL FROM ADVERSARY
PROCEEDING
Case No. 08-00825-SI

1

## ARGUMENT

2       The Bankruptcy Court erred in dismissing the AlphaMed Complaint.  In concluding that

3  AlphaMed lacked standing to seek a declaration that the Protease/Arriva License was invalid and

4  thus did not belong to Arriva's estate, the Bankruptcy Court rejected well-reasoned bankruptcy

5  authority that is directly on point and which fully supports AlphaMed's standing in this case.

6       The Bankruptcy Court also erred as a matter of law in alternatively relying upon the

7  *Rooker-Feldman* doctrine to give effect to the findings in the Arizona State Action in order to

8  preclude AlphaMed from seeking declaratory relief in bankruptcy court in this case.  As

9  explained below, the Bankruptcy Court failed to apply the basic elements of this doctrine.

10       Finally, the Bankruptcy Court erred in invoking 28 U.S.C. § 1738 to dismiss the

11  AlphaMed Complaint based on the Florida Federal Action.  The Florida action actually supports

12  (not defeats) AlphaMed's claim for declaratory relief because the jury unanimously found that the

13  Protease/Arriva License was in fact invalid.

14       For the reasons set forth below, the Bankruptcy Court's decision dismissing the

15  AlphaMed Complaint should be reversed.

16  **I.**    **THE BANKRUPTCY COURT ERRED IN HOLDING THAT ALPHAMED**

17       **LACKED STANDING.**

18       As the allegations of the Complaint demonstrate, AlphaMed has pled sufficient facts to

19  establish its standing to seek declaratory relief.  The Bankruptcy Court's holding to the contrary

20  directly conflicts with the letter and intent of the bankruptcy laws.  The Bankruptcy Court erred in

21  granting Arriva's motion to dismiss under Federal Civil Rule 12(b)(6).

22      **A.**    **The AlphaMed Complaint Satisfies The Notice Pleading Requirements Under**

23           **The Federal Civil Rules.**

24       First, as an initial matter, the AlphaMed Complaint clearly satisfies the minimal notice

25  pleading requirements under the Federal Rules.

26       A Rule 12(b)(6) motion tests the legal sufficiency of the claims asserted in the complaint.

27  *See* Fed. R. Civ. P. 12(b)(6).  Rule 12(b)(6) must be read in conjunction with Rule 8(a), which

28  requires only a "short and plain statement of the claim showing that the pleader is entitled to

SQUIRE, SANDERS &
DEMPSEY L.L.P.
One Maritime Plaza, Ste. 300
San Francisco, CA 94111

-9-

ALPHAMED'S APPEAL FROM ADVERSARY
PROCEEDING
Case No. 08-00825-SI

1   relief."  Fed. R. Civ. P. 8(a).  "The Rule 8 standard contains 'a powerful presumption against

2   rejecting pleadings for failure to state a claim.'"  *Gilligan v. Jamco Dev. Corp.*, 108 F.3d 246, 249

3   (9th Cir. 1997) (citations and quotations omitted).  A complaint need only set forth enough facts

4   to state a claim to relief that is "plausible on its face."  *See Bell Atl. Corp. v. Twombly*, 127 S. Ct.

5   1955, 1974 (2007).  Thus, after accepting the factual allegations as true (which this Court must

6   do), the claims must only be plausible (which is consistent with the minimal notice pleading

7   requirements of Civil Rule 8).  *Id.* at 1965.  As the United States Supreme Court has stated,

8   "[s]pecific facts are not necessary; the statement need only 'give the defendant fair notice of what

9   the . . . claim is and the grounds upon which it rests.'"  *Erickson v. Pardus*, 127 S. Ct. 2197, 2200

10  (2007) (quoting *Twombly*, 127 S. Ct. 1955).

11         The AlphaMed Complaint clearly satisfies these pleading requirements.  In paragraph 5 of

12  the AlphaMed Complaint, AlphaMed alleged that it "is a creditor of the Debtor, *and has an*

13  *interest in the intellectual property that is the subject of the purported license agreement . . . .*"

14  (Apx. at 060).  AlphaMed further alleged in paragraph 11 of the Complaint that it received the

15  interest in the property "by assignment" from Sonoran.  (Apx. at 061).  Thus, AlphaMed plainly

16  and concisely alleged that it owns an interest in property that Arriva falsely claimed was property

17  of the estate.

18         The AlphaMed Complaint is also plausible.  Since the so-called factual findings from the

19  Arizona State Action do not—and cannot—have preclusive effect against AlphaMed in this case

20  (under any theory advanced by Arriva), there is no other judicial decision establishing that the

21  purported Protease/Arriva License is valid.  Quote to the contrary, the jury in the Florida Federal

22  Action unanimously found that the Protease/Arriva License was *invalid* and that Arriva *knew* that

23  it was invalid.  (Apx. at 301-302).  Thus, the AlphaMed Complaint plausibly alleges that

24  AlphaMed owns an interest in property that is the subject of the invalid Protease/Arriva License,

25  and that AlphaMed received that interest "by assignment" from Sonoran.  *See Twombly*, 127 S.

26  Ct. at 1965.[3]

27  _____

28  [3]     The fact that Arriva disputed the validity of the assignment does not affect the plausibility of
        AlphaMed's allegations.  To the contrary, if Arriva believed that AlphaMed's interest in the

SQUIRE, SANDERS &
DEMPSEY L.L.P.
One Maritime Plaza, Ste. 300
San Francisco, CA 94111

-10-

ALPHAMED'S APPEAL FROM ADVERSARY
PROCEEDING
Case No. 08-00825-SI

1    For these reasons, the Bankruptcy Court erred in holding that the AlphaMed Complaint

2    failed to satisfy the pleading requirements under the Federal Rules.[4]

3    ### B.    AlphaMed Has Standing To Seek Declaratory Relief.

4    The Bankruptcy Court erred in holding that AlphaMed lacked standing to seek a

5    declaration that the purported Protease/Arriva License is not property of Arriva's estate.  Courts

6    in very similar cases have held that parties such as AlphaMed have standing to seek declarations

7    to determine whether certain assets are part of the bankruptcy estate.  Indeed, courts properly

8    have recognized that such adversary proceedings should be *encouraged*, not dismissed.  In this

9    case, AlphaMed's adversary proceeding is especially important because it addresses the single

10   most critical claimed asset of Arriva upon which its entire business enterprise hinges.

11   Lack of standing is a "subspecies of dismissal for failure to state a claim under Fed. R.

12   Civ. P. 12(b)(6)."  *In re Stoll*, 252 B.R. 492, 495 (B.A.P. 9th Cir. 2000).  There is a two-part

13   analysis for determining standing, as set forth by the bankruptcy court in *In re Catholic Bishop of*

14   *Spokane*, 329 B.R. 304 (Bankr. D. Wash. 2005), *aff'd in relevant part*, *Catholic Diocese*, 2006

15   U.S. Dist. LEXIS 6025:

16   (1)    Does the subject matter of the complaint present a justiciable
17          controversy?

18   _____

19   intellectual property at issue is invalid or that the AlphaMed assignment from Sonoran is
     ineffective, then it could take discovery to disprove AlphaMed's interest.  *See In re*
20   *Phenylpropanolamine (PPA) Liab. Litig.*, 460 F.3d 1217, 1240 (9th Cir. 2006) (stating that
     discovery reveals what evidence the opposing party has, thereby helping determine which facts
21   are truly undisputed).  But AlphaMed was not required to plead more detail in order to state a
     clam for relief, and it should not have been required to prove its case at the pleading stage.  For
22   purposes of Rule 12(b)(6), AlphaMed alleged sufficient facts demonstrating that it has suffered or
     is threatened with a "distinct and palpable injury *to* [*itself*]" to satisfy the constitutional
23   requirements for standing.  *Fisher v. Tucson Sch. Dist.*, 625 F.2d 834, 837 (9th Cir. 1980)
     (emphasis added).

24   [4]    To the extent the Bankruptcy Court concluded that AlphaMed failed to allege sufficient facts
     to state a claim (and more should *not* be required), the Bankruptcy Court should have granted
25   AlphaMed leave to amend.  The Ninth Circuit consistently has held that "leave to amend should
     be granted unless the district court determines that the pleading could not possibly be cured by the
26   allegation of other facts."  *Bly-Magee v. California*, 236 F.3d 1014, 1019 (9th Cir. 2001) (holding
     that plaintiff shall be permitted to amend) (citation and internal quotations omitted).  "Rule 15's
27   policy of favoring amendments to pleadings should be applied with '*extreme liberality*.'"  *DCD*
     *Programs, Ltd. v. Leighton*, 833 F.2d 183, 186 (9th Cir. 1987) (reversing denial of leave to
28   amend) (emphasis added).

SQUIRE, SANDERS &
DEMPSEY L.L.P.
One Maritime Plaza, Ste. 300
San Francisco, CA 94111

-11-

ALPHAMED'S APPEAL FROM ADVERSARY
PROCEEDING
Case No. 08-00825-SI

1      (2)    Does the person seeking the relief have a direct interest in the resolution of the controversy?

2

3  *Id.* at 316. *See also Sierra Club v. Morton*, 405 U.S. 727, 731 (1972) (standing requires a

4  "sufficient stake in an otherwise justiciable controversy"); *Or. Advocacy Ctr. v. Mink*, 322 F.3d

5  1101, 1108 (9th Cir. 2003) (asking whether plaintiff has "alleged" a "personal stake in the

6  outcome of the controversy") (citation omitted).

7      The AlphaMed Complaint satisfies each of these elements and thus states a cognizable

8  claim for relief.

9      1.    **The AlphaMed Complaint Sets Forth a Justiciable Controversy.**

10      First, the AlphaMed Complaint sets forth a justiciable controversy. As the allegations of

11  the AlphaMed Complaint demonstrate, there exists a live dispute regarding whether a valuable

12  asset—the purported Protease/Arriva License—is actually owned by Arriva. As explained above,

13  the alleged Protease/Arriva License is the single most critical claimed asset of Arriva and the

14  backbone of its reorganization plan. Without this asset, Arriva's entire business enterprise is in

15  jeopardy.

16      This is the type of controversy that should be decided (and routinely *is* decided) by the

17  bankruptcy courts. *See In re Catholic Bishop of Spokane*, 329 B.R. at 316 ("As the identification

18  of property of the estate constitutes a core proceeding arising under Title 11 and is an issue

19  necessarily addressed in every case arising under Title 11, there can be no doubt that this is the

20  type of controversy which is to be addressed in a judicial proceeding."); *Catholic Diocese*, 2006

21  U.S. Dist. LEXIS 6025, at *16 ("It is at the heart of a Chapter 11 bankruptcy proceeding as to

22  what the assets are of the debtor, so that the creditors who vote upon a reorganization plan and the

23  Bankruptcy Court can have before it a full understanding of what is available to satisfy the claims

24  of the creditors.").

25      In moving to dismiss, Arriva never disputed that the AlphaMed Complaint sets forth a

26  justiciable controversy. The Bankruptcy Court also never held otherwise. Thus, it is clear that

27  the AlphaMed Complaint satisfies the first part of the two-part test for determining standing.

28  ///

1

2.      **AlphaMed Has a Direct Interest in the Resolution of the Controversy.**

2

Second, AlphaMed also alleged a sufficient stake in the resolution of this justiciable

3

controversy to seek relief from the Bankruptcy Court, thus satisfying the second part of the two-

4

part test for standing.

5

The allegations in the AlphaMed Complaint demonstrate that AlphaMed has suffered

6

direct injury, as found by the jury in the Florida District Court litigation, and thus it has a direct

7

interest and personal stake in the resolution of the controversy regarding the validity of the

8

Protease/Arriva License.  Accepting the facts of the Complaint as true (as the Bankruptcy Court

9

was required to do), AlphaMed alleged it has received "by assignment" from Lezdey ("as

10

inventor") and Sonoran an interest in the property that AlphaMed seeks to have excluded from

11

Arriva's estate.  (Apx. at 061).  AlphaMed clearly has a sufficient interest in the property, and if

12

AlphaMed prevails in this action, that property would not be subject to the claims of other

13

creditors.

14

Ultimately, the issue before this Court regarding AlphaMed's standing is simple and can

15

be illustrated by the following example: Party A owns the prized football caught by Dwight Clark

16

from Joe Montana in the 1982 NFC championship game against the Dallas Cowboys.  Party B

17

files for bankruptcy.  Party B lists the prized football as an asset of the bankrupt estate and has

18

possession of the football. The issue is whether Party A has standing to file a complaint in an

19

adversary proceeding in bankruptcy court seeking a declaration that the football is not part of the

20

estate because Party A (not Party B) owns the football, and Party A wants to build a museum

21

devoted to great moments in 49ers history.  As part of its Complaint, Party A alleges that it has an

22

interest in the football (to which Party B wrongfully is claiming ownership).

23

In a similar fashion, AlphaMed has alleged an interest in property that wrongfully has

24

been included in Arriva's bankruptcy estate, and it seeks a declaration that the property is not part

25

of the estate because it rightfully belongs to AlphaMed.  AlphaMed, moreover, also claims to be a

26

creditor of Arriva based on the jury's findings in the Florida Federal Action.  The question is

27

whether, under the facts alleged in the AlphaMed Complaint, AlphaMed has alleged a direct

28

interest and personal stake in the outcome of the bankruptcy proceeding to satisfy the

SQUIRE, SANDERS &
DEMPSEY L.L.P.
One Maritime Plaza, Ste. 300
San Francisco, CA 94111

-13-

ALPHAMED'S APPEAL FROM ADVERSARY
PROCEEDING
Case No. 08-00825-SI

1    requirements for standing.  Courts directly addressing this issue have said *yes*.

2         The exercise of a creditor's right to seek such declaratory relief recently was affirmed by

3    the well-reasoned decisions in the *Catholic Diocese* case, which involved an appeal from the

4    bankruptcy court's denial of the debtor's motions to dismiss two adversary proceedings, one

5    initiated by an individual unsecured creditor and the other initiated by a creditor's committee.

6    *See Catholic Diocese*, 2006 U.S. Dist. LEXIS 6025, at *14-*17.  Both adversary proceedings

7    sought a declaration regarding whether certain assets were part of the bankruptcy estate.  In

8    moving to dismiss the actions, the debtor contended (among other things) that the individual

9    creditor and the committee lacked standing.  Both the bankruptcy court and the district court

10   soundly rejected this argument.  *Id.* at *16-*17.

11        In affirming the bankruptcy court's denial of the motions to dismiss, the district court

12   recognized that "[c]learly it is essential that the assets of the debtor . . . be determined."  *Id.* at *9.

13   The district court pointed out that the bankruptcy judge, in her opinion, "not only denied the

14   jurisdictional and standing Motions to Dismiss, but also tacitly approved the bringing of the

15   adversary complaints, *because if the actions had not been brought, there is no way the creditors*

16   *and the Court could know what assets are available for creditors' claims*."  *Id.* at *16-*17

17   (emphasis added).  The court ultimately found that the adversary proceedings were consistent

18   with the policy and procedure of Chapter 11.  *Id.* at *14-*15.

19        Despite the fact that the *Catholic Diocese* case is directly on point, the Bankruptcy Court

20   rejected it.  The Bankruptcy Court ignored that the decisions in *Catholic Diocese* did *not* turn on

21   the distinction between determining that certain property was part of the estate as opposed to

22   determining that it was outside the estate.  To the contrary, such an artificial distinction directly

23   conflicts with *Catholic Diocese*'s stated policy of encouraging adversary complaints so that the

24   assets of the debtor can be determined (which furthers the goals of bankruptcy law).  *See Catholic*

25   *Diocese*, 2006 U.S. Dist. LEXIS 6025, at *16-*17.

26        It is neither startling nor unusual for a bankruptcy court to hear one creditor claim that a

27   particular piece of property or asset is or is not property of the estate.  Bankruptcy courts

28   routinely address such questions.  As *Catholic Diocese* makes clear, AlphaMed has the right to

SQUIRE, SANDERS &
DEMPSEY L.L.P.
One Maritime Plaza, Ste. 300
San Francisco, CA 94111

-14-

ALPHAMED'S APPEAL FROM ADVERSARY
PROCEEDING
Case No. 08-00825-SI

1   show how and why a valuable asset is not property of the estate. *See Catholic Diocese*, 2006 U.S.

2   Dist. LEXIS 6025, at *8 ("Under the circumstances of this case, a Chapter 11 reorganization

3   proceeding, it is essential that the creditors and the court know what the assets of the estate are in

4   order to vote and rule upon a Chapter 11 reorganization plan."). To hold otherwise, as the

5   Bankruptcy Court did, is "contrary to the letter and intent of the bankruptcy laws" because it

6   "prevent[s] the court and the creditors from having *full information* as to all assets of the debtor in

7   voting and ruling upon a Chapter 11 reorganization plan." *Id.* at *15 (emphasis added).

8   Moreover, "[p]recluding creditors from disputing a Chapter 11 debtor's identification of property

9   of the estate could easily result in rewarding dishonest or improperly motivated debtors." *See In*

10  *re Catholic Bishop of Spokane*, 329 B.R. at 314.[5]

11       After failing to meaningfully distinguish the *Catholic Diocese* case, the Bankruptcy Court

12  went further and rejected the case in its entirety, claiming that it violated Ninth Circuit law. The

13  Bankruptcy Court cited three cases to support its dismissal of AlphaMed's Complaint: *In re*

14  *Fondiller*, 707 F.2d 441 (9th Cir. 1983), *Kalb, Voorhis & Co. v. American Financial Corp.*, 8

15  F.3d 130 (2d Cir. 1993), and *In re Folks*, 211 B.R. 378 (9th Cir. B.A.P. 1997). Each of these

16  cases, however, is inapposite and does not support the Bankruptcy Court's ruling.

17       First, the *Fondiller* case clearly misses the mark. It was a Chapter 7 case that involved the

18  issue of *appellate standing* under the so-called "person aggrieved" test derived from section 39c

19  of the Bankruptcy Act of 1898. The appellant had argued that she had standing to appeal an order

20  of the bankruptcy court authorizing the employment of a law firm as special counsel for the

21  bankruptcy trustee. *See In re Fondiller*, 707 F.2d at 441. The court disagreed and held that the

22  order appointing the special counsel had "no direct and immediate impact on appellant's

23  pecuniary interests" because the employment of counsel was "for the exclusive purpose of

24  representing the trustee in an attempt to recover assets allegedly concealed by the appellant and

25  the debtor [appellant's husband]." *Id.* at 443. As a result, appellant's "only demonstrable

26

27  [5]   Discouraging improper behavior, of course, is a genuine concern in this case given the
28  wrongful conduct committed by Arriva as unanimously found by the jury in the Florida Federal
    Action.

SQUIRE, SANDERS &
DEMPSEY L.L.P.
One Maritime Plaza, Ste. 300
San Francisco, CA 94111

-15-

ALPHAMED'S APPEAL FROM ADVERSARY
PROCEEDING
Case No. 08-00825-SI

1    interest" in the order was "as a potential party defendant in an adversary proceeding," and thus

2    she was not a "person aggrieved." *Id.*  As the facts and holding from this case make clear,

3    *Fondiller* is not on point.  It does not address the rights of a creditor to seek a declaration that a

4    key asset is or is not part of the bankruptcy estate, as *Catholic Diocese* recognized.

5         The *Kalb* and *Folks* cases likewise do not support the Bankruptcy Court's ruling.  Both

6    cases involved the question (irrelevant in this case) of whether a party lacked standing to raise an

7    alter ego claim because the claim, as determined under applicable state law in each case, was

8    property of the bankruptcy estate and therefore the bankruptcy trustee had exclusive standing to

9    bring the claim.  *See Kalb, Voorhis*, 8 F.3d at 135; *In re Folks*, 211 B.R. at 389 (holding that

10   CBS, a creditor, lacked standing to pursue a complaint against the debtor Folks (an individual),

11   who CBS alleged was the alter ego of BYCA, a debtor corporation that owed CBS money,

12   because the alter ego claim was the property of BYCA's bankruptcy estate, not CBS).

13        The *Kalb* case is particularly inapposite because that case was not even filed in

14   bankruptcy court.  It was filed in a federal district court in New York.  The Second Circuit held

15   that the appellant had no standing outside of the bankruptcy proceedings to assert the bankrupt

16   corporation's alter ego claim against a defendant shareholder because that claim, under applicable

17   Texas law which applied in the case, belonged to the bankruptcy estate.  *See Kalb, Voorhis*, 8

18   F.3d at 135 ("As a creditor of Circle K, Appellant has no standing to assert Circle K's alter ego

19   claims against AFC outside the Circle K bankruptcy proceedings.  Under applicable Texas state

20   law, such claims belong to the bankruptcy estate.").  Clearly, none of the cases cited by the

21   Bankruptcy Court address the standing issues that correctly are raised by the *Catholic Diocese*

22   case.

23        In dismissing the AlphaMed Complaint, the Bankruptcy Court expressed its concern that

24   "[i]f the *Catholic Diocese* [case] is correct, then any creditor can bring any action to exclude

25   property or bring property into the estate without any particularized injury whatsoever.  And I just

26   don't think that's the law."  (Apx. at 516).  AlphaMed, however, *never* argued for a rule of law

27   that would allow anyone to walk into bankruptcy court to seek declaratory relief.  Nor does

28   *Catholic Diocese* stand for such a proposition.  The Bankruptcy Court ignored the critical fact

SQUIRE, SANDERS &
DEMPSEY L.L.P.
One Maritime Plaza, Ste. 300
San Francisco, CA 94111

-16-

ALPHAMED'S APPEAL FROM ADVERSARY
PROCEEDING
Case No. 08-00825-SI

1    that AlphaMed is not a stranger or a third party to the intellectual property at issue in this case.

2    To the contrary, AlphaMed has alleged specific facts in the Complaint demonstrating that it has a

3    direct interest in the intellectual property that is the subject of the purported Protease/Arriva

4    License, and thus it properly seeks a determination that the purported License is not property of

5    the estate (because it belongs to AlphaMed). This distinguishes AlphaMed from all other parties

6    who do not have such an interest (and who would not have standing to bring this action).

7         Ultimately, in dismissing AlphaMed's Complaint on standing grounds, the Bankruptcy

8    Court stated that only the debtor in possession (here Arriva) can bring an action to determine

9    whether certain property should be brought into the bankrupt estate or excluded from the estate.

10   (Apx. at 516) ("[Y]ou can only have one party doing that . . . [a]nd that's the representative of the

11   estate, in this case the debtor-in-possession without all of the creditors running around willynilly

12   bringing actions to bring in property of the estate or to exclude property of the estate."). It only

13   requires a quick overview of the facts and circumstances of this case to recognize that the

14   Bankruptcy Court's decision is fundamentally wrong.

15        Here, the AlphaMed Complaint seeks a declaration that Arriva's most critical key asset is

16   invalid and does not belong to Arriva. Obviously, Arriva—the proverbial fox guarding the hen

17   house—would *never* have the incentive to bring an action in bankruptcy court to challenge its

18   own key asset (particularly if it was unlawfully obtained, as the jury determined in the Florida

19   Federal Action). Only AlphaMed, who alleges an interest in that asset and ultimately claims

20   ownership, would have the incentive to bring such a challenge. In this sense, AlphaMed is like

21   the owner of the Joe Montana football who initiates an adversary proceeding seeking a

22   declaration that the prized football does not belong to the debtor, who wrongfully is claiming that

23   the football is part of the bankrupt estate and thus is subject to other creditors. As the court in

24   *Catholic Diocese* properly recognized, bankruptcy courts should *encourage*, rather than dismiss,

25   these types of adversary proceedings because "it is essential that the assets of the debtor . . . be

26   determined." *Catholic Diocese*, 2006 U.S. Dist. LEXIS 6025, at *9, *16-*17 (recognizing that if

27   such actions are not brought, "*there is no way the creditors and the Court could know what assets*

28   *are available for creditors' claims*") (emphasis added).

SQUIRE, SANDERS &
DEMPSEY L.L.P.
One Maritime Plaza, Ste. 300
San Francisco, CA 94111

-17-

ALPHAMED'S APPEAL FROM ADVERSARY
PROCEEDING
Case No. 08-00825-SI

The Bankruptcy Court erred in rejecting the *Catholic Diocese* case, and its decision dismissing the AlphaMed Complaint should be reversed.  AlphaMed clearly has standing to seek declaratory relief that the purported Protease/Arriva License is invalid.

> 3.    **AlphaMed Established Standing by Demonstrating that it is a Party-in-Interest with Both a Financial Interest and Practical Stake in the Outcome of Debtor Arriva's Chapter 11 Bankruptcy.**

In dismissing the AlphaMed Complaint, the Bankruptcy Court also ignored AlphaMed's argument that it has standing as a "party in interest" in the adversary proceeding.

Bankruptcy Code § 1109 provides that a "party in interest" may "***raise and may appear and be heard*** on any issue in a case under this chapter [11 USCS §§ 1101 *et seq.*]."  11 U.S.C. § 1109(b) (emphasis supplied); *see also Unofficial Comm. of Zero Coupon Noteholders v. The Grand Union Co.*, 179 B.R. 56, 58 (Bankr. D. Del. 1995) (holding that zero coupon noteholders were "parties in interest" under § 1109(b) such that they had standing to be heard, even though they were not creditors or shareholders and did not have any direct claim to the debtor's assets).  While "party in interest" is not defined by the Bankruptcy Code, it "is generally understood to include all persons whose pecuniary interests are directly affected by the bankruptcy proceedings."  *In re Thirteen Chapter 7 Cases of Former Trustee Germain*, 182 B.R. 375, 377-78 (Bankr. D. Conn. 1995) (quoting *In re Hutchinson*, 5 F.3d 750, 756 (4th Cir. 1993)).  To be a "party in interest," an entity need not be a creditor holding a claim against the debtor.  Rather, if the entity has a practical or sufficient stake in the outcome of the proceedings, "fundamental fairness" requires that it be afforded an opportunity to be heard on the issues that affect it.  *In re Peachtree Lane Assocs., Ltd.*, 188 B.R. 815, 827 (N.D. Ill. 1995) ("fundamental fairness requires that those who have a practical stake in the proceedings be afforded an opportunity to be heard on the issues that affect them").

Accordingly, even if AlphaMed did not hold a "claim" against Arriva, its pecuniary interest and practical stake in the outcome of this adversary proceeding (seeking a determination that the purported Protease/Arriva License is not part of Arriva's estate and alleging an interest in the intellectual property that is the subject of the purported license agreement) clearly affords it a right to be heard.  Moreover, the Article III case or controversy requirements for standing are met

1   when a party in interest participates in an adversary proceeding that may affect the ultimate

2   disposition of that party's stake in the Chapter 11 case as a direct result of the adversary

3   proceeding.  *See* 1 COLLIER ON BANKRUPTCY P 1109.04[4] (Alan N. Resnick & Henry J. Sommer

4   eds., 15th ed. rev. 2007).  The participation of a "party in interest" in an adversary proceeding

5   "almost always" satisfies the standing requirement under Article III.  COLLIER at 1109.04[4]-

6   [4][a].  Standing is satisfied where a participant holds a financial stake in the outcome of the

7   adversary proceeding such that it gives the party in interest an appropriate incentive to litigate to

8   protect its interests.  COLLIER at 1109.04[4][a].  *See also In re James Wilson Assocs.*, 965 F.2d

9   160, 168 (7th Cir. 1992); *Int'l Trade Admin. v. Rensselaer Polytechnic Inst.*, 936 F.2d 744, 747

10  (2d Cir. 1991).  Hence, in this case, even if AlphaMed does not hold a "claim" against Arriva, its

11  financial stake in the outcome of this adversary proceeding clearly satisfies Article III case or

12  controversy requirements for standing.  The Bankruptcy Court, however, in fact recognized that

13  AlphaMed holds a claim against Arriva by making Arriva's reorganization plan subject to the

14  outcome of AlphaMed's Eleventh Circuit appeal.[6]

15      For these various reasons, the Bankruptcy Court erred as a matter of law in holding that

16  AlphaMed lacked standing to seek a declaration that the purported Protease/Arriva License is

17  invalid.

18  **II.    THE BANKRUPTCY COURT ERRED IN ALTERNATIVELY HOLDING THAT
        THE ALPHAMED COMPLAINT SHOULD BE DISMISSED UNDER THE
19      ROOKER-FELDMAN DOCTRINE.**

20      In addition to its erroneous holding that AlphaMed lacked standing to seek declaratory

21  relief, the Bankruptcy Court also erred as a matter of law in alternatively holding that the *Rooker-

22  Feldman* doctrine required the Bankruptcy Court to give effect to so-called factual findings made

23  in the Arizona State Action regarding the purported validity of the Protease/Arriva License.  As

24  explained below, the *Rooker-Feldman* doctrine only applies to losing parties in a state court

25  proceeding.  It does not apply to "non-parties."  Here, it is uncontroverted that AlphaMed was

26  never a party to the Arizona State Action, and therefore it is not a losing party seeking to appeal

27

28  [6]    In addition, AlphaMed hereby incorporates the arguments set forth in AlphaMed's Opening
        Brief in Appeal from Disallowance of Proof of Claim, filed in Case No. 08-0691.

SQUIRE, SANDERS &
DEMPSEY L.L.P.
One Maritime Plaza, Ste. 300
San Francisco, CA 94111

-19-

ALPHAMED'S APPEAL FROM ADVERSARY
PROCEEDING
Case No. 08-00825-SI

1    or overturn an unfavorable state court judgment against it.  Thus, AlphaMed cannot be barred

2    from litigating the validity of the purported Protease/Arriva License.  The Bankruptcy Court erred

3    as a matter of law in failing to apply the basic elements of the *Rooker-Feldman* doctrine, and its

4    erroneous decision must be reversed.

5        The *Rooker-Feldman* doctrine is based on two Supreme Court cases decided sixty years

6    apart, *Rooker v. Fidelity Trust Co.*, 263 U.S. 413 (1923), and *District of Columbia Court of*

7    *Appeals v. Feldman*, 460 U.S. 462 (1983).  It expresses the "unremarkable" principle that

8    Congress has not given district courts general appellate jurisdiction over state court judgments.  *In*

9    *re Harbin*, 486 F.3d 510, 518 (9th Cir. 2007) (citation omitted).

10       The *Rooker-Feldman* doctrine is a very limited and constrained doctrine—a fact which the

11   Bankruptcy Court failed to recognize.  *See In re Lopez*, 367 B.R. 99, 103 (B.A.P. 9th Cir. 2007)

12   ("The Supreme Court [has] severely constrained *Rooker-Feldman* . . . .").  Briefly stated, the

13   *Rooker-Feldman* doctrine provides that a losing party in state court is prohibited from seeking an

14   appeal of an unfavorable state court judgment to a lower federal court.  *See In re Harbin*, 486

15   F.3d at 519; *Noel v. Hall*, 341 F.3d 1148, 1159 (9th Cir. 2003).

16       Importantly, the doctrine "does *not* bar actions by *nonparties* to the earlier state-court

17   judgment simply because, for purposes of preclusion law, they could be considered in privity with

18   a party to the judgment."  *In re Lopez*, 367 B.R. at 104 (quoting *Lance v. Dennis*, 546 U.S. 459,

19   466 (2006)) (emphasis added); *see also Johnson v. De Grandy*, 512 U.S. 997, 1005-06 (1994)

20   (holding that *Rooker-Feldman* is inapplicable to federal cases involving parties other than those

21   before the state court); *Noel*, 341 F.3d at 1159 (*Rooker-Feldman* does not apply to a federal court

22   suit brought by a non-party to the state court suit).

23       As the United States Supreme Court recently recognized, the *Rooker-Feldman* doctrine "is

24   confined to . . . cases brought by state-court losers complaining of injuries caused by state-court

25   judgments rendered before the district court proceedings commenced and inviting district court

26   review and rejection of those judgments."  *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544

27   U.S. 280, 284 (2005); *see also In re Harbin*, 486 F.3d at 519 (the *Rooker-Feldman* doctrine only

28   "bars a losing party in state court from seeking what in substance would be appellate review of

SQUIRE, SANDERS &
DEMPSEY L.L.P.
One Maritime Plaza, Ste. 300
San Francisco, CA 94111

-20-

ALPHAMED'S APPEAL FROM ADVERSARY
PROCEEDING
Case No. 08-00825-SI

1  the state judgment in a United States district court, based on the losing party's claim that the state

2  judgment itself violates the loser's federal rights") (citation and quotation marks omitted).

3      Significantly, the *Rooker-Feldman* doctrine "does not override or supplant issue and claim

4  preclusion doctrines." *In re Lopez*, 367 B.R. at 105 (citing *Exxon Mobil*, 544 U.S. at 284 and

5  *Henrichs v. Valley View Dev.*, 474 F.3d 609, 613 (9th Cir. 2007)); *see also Kougasian v. TMSL,*

6  *Inc.*, 359 F.3d 1136, 1143 (9th Cir. 2004) (*Rooker-Feldman* does not "give greater preclusive

7  effect to state court judgments than the states themselves would give those judgments.  Such

8  super-preclusive effect would violate the requirement of 28 U.S.C. § 1738 that federal courts give

9  the same (not more and not less) preclusive effect the rendering state courts would give to those

10  judgments).

11      In this case, the Bankruptcy Court erred as a matter of law when it relied on the *Rooker-*

12  *Feldman* doctrine to give preclusive effect to the findings of the Arizona State Action to dismiss

13  the AlphaMed Complaint.  AlphaMed was not a party to the Arizona State Action, and therefore

14  it necessarily was not a "state-court loser" seeking to overturn the findings of the state court

15  proceedings.  *See Exxon Mobil*, 544 U.S. at 284 (*Rooker-Feldman* doctrine "is confined to . . .

16  cases brought by state-court losers . . . ."); *In re Lopez*, 367 B.R at 104 (the *Rooker-Feldman*

17  doctrine does not bar actions by nonparties).

18      The Bankruptcy Court recognized that the *Rooker-Feldman* doctrine applies when "*the*

19  *party lost in the state court* and then filed a Federal action seeking similar relief."  (Apx. at 517

20  (emphasis added)).  Nevertheless, the Bankruptcy Court inexplicably held that "AlphaMed is,

21  indeed, subject to the *Rooker-Feldman* doctrine."  (Apx. at 517).  The Court never explained how

22  or why AlphaMed could be considered a losing party to the Arizona State Action.  Indeed, there

23  is no evidence in the record to support such a finding.

24      Accordingly, the Bankruptcy Court erred as a matter of law in invoking the *Rooker-*

25  *Feldman* doctrine in order to dismiss the AlphaMed Complaint based on the Arizona State

26  Action.[7]

27  _____

28  [7]    To the extent that the Bankruptcy Court invoked the *Rooker-Feldman* doctrine based on
   AlphaMed's relationship with John Lezdey, the Court once again erred.  As noted above, the

SQUIRE, SANDERS &
DEMPSEY L.L.P.
One Maritime Plaza, Ste. 300
San Francisco, CA 94111

-21-

ALPHAMED'S APPEAL FROM ADVERSARY
PROCEEDING
Case No. 08-00825-SI

III.    **THE BANKRUPTCY COURT FURTHER ERRED IN RELYING UPON FULL FAITH AND CREDIT TO DISMISS THE ALPHAMED COMPLAINT.**

Just as the Bankruptcy Court erred in relying upon the *Rooker-Feldman* doctrine to give effect to the Arizona State Action, the Bankruptcy Court also erred in relying upon the Full Faith and Credit Clause of the Constitution, U.S. CONST. art. IV, § 1, and its implementing statute, 28 U.S.C. § 1738, in order "to give full faith and credit to the Florida court's ruling." (Apx. at 517).

The Full Faith and Credit Clause provides:

> Full Faith and Credit shall be given in each State to the public Acts, Records, and judicial Proceedings of every other State. And the Congress may by general Laws prescribe the Manner in which such Acts, Records and Proceedings shall be provided, and the Effect thereof.

U.S. CONST. art. IV, § 1.

Title 28 U.S.C. § 1738 provides in relevant part:

> The records and judicial proceedings of any court of any . . . State, Territory or Possession . . . shall have the same full faith and credit in every court within the United States and its Territories and Possession as they have by law or usage in the courts of such State, Territory or Possession from which they are taken.

28 U.S.C. § 1738.

The Bankruptcy Court in this case stated: "On top of *Rooker-Feldman* there is a statute, 28 U.S.C. 1738, which is a full-faith-and-credit statute which requires Federal Courts [to] give full faith and credit to decisions of state courts. And here, I have to give full faith and credit to the Florida court's ruling." (Apx. at 517). However, the Bankruptcy Court never provided

---

*Rooker-Feldman* doctrine "does bar actions by nonparties to the earlier state-court judgment simply because, for purposes of preclusion law, they could be considered in privity with a party to the judgment." *In re Lopez*, 367 B.R. at 104 (quoting *Lance*, 546 U.S. at 466). Thus, even if AlphaMed and John Lezdey could be held to be in privity (and there is no evidence in the record to support such a conclusion, nor did the Bankruptcy Court make any such finding), AlphaMed still would not be considered a party to the Arizona State Action—let alone a "losing party," as *Rooker-Feldman* requires. Moreover, and in any event, the *Rooker-Feldman* doctrine cannot be invoked to give effect to the preliminary injunction entered against John Lezdey in the Arizona State Action because the doctrine does not apply to non-final judgments in proceedings that have not yet ended, as demonstrated more fully in the Combined Opening Brief of Protease and Sonoran In Appeal from Disallowance of Proofs of Claim, at 11-12 (which AlphaMed incorporates herein by reference). Thus, the *Rooker-Feldman* doctrine would be inapplicable in this case even if principles of privity could apply.

SQUIRE, SANDERS &
DEMPSEY L.L.P.
One Maritime Plaza, Ste. 300
San Francisco, CA 94111

-22-

ALPHAMED'S APPEAL FROM ADVERSARY
PROCEEDING
Case No. 08-00825-SI

1    additional reasoning to support this alternative ruling.  It failed to recognize that, by its terms, the

2    full faith and credit statute does not apply to federal court judgments (such as the Florida federal

3    judgment).  *See Palmer & Cay, Inc. v. Marsh & McLennan Cos.*, 404 F.3d 1297, 1310 n.20 (11th

4    Cir. 2005) ("neither the Full Faith and Credit Clause nor its implementing statute applies to

5    judgments issued by federal courts" because "[*b*]*y their terms they govern the effects to be given*

6    *only to state-court judgments* . . . And no other federal textual provision, neither of the

7    Constitution nor of any statute, addresses the claim-preclusive effect of a judgment in a federal

8    diversity action") (quoting *Semtek Int'l Inc. v. Lockheed Martin Corp.*, 531 U.S. 497, 506-07

9    (2000)).

10        Instead, it is federal common law which governs the effect of the Florida Federal Action

11   in this case.  *See Semtek*, 531 U.S. at 508-09; *Batzel v. Smith*, 372 F. Supp. 2d 546, 550 (C.D.

12   Cal. 2005).  Under federal common law principles, Florida law determines whether the Florida

13   Federal Action can have preclusive effect against AlphaMed.  *See Semtek*, 531 U.S. at 509.

14        In this case, the Bankruptcy Court could not rely on either claim preclusion or issue

15   preclusion to give effect to the Florida Federal Action.  *See Noel*, 341 F.3d at 1160 (recognizing

16   that Section 1738 "requires a federal district court to give the *same*—not more and not less—

17   preclusive effect to a state court judgment as that judgment would have in the state courts of the

18   state in which it was rendered") (emphasis added).

19        First, claim preclusion does not apply because AlphaMed is not asserting the same cause

20   of action in the AlphaMed Complaint that it asserted in the Florida Federal Action, nor is

21   AlphaMed's cause of action one that could have been brought in the Florida Federal Action

22   (since it involves the bankruptcy-only question of whether a purported key asset belongs to a

23   bankrupt estate).  *See, e.g., Hicks v. Hoagland*, 953 So. 2d 695, 698 (Fla. Ct. App. 2007); *State

24   Street Bank & Trust Co. v. Badra*, 765 So. 2d 251, 254 (Fla. Ct. App. 2000); *Baxas Howell

25   Mobley, Inc. v. BP Oil Co*., 630 So. 2d 207, 209 (Fla. Ct. App. 1993).

26        Issue preclusion similarly cannot apply.  Under Florida law, collateral estoppel applies

27   where the threshold requirements are met: (1) the issue at stake is identical to the one involved in

28   the prior litigation; (2) the issue was actually litigated in the prior suit; (3) the determination of

SQUIRE, SANDERS &
DEMPSEY L.L.P.
One Maritime Plaza, Ste. 300
San Francisco, CA 94111

-23-

ALPHAMED'S APPEAL FROM ADVERSARY
PROCEEDING
Case No. 08-00825-SI

1    the issue in the prior litigation was critical and necessary to the determination; and (4) the party

2    against whom the earlier decision is asserted had a full and fair opportunity to litigate the issue in

3    the earlier proceeding. *See Dadeland Depot, Inc. v. St. Paul Fire & Marine Ins. Co*., 945 So. 2d

4    1216, 1235 (Fla. 2006) (citation omitted); *Carnival Corp. v. Middleton*, 941 So. 2d 421, 424

5    (Fla. Ct. App. 2006) (citation omitted).  In this case, issue preclusion cannot apply because there

6    was never any finding made in the Florida Federal Action that the Protease/Arriva License is

7    valid.  To the contrary, the Florida jury unanimously found that the Protease/Arriva License was

8    *invalid* and that Arriva *knew* that it was invalid.  (Apx. at 301-302).  Thus, AlphaMed cannot be

9    precluded from seeking a declaration that the Protease/Arriva License is invalid since that issue

10   was never decided in Arriva's favor in the Florida Federal Action.

11          Clearly, the Bankruptcy Court erred when it invoked the full faith and credit statute to

12   dismiss the AlphaMed Complaint without analyzing whether Florida preclusion law actually

13   applied (which it does not).

14          Finally, for similar reasons, the Bankruptcy Court could not rely on § 1738 to give full

15   faith and credit to the Arizona State Action (as Arriva had argued).  Indeed, during the December

16   13, 2007 hearing on Arriva's motion to dismiss, the Bankruptcy Court expressly ruled that it was

17   invoking full faith and credit *only* as to the decision of the *Florida Federal Action*, not the

18   Arizona State Action.  (Apx. at 517).  The Bankruptcy Court's ruling is noteworthy because it

19   shows that the Court rejected one of the primary arguments made by Arriva in its motion to

20   dismiss.  Arriva had argued that the doctrine of collateral estoppel purportedly barred AlphaMed

21   from seeking a declaration that the Protease/Arriva License was invalid based on the outcome of

22   the Arizona State Action.  The Bankruptcy Court correctly recognized that collateral estoppel

23   could not apply because, among other reasons: (1) neither AlphaMed nor Arriva were parties to

24   the Arizona State Action, (2) AlphaMed is not in privity with any of the parties to that action,

25   and (3) the so-called "factual" findings in that case were entered following a default judgment as

26   a discovery sanction and therefore did not satisfy the "actually litigated" requirement.  *See, e.g.,*

27   *Chaney Bldg. Co. v. City of Tucson*, 716 P.2d 28, 30 (Ariz. 1986) (setting forth elements for

28   collateral estoppel under Arizona law).

SQUIRE, SANDERS &
DEMPSEY L.L.P.
One Maritime Plaza, Ste. 300
San Francisco, CA 94111

-24-

ALPHAMED'S APPEAL FROM ADVERSARY
PROCEEDING
Case No. 08-00825-SI

1    Indeed, the Bankruptcy Court agreed with the judge in the Florida Federal Action who

2    previously had rejected the very same argument that Arriva advanced in this case.  The Florida

3    judge correctly held that AlphaMed could not be bound by the Arizona State Action.  *See*

4    *AlphaMed Pharmaceuticals Corp. v. Arriva Pharmaceuticals, Inc.*, 432 F. Supp. 2d 1319, 1323

5    n.6 (S.D. Fla. 2006) ("the Arizona state court's findings . . . *do not bind AlphaMed, a nonparty*

6    *to that litigation*") (emphasis added).  As these facts in the record reveal, it is Arriva, not

7    AlphaMed, which is subject to collateral estoppel.  It is Arriva which is precluded from asserting

8    a collateral estoppel defense against AlphaMed due to the Florida judge's express ruling in the

9    Florida Federal Action.

10    Since the Arizona State Action cannot have preclusive effect against AlphaMed, either

11    under the *Rooker-Feldman* doctrine or under full faith and credit/collateral estoppel (as the

12    Bankruptcy Court correctly held), and since the unanimous jury findings from the Florida

13    Federal Action fully support AlphaMed's claim that the purported Protease/Arriva License is

14    invalid, the Bankruptcy Court erred in granting Arriva's motion to dismiss.  Its decision must be

15    reversed.

16    ## CONCLUSION

17    The Bankruptcy Court erred in dismissing the AlphaMed Complaint with prejudice.

18    AlphaMed has standing to seek declaratory relief that the purported Protease/Arriva License is

19    invalid, and neither the Arizona State Action nor the Florida Federal Action can preclude

20    AlphaMed from seeking such relief.  The Bankruptcy Court's decision should be reversed, and

21    the case remanded for the presentation of evidence on AlphaMed's claim.

22    RESPECTFULLY SUBMITTED this 5th day of June 2008.

23                    SQUIRE, SANDERS & DEMPSEY L.L.P.

24    By:_____/s/ Daniel T. Balmat_____
                        Daniel T. Balmat

25

26    Attorneys for
        ALPHAMED PHARMACEUTICALS CORP.

27

28

SQUIRE, SANDERS &
DEMPSEY L.L.P.
One Maritime Plaza, Ste. 300
San Francisco, CA 94111

-25-

ALPHAMED'S APPEAL FROM ADVERSARY
PROCEEDING
Case No. 08-00825-SI

1   SQUIRE, SANDERS & DEMPSEY L.L.P.
    James E. McDonald (admitted *pro hac vice*)
2   Douglas J. Rovens (CA Bar No. 106562)
    Daniel T. Balmat (CA Bar No. 230504)
3   One Maritime Plaza, Third Floor
    San Francisco, CA  94111-3492
4   Telephone:    415.954.0200
    Facsimile:    415.393.9887
5   jmcdonald@ssd.com
    drovens@ssd.com
6   dbalmat@ssd.com

7
    Attorneys for
8   ALPHAMED PHARMACEUTICALS CORP.

9

10

11              UNITED STATES DISTRICT COURT

12            NORTHERN DISTRICT OF CALIFORNIA

13        On Appeal from the United States Bankruptcy Court
                 for the Northern District of California
14                    Hon. Edward D. Jellen

15

| 16 | In re | Case No. 08-00825-SI |
|----|-------|----------------------|
| 17 | ARRIVA PHARMACEUTICALS, INC., a California corporation, | (Appeal from Adversary Proceeding No. 07-4181 in Chapter 11 Bankruptcy Case No. 07-42767 AJ) |
| 18 | | |
| 19 | Debtor. | Related Case Nos. 08-00691-SI; 08-00692-SI; 08-00693-SI; 08-01279-SI; 99-02169-SI |
| 20 | Tax ID:  94-3287067 | |
| 21 | AlphaMed Pharmaceuticals Corp. | **E-FILING** |
| 22 | Plaintiff | **MANUAL FILING NOTIFICATION OF COMBINED APPENDIX FOR APPEAL NOS. 08-0691, 08-0692, 08-0693 AND 08-0825** |
| 23 | vs. | |
| 24 | Arriva Pharmaceuticals, Inc. | |
| 25 | Defendant. | |

26

27

28

SQUIRE, SANDERS &
DEMPSEY L.L.P.
One Maritime Plaza, Suite 300
San Francisco, CA 94111-3492

1

**REGARDING:   COMBINED APPENDIX OF APPEAL NOS. 08-0691, 08-0692, 08-0693, AND 08-0825 BY PLAINTIFF-APPELLANT ALPHAMED PHARMACEUTICALS CORP.**

2

3

4   This filing is in paper or physical form only, and is being maintained in the case file in the

5   Clerk's office.  If you are a participant in this case, this filing will be served in hard-copy shortly.

6   For information on retrieving this filing directly from the court, please see the court's main web

7   site at http://www.cand.uscourts.gov under Frequently Asked Questions ("FAQ").

8   This filing was not e-filed for the following reason(s):

9   [x]   Voluminous Document (PDF file size larger than the e-filing system allows);

10   [_]   Unable to Scan Documents;

11   [_]   Physical Object (description): _____;

12   [_]   Non-Graphic/Text Computer File (audio, video, etc.) on CD or other media;

13   [_]   Item Under Seal (Exhibit 115 – designated as "Confidential" pursuant to

14   Stipulated Protective Order)

15   [_]   Conformance with the Judicial Conference Privacy Policy (General Order 53); or

16   [_]   Other (description): _____.

17   Respectfully submitted,

18   Dated: June 5, 2008              SQUIRE, SANDERS & DEMPSEY L.L.P.

19

20   By: ___/s/  Daniel T. Balmat_____
                      Daniel T. Balmat

21   Attorneys for
     ALPHAMED PHARMACEUTICALS CORP.

22

23

24

25

26

27

28

1
2
3
4

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

On Appeal from the United States Bankruptcy Court
for the Northern District of California
Hon. Edward D. Jellen

| | |
|---|---|
| 5  In re | CASE NO. 08-0691 |
| 6  ARRIVA PHARMACEUTICALS, INC., a California corporation, | (Appeal from Chapter 11 Bankruptcy Case No. 07-42767) |
| 7      Debtor. | |
| 8  PROTEASE SCIENCES, INC. | CASE NOS. 08-0692 and 08-0693 |
| 9          Appellant | (Appeal from Chapter 11 Bankruptcy Case No. 07-42767) |
|    vs. | |
| 10  ARRIVA PHARMACEUTICALS, INC. | |
| 11          Appellant | |
| 12     vs. | |
|    SONORAN DESERT CHEMICALS, L.L.C. | |
| 13          Appellant | |
| 14     vs. | |
| 15  ARRIVA PHARMACEUTICALS, INC. | |
|          Appellee | |
| 16 | |
| 17  ALPHAMED PHARMACEUTICALS CORP. | Case No. 08-0825 |
|          Plaintiff | |
| 18     vs. | (Appeal from Adversary Proceeding No. 07-4181 in Chapter 11 Bankruptcy Case No. 07-42767 AJ) |
| 19  ARRIVA PHARMACEUTICALS, INC. | |
|          Defendant. | |
| 20 | |

21

## CERTIFICATE OF SERVICE

22
23
24
25
26
27

Squire, Sanders & Dempsey L.L.P.
Douglas J. Rovens (State Bar # 106562)
drovens@ssd.com
James E. McDonald (admitted *Pro Hac Vice*)
*jmcdonald@ssd.com*
Daniel T. Balmat (State Bar# 230504)
*dbalmat@ssd.com*
One Maritime Plaza, Suite 300
San Francisco, CA 94111
Telephone: +1.415.954.0383
Facsimile: +1.415.393.9887

28

Attorneys for
AlphaMed Pharmaceuticals Corp.

SQUIRE, SANDERS &
DEMPSEY L.L.P.
One Maritime Plaza, Ste. 300
San Francisco, CA 94111

CERTIFICATE OF SERVICE

1

**CERTIFICATE OF SERVICE**

(Pursuant to Federal Law)

2

3

4        I, REGINA ARROYO, am employed in the County of San Francisco, State of California.  I am over the age of 18 and not a party to the within action; my business address is One Maritime Plaza, Third Floor, San Francisco, California  94111-3492.  On June 5, 2008, I served the following documents described as:

5

6    **1.   APPELLANT ALPHAMED PHARMACEUTICALS CORP.'S OPENING BRIEF IN APPEAL FROM DISALLOWANCE OF PROOF OF CLAIM;**

7    **2.   COMBINED OPENING BRIEF OF APPELLANTS PROTEASE AND SONORAN IN APPEAL FROM DISALLOWANCE OF PROOFS OF CLAIM;**

8
9    **3.   PLAINTIFF-APPELLANT ALPHAMED'S OPENING BRIEF IN APPEAL FROM BANKRUPTCY ADVERSARY PROCEEDING;**

10   **4.   COMBINED APPENDIX FOR APPEAL NOS. 08-0691, 08-0692, 08-0693 AND 08-0825;**

11   **5.   MANUAL FILING NOTIFICATION OF SECOND SUPPLEMENTAL DECLARATION OF COMBINED APPENDIX FOR APPEAL NOS. 08-0691, 08-0692, 08-0693 AND 08-0825  [Appeal Case No. 08-00691];**

12
13   **6.   MANUAL FILING NOTIFICATION OF SECOND SUPPLEMENTAL DECLARATION OF COMBINED APPENDIX FOR APPEAL NOS. 08-0691, 08-0692, 08-0693 AND 08-0825**
14        **[Consolidated Appeal Case No. 08-00692 and 08-00693];**

15   **7.   MANUAL FILING NOTIFICATION OF SECOND SUPPLEMENTAL DECLARATION OF COMBINED APPENDIX FOR APPEAL NOS. 08-0691, 08-0692, 08-0693 AND 08-0825  [Appeal Case No. 08-00825];**

16

17  was served on the party(ies) as set forth on the attached service list:  **SEE ATTACHED SERVICE LIST**

18  Service was accomplished as follows:

19  ☒     Via United States District Court Electronic Filing Service on the party(ies) as set forth on the attached service list.

20

21  **AND/OR**

22  ☒     BY U.S. MAIL, According to Normal Business Practices.  On June 6, 2008, at my place of business at the above address, I sealed the above document(s) in an envelope addressed to the above, and I placed that sealed envelope for collection and mailing following ordinary business practices, for deposit with the U.S. Postal Service.  I am readily familiar with the business practice at my place of business for the collection and processing of correspondence for mailing with the U.S. Postal Service.  Correspondence so collected and processed is deposited the U.S. Postal Service the same day in the ordinary course of business, postage fully prepaid.

23

24

25

26        I declare that I am employed in the office of a member of the bar of this court at whose direction the service was made.  Executed on June 5, 2008, at San Francisco, California.

27                                          By:    _____*/s/ Regina Arroyo*_____

28                                                    Regina Arroyo

SQUIRE, SANDERS &
DEMPSEY L.L.P.
One Maritime Plaza, Ste. 300
San Francisco, CA 94111

1

# SERVICE LIST

2

**USDC APPEAL CASE NO. 08-00691:**

3
Michael H. Ahrens
Ori Katz
Michael Magayne Lauter
4
Timothy Charles Perry
Sheppard Mullin Richter & Hampton LLP
5
Four Embarcadero Center, 17th Floor
San Francisco, CA  94111-4106
6
Telephone:      (415) 434-9100
Facsimile:      (415) 434-3947

7

*Attorneys for Appellee*
8
*Arriva Pharmaceuticals Inc.*

9

**USDC APPEAL CASE NO. 08-00692:**

10
Michael H. Ahrens
Sheppard Mullin Richter & Hampton LLP
Four Embarcadero Center, 17th Floor
11
San Francisco, CA  94111-4106
Telephone:      (415) 434-9100
12
Facsimile:      (415) 434-3947

13
*Attorneys for Appellee*
*Arriva Pharmaceuticals Inc.*

14

**USDC APPEAL CASE NO. 08-00693:**
15
Michael H. Ahrens
Ori Katz
16
Michael Magayne Lauter
Timothy Charles Perry
17
Sheppard Mullin Richter & Hampton LLP
Four Embarcadero Center, 17th Floor
18
San Francisco, CA  94111-4106
Telephone:      (415) 434-9100
19
Facsimile:      (415) 434-3947

20
*Attorneys for Appellee*
*Arriva Pharmaceuticals Inc.*

21

United States Trustee
22
Office of the U.S. Trustee
1301 Clay Street, Suite 690N
23
Oakland, CA  94612

Tracy Green
Michael D. Cooper
Wendel Rosen Black & Dean, LLP
1111 Broadway, 24th Floor
Oakland, CA  94607-4036

*Attorneys for*
*Official Committee of Creditors Holding Unsecured*
*Claims*

**USDC APPEAL CASE NO. 08-00825:**

Michael H. Ahrens
Ori Katz
Michael Magayne Lauter
Timothy Charles Perry
Sheppard Mullin Richter & Hampton LLP
Four Embarcadero Center, 17th Floor
San Francisco, CA  94111-4106
Telephone:      (415) 434-9100
Facsimile:      (415) 434-3947

*Attorneys for Appellee*
*Arriva Pharmaceuticals Inc.*

24

25

26

27

28