SHEPPARD, MULLIN, RICHTER & HAMPTON LLP
  A Limited Liability Partnership
  Including Professional Corporations
MICHAEL H. AHRENS, Cal. Bar No. 44766
ORI KATZ, Cal. Bar No. 209561
MICHAEL M. LAUTER, Cal. Bar No. 246048
TIMOTHY C. PERRY, Cal. Bar No. 248543
Four Embarcadero Center, 17th Floor
San Francisco, California  94111-4106
Telephone:    415-434-9100
Facsimile:    415-434-3947

Attorneys for ARRIVA PHARMACEUTICALS, INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

On Appeal from the United States Bankruptcy Court
for the Northern District of California
Hon. Edward D. Jellen

| | |
|---|---|
| ALPHAMED PHARMACEUTICALS CORP., <br><br>                Plaintiff-Appellant, <br><br> v. <br><br> ARRIVA PHARMACEUTICALS, INC., <br><br>           Defendant-Appellee. | No. 08-00825-SI <br><br> **APPELLEE'S BRIEF [ADVERSARY PROCEEDING APPEAL]** <br><br> Date: July 24, 2008 <br> Time: 3:30 p.m. <br> Location: Courtroom 10, 19th Floor <br>         450 Golden Gate Ave. <br>         San Francisco, CA 94102 |

# TABLE OF CONTENTS

Page

I.     STATEMENT OF THE CASE ................................................................. 1

II.    STANDARDS OF REVIEW ................................................................... 3

III.   STATEMENT OF THE FACTS ............................................................... 3

       A.    The Origins of the Dispute between Arriva and AlphaMed .......................... 3

       B.    The Arizona Court Finds Arriva's Protease License to Be Valid .................... 3

       C.    District Judge Illston Acknowledges the Arizona Court's Findings ............... 4

       D.    The Florida Court Enters Judgment as a Matter of Law in favor of
             Arriva ......................................................................... 5

       E.    Arriva's Bankruptcy Filing and Appeal ......................................... 6

       F.    The Bankruptcy Court Dismisses with Prejudice AlphaMed's
             Adversary Action .............................................................. 6

       G.    This Appeal ................................................................... 8

IV.    SUMMARY OF THE ARGUMENT ........................................................ 9

V.     ARGUMENT ......................................................................... 9

       A.    The Bankruptcy Court Used the Correct Standard for Dismissal under
             Fed. R. Civ. P. 12(b)(6) ...................................................... 9

       B.    AlphaMed Lacked Standing to Bring Its Adversary Action ....................... 10

       C.    The Bankruptcy Court Correctly Dismissed AlphaMed's Complaint
             under the *Rooker-Feldman* Doctrine .......................................... 17

       D.    Full Faith and Credit Required Dismissal of AlphaMed's Complaint ............. 20

       E.    The Bankruptcy Court Did Not Abuse Its Discretion in Denying
             Leave to Amend ............................................................... 23

VI.    CONCLUSION ...................................................................... 26

## TABLE OF AUTHORITIES

Page

FEDERAL CASES

AlphaMed v. Arriva,
    432 F. Supp. 2d 1319 (S.D. Fla. 2006) ........................................................5-6

Avalanche Mar., Ltd. v. Parekh (In re Parmatex, Inc.),
    199 F.3d 1029 (9th Cir. 1999).......................................................................12

Bell Atl. Corp. v. Twombly,
    127 S. Ct. 1955 (2007) ....................................................................................9

Bennett v. Spear,
    520 U.S. 154 (1997) ......................................................................................10

Bianchi v. Rylaarsdam,
    334 F.3d 895 (9th Cir. 2003)....................................................................17-18

Blitch Ford, Inc. v. MIC Prop & Cas. Ins. Corp.,
    90 F. Supp. 2d 1377 (M.D. Ga. 2000) ...........................................................21

In re Catholic Bishop of Spokane,
    329 B.R. 304 (Bankr. E.D. Wash. 2005) ..................................................12-15

D.C. Court of Appeals v. Feldman,
    460 U.S. 462 (1983) ......................................................................................17

Delay v. Gordon,
    475 F.3d 1039 (9th Cir. 2007)........................................................................24

Exxon Mobil Corp. v. Saudi Basic Indus.,
    544 U.S. 280 (2005) ......................................................................................17

In re Feldhahn,
    92 B.R. 834 (Bankr. D. Iowa 1988) ...............................................................14

Fisher v. Tucson School Dist.,
    625 F.2d 834 (9th Cir. 1980).....................................................................9-10, 15

In re Folks,
    211 B.R. 378 (9th Cir. BAP 2007)..................................................................10

In re Fondiller,
    707 F.2d 441 (9th Cir. 1983).........................................................................10

German Alliance Ins. Co. v. Home Water Supply Co.,
    226 U.S. 220 (1912).................................................................................10-11

Gompper v. VISX, Inc.,
    298 F.3d 893, 898 (9th Cir. 2002).............................................................3, 23

In re Gottheiner,
    703 F.2d 1136 (9th Cir. 1983)..................................................................... 21

Hal Roach Studios v. Richard Feiner & Co.,
    896 F.2d 1542 (9th Cir. 1990)....................................................................... 9

Henrichs v. Valley View Dev.,
    474 F.3d 609 (9th Cir. 2007)....................................................................... 17

Horowitz v. Kaplan,
    193 F.2d 64 (1st Cir. 1951) ......................................................................... 15

Ileto v. Glock Inc.,
    349 F.3d 1191 (9th Cir. 2003)....................................................................... 9

In Allen v. McCurry,
    449 U.S. 90 (1980) ...................................................................................... 20

Kalb, Voorhis & Co. v. American Financial Corp.,
    8 F.3d 130 (2d Cir. 1993) ............................................................................ 10

Lance v. Dennis,
    126 S. Ct. 1198 (2006) ................................................................................ 19

Lopez v. Smith,
    203 F.3d 1122 (9th Cir. 2000).................................................................. 3, 23

MGIC Indemnity Corp. v. Weisman,
    803 F.2d 500 (9th Cir. 1986)......................................................................... 9

Migra v. Warren City School Dist. Bd. of Education,
    465 U.S. 75 (1984) ...................................................................................... 20

Montana v. United States,
    440 U.S. 147 (1979) .................................................................................... 21

Moore v. Kayport Package Express,
    885 F.2d 531 (9th Cir. 1989)....................................................................... 24

In re MortgageAmerica,
    714 F.2d 1266 (5th Cir. 1983)..................................................................... 14

In re Nourbakhsh,
    162 B.R. 841 (9th Cir. BAP 1994).............................................................. 20

Official Committee of Unsecured Creditors of Cybergenics Corp. ex rel. Cybergenics
    Corp. v. Chinery, 330 F.3d 548 (3d Cir. 2003)........................................... 16

Parks School of Business, Inc. v. Symington,
    51 F.3d 1480 (9th Cir. 1995)......................................................................... 9

Parrino v. FHP, Inc.,
    146 F.3d 699 (9th Cir. 1998)......................................................................... 9

-iii-

Reusser v. Wachovia Bank, N.A.,
    525 F.3d 855 (9th Cir. 2008)..............................................................................17-18

Rooker v. Fidelity Trust Co.,
    263 U.S. 413 (1923) ............................................................................................ 17

In re STN Enterprises, Inc.,
    73 B.R. 470 (Bankr. D. Vt. 1987) ...................................................................... 14

Estate of Spirtos v. Superior Court Case,
    443 F.3d 1172 (9th Cir. 2006)....................................................................... 12, 16

In re Tennessee Valley Steel Corp.,
    183 B.R. 795 (Bankr. E.D. Tenn. 1995) ............................................................ 14

Thacker v. FCC (In re Magnacom Wireless, LLC),
    503 F.3d 984 (9th Cir. 2007)................................................................................ 3

Tort Litigants v. The Catholic Diocese of Spokane,
    Case No. 05-0274, 2006 U.S. Dist. LEXIS 6025 (E.D. Wash. Jan. 24, 2006) ............ 12

Tripati v. Henman,
    857 F.2d 1366 (9th Cir. 1988).......................................................................21-22

United Union of Roofers, etc. No. 40 v. Insurance Corp. of America,
    919 F.2d 1398 (9th Cir. 1990) ............................................................................ 24

In re Van Dresser Corp.,
    128 F.3d 945 (6th Cir. 1997)............................................................................... 12

W. Radio Servs. Co. v. Glickman,
    123 F.3d 1189 (9th Cir. 1997)............................................................................. 21

Warren v. Manufacturers Nat'l Bank,
    759 F.2d 542 (6th Cir. 1985)............................................................................... 14

Yakama Indian Nation v. Washington Dep't of Revenue,
    176 F.3d 1241 (9th Cir. 1999)........................................................................ 3, 23

STATE CASES

Campbell v. Szl Props.,
    204 Ariz. 221 (Ct. App. 2003) ......................................................................21-22

City of Glendale v. Aldabbagh,
    189 Ariz. 140 (Ariz. 1997)................................................................................. 22

Dressler v. Morrison,
    212 Ariz. 279 (2006) ......................................................................................20-21

Farmers Ins. Co. v. Vagnozzi,
    138 Ariz. 443 (1983) .......................................................................................... 20

-iv-

Hall v. Lalli,
    194 Ariz. 54 (1999) ............................................................................... 21, 23

Hullett v. Cousin,
    204 Ariz. 292 (2003) ................................................................................. 20

Matusik v. Arizona Pub. Serv. Co.,
    141 Ariz. 1 (Ct. App. 1984) ....................................................................... 21

Phinisee v. Rogers,
    229 Mich. App. 547 (1998) ........................................................................ 21

Wetzel v. Arizona State Real Estate Dep't,
    151 Ariz. 330 (Ct. App. 1986) ................................................................... 21


FEDERAL CONSTITUTION

Article III ........................................................................................................ 15

Article III, § 2 ................................................................................................... 9


FEDERAL STATUTES

11 U.S.C.
    § 323 ............................................................................................................ 12
    § 323(a) ............................................................................................ 7, 12, 15
    § 510(c) ........................................................................................................ 14
    § 1103(c) ...................................................................................................... 14
    § 1109(b) ................................................................................................ 14-16

28 U.S.C.
    § 1738 ................................................................................................... 20, 23


FEDERAL RULES

Federal Rules of Civil Procedure
    Rule 12(b)(6) ...................................................................................... 3, 9, 13


MISCELLANEOUS

1 Collier on Bankruptcy P 1109.05 (Alan N. Resnick & Henry J. Summers, eds.,
    15th ed. rev. 2008) .................................................................................... 16

A. Miller & E. Cooper, Federal Practice and Procedure (1981) ....................... 21

Restatement (Second) of Judgments § 13 (1982) ...................................... 21-22

W02-WEST:5TIP1\400889439.1

APPELLEE'S BRIEF

# I.    STATEMENT OF THE CASE

On October 30, 2007, AlphaMed Pharmaceuticals Corp. ("AlphaMed") filed a complaint against Chapter 11 debtor Arriva Pharmaceuticals, Inc. ("Arriva") in the United States Bankruptcy Court for the Northern District of California (the "Bankruptcy Court").

AlphaMed's complaint was not a typical complaint.  For relief, AlphaMed asked the Bankruptcy Court to determine that a certain piece of intellectual property called the "Protease License" was *not* part of Arriva's bankruptcy estate.  (Appellant's Combined Appendix [hereinafter, "AA"], 59.)  Yet, mysteriously, AlphaMed refused to allege the obvious inverse: AlphaMed refused to allege that it was the rightful owner of the Protease License.  In fact, AlphaMed affirmatively disclaimed any interest in a judicial determination that it owned the License, stating, in its opposition to Arriva's motion to dismiss, that it "does not seek a determination the [Protease] License is property of AlphaMed; it seeks a declaration that the License is not property of the [bankruptcy] estate."  (AA 274.)  In so framing its lawsuit, AlphaMed plainly failed to allege any personal particularized injury sufficient to support standing.

A failure to allege standing was not the complaint's only error.  The complaint also alleged a controversy already fully and finally litigated by an Arizona state court (the "Arizona Court").  (AA 162 et seq.; AA 347 et seq.)  Indeed, not only had the Arizona Court previously resolved issues raised in the complaint, this very Court (Illston, J., presiding) deferred to the Arizona state court's findings.  (AA 183 et seq.)  Thus, as a consequence of the Arizona Court's judgment, AlphaMed's complaint was barred jurisdictionally by the *Rooker-Feldman* doctrine, and on the merits by doctrines of full faith and credit and issue preclusion.

AlphaMed was well aware of all these problems.  In its motion to dismiss, served on November 7, 2007, Arriva alerted AlphaMed to the deficiencies in its complaint, including AlphaMed's fatal failure to plead standing.  (AA 139.)  Three weeks later, on November 29, 2007, AlphaMed filed an opposition, but utterly failed to explain how it had standing to bring its unusual adversary action, or to remedy the other deficiencies in the complaint.

-1-

1    (AA 258.)  Instead, in its opposition AlphaMed persisted in its inadequate, vague,

2    conclusory and entirely implausible allegations.  On December 6, 2007, Arriva filed its

3    reply brief; in that brief, Arriva duly showed AlphaMed and the Court that AlphaMed's

4    opposition was unresponsive.  (Special Appendix [hereinafter, "SPA"] 8, n.1; SPA 9-10.)

5    Then, on December 11, 2007, a scant two days before the hearing on the motion (and in

6    violation of the Federal Rules), AlphaMed purported to file a "surreply" to Arriva's reply—

7    but, still, did not explain or repair its failure to plead standing.  (SPA 47 et seq.)  On

8    December 13, 2007—five weeks after Arriva initially alerted AlphaMed to its failure to

9    plead standing—the Bankruptcy Court held a hearing on the motion to dismiss.  Despite

10   having more than a month to explain or cure the deficiencies in its complaint, AlphaMed

11   again turned up empty handed.  Under Bankruptcy Judge Jellen's questioning, AlphaMed

12   again failed to explain how it had standing, and failed to explain the other deficiencies in its

13   complaint.  (AA 469 et seq.)

14          Ruling from the bench, the Bankruptcy Court dismissed AlphaMed's complaint with

15   prejudice, and without leave to amend.  The Bankruptcy Court rested the dismissal on three

16   separate, independently sufficient grounds: (1) AlphaMed failed to allege an interest in the

17   Protease License sufficient to support its standing to bring the lawsuit; (2) the *Rooker-*

18   *Feldman* doctrine barred the lawsuit and (3) the Arizona Court's resolution of the dispositive

19   issues, to which the Bankruptcy Court owed full faith and credit, precluded the lawsuit.

20          Now, on appeal, AlphaMed asks this Court to make up for its own errors that

21   AlphaMed refused to cure on its own account.  Much as in the Plan Confirmation Appeal,

22   where AlphaMed failed to seek a stay of the order confirming Arriva's plan of

23   reorganization, AlphaMed here has neglected its most basic procedural obligations, by

24   failing to explain—despite numerous warnings and opportunities—how it has standing.  Just

25   as this Court declined to fix AlphaMed's own errors in the Plan Confirmation appeal, so too

26   should this Court decline to fix them here.  Moreover, even if given the chance to fix the

27   complaint, AlphaMed could not do so.  The Bankruptcy Court correctly dismissed

28

1    AlphaMed's complaint, and did not abuse its discretion in denying leave to amend.  This

2    Court should affirm the judgment of the Bankruptcy Court.

3

4                        **II.    STANDARDS OF REVIEW**

5            This Court reviews the dismissal of a complaint pursuant to Fed. R. Civ. P. 12(b)(6)

6    de novo.  *Thacker v. FCC (In re Magnacom Wireless, LLC)*, 503 F.3d 984, 990 (9th Cir.

7    2007).  "Denial of leave to amend is reviewed for an abuse of discretion." *Gompper v.*

8    *VISX, Inc.*, 298 F.3d 893, 898 (9th Cir. 2002); *Lopez v. Smith*, 203 F.3d 1122, 1130 (9th Cir.

9    2000) (en banc).

10

11                   **III.    STATEMENT OF THE FACTS**

12           In its statement of facts, AlphaMed presents a rehash of assertions previously

13   rejected by numerous courts.  Fortunately, the Bankruptcy Court below took judicial notice

14   of facts that tell the whole story.  (AA 158.)  The following Statement of Facts derives from

15   *both* (1) the allegations in AlphaMed's complaint *and* (2) the facts of which the Bankruptcy

16   Court took judicial notice.

17   **A.        The Origins of the Dispute between Arriva and AlphaMed**

18           In the early 1990s, Dr. Allan Wachter and John Lezdey invented and jointly acquired

19   patents for medical technologies related to the treatment of inflammation. (AA 184.)  In

20   1992, Dr. Wachter and Lezdey transferred their interests in the patents to Sonoran Desert

21   Chemicals Ltd. ("Sonoran").  Sonoran was 50% owned by Wachter, and 50% owned by

22   John Lezdey.  (AA 184.)  Shortly thereafter, Dr. Wachter and Lezdey formed Protease

23   Sciences, Inc. ("PSI"), authorizing it to enter licensing agreements on behalf of Sonoran.

24

25

26

27

28

W02-WEST:5TIP1\400889439.1                                                          APPELLEE'S BRIEF

**B.    The Arizona Court Finds Arriva's Protease License to Be Valid**

On April 16, 1998, PSI licensed the Protease License[1] to Arriva. (AA 184.) In 1999, Lezdey began questioning the validity of Arriva's Protease License. To protect its rights, Arriva gave Dr. Wachter financial support in filing suit against John, Darren, and Jarett Lezdey, J&D Science, Inc. and J.L. Technology Ltd. (AA 347.) After an evidentiary hearing, on February 2, 2000, the Arizona Superior Court for Maricopa County (the "Arizona Court") found Arriva's Protease License to be valid. (AA 356.) The Arizona Court then preliminarily enjoined (the "Preliminary Injunction") all the defendants and "any other persons acting for them or with them" from "acting or speaking, or purporting to act or speak, on behalf of [PSI] or Sonoran without Plaintiff's [Dr. Wachter's] express consent. (AA 358.) Later, on February 22, 2002, the Arizona Court renewed its finding concerning the Protease License (AA 171 ¶ 61) and entered a permanent injunction (the "Permanent Injunction") against Darren Lezdey, Jarret Lezdey and J.L. Technology, L.P. The Permanent Injunction enjoined those parties "and any other persons or entities acting in concert with them" from "acting or speaking, or purporting to act or speak, on behalf of" PSI or Sonoran without Dr. Wachter's "express written consent." (AA 175.) Further, the Permanent Injunction enjoined the same parties "and any other persons or entities acting in concert with them" from "taking any actions in any capacity to give effect to (or to draw to themselves or any entity, including AlphaMed Pharmaceuticals, Inc., any benefit from) the invalid License Agreements between" PSI and AlphaMed. (AA175.)

**C.    District Judge Illston Acknowledges the Arizona Court's Findings**

In May 1999, Arriva filed a complaint in this Court, before United States District Judge Illston. (AA 185.) In that case, District Judge Illston ultimately granted Arriva's

---

[1] The Protease License grants Arriva access to certain patents that concern the use of recombinant alpha 1-antitrypsin (commonly called "rAAT") in a specified field of use. That field of use includes all respiratory, dermatological and antiviral indications. (AA 6 et seq.) AlphaMed asserts the Protease License is the "single most critical claimed asset of Arriva and the backbone of its reorganization. Without this asset, Arriva's entire business enterprise is in jeopardy." (AOB 12:13-14.) This is absolutely untrue; Arriva maintains a diverse portfolio of intellectual property and other assets. Unsurprisingly, AlphaMed cites no support in the record for this assertion, which, in any event, is irrelevant here.

-4-

1  motion to dismiss the defendants' counterclaims for declaratory relief.  (AA 195.)  In

2  reaching this conclusion, District Judge Illston noted the validity of Arriva's Protease

3  License:

> Lezdey knew the material terms and conditions of the
> [Protease] License Agreement, advised Wachter that the
> Agreement was valid, and approved Wachter's execution
> thereof.

7  (AA 186.)  In addition, District Judge Illston noted the Arizona Court had determined

8  "Arriva's Protease License is 'valid and enforceable.'"  (AA 186.)  District Judge Illston

9  further observed Lezdey's disregard of the Arizona Court's contempt orders.  (AA 188.)

10  Applying the *Brilhart* doctrine, District Judge Illston found that after sustaining "several

11  adverse rulings in Arizona," the Lezdeys engaged in forum shopping—"opportunistic

12  maneuvering" of the kind "the Ninth Circuit has discouraged."  (AA 193.)

13      Finally, District Judge Illston held that the Arizona Court, in holding Arriva's

14  Protease License was valid, rendered all other judicial proceedings duplicative.  District

15  Judge Illston held:

> The Court concludes that the Protease/Arriva license issue has
> already been extensively litigated in the Arizona court, and that
> any litigation in this court would be duplicative.  The license's
> validity was a specific finding in the court's final judgment and
> permanent injunction against Lezdey's sons and J.L.
> Technology and in its preliminary injunction order against
> Lezdey.

20  (AA 190.)

21  **D.    The Florida Court Enters Judgment as a Matter of Law in favor of Arriva**

22      In 2003, AlphaMed filed suit in diversity against Arriva in the United States District

23  Court for the Southern District of Florida.  In 2005, the lawsuit proceeded to trial on three

24  claims: (1) misappropriation of trade secrets, (2) tortious interference with business and (3)

25  unfair competition.  *See AlphaMed v. Arriva*, 432 F. Supp. 2d 1319, 1329 (S.D. Fla. 2006).

26  Because the trial involved only these three issues, the Florida District Court did not—and

27  could not—determine the ownership of the Protease License.  After the jury found in favor

28

-5-

APPELLEE'S BRIEF

of AlphaMed, District Judge Altonaga entered judgment as a matter of law in favor of

Arriva.  In the final judgment, District Judge Altonaga held:

> [I]t is hereby ORDERED AND ADJUDGED that judgment is entered in favor of [Arriva] . . . and against Plaintiff AlphaMed Pharmaceuticals Corp.  Plaintiff shall take nothing from Defendants, and the action is DISMISSED on the merits.

(AA 198.)  In the course of her opinion, District Judge Altonaga stated that the Arizona

Court had resolved the issue of the validity of the Protease License, and Dr. Wachter's

authority to assign it: "John Lezdey's assertion that the license agreement was executed

without his approval is contradicted by a permanent injunction entered in *Wachter v.*

*Lezdey*, Case No. CV-99-009335 . . . ."  *AlphaMed Pharms. Corp. v. Arriva Pharms., Inc.*,

432 F. Supp. 2d at 1324, n.6.

### E.    Arriva's Bankruptcy Filing and Appeal

On August 29, 2007, Arriva filed its Chapter 11 bankruptcy petition in the United

States Bankruptcy Court for the Northern District of California.  On January 30, 2008, the

Bankruptcy Court entered the Plan Confirmation Order, confirming Arriva's Plan

Confirmation Order.  AlphaMed appealed the Plan Confirmation Order to this Court.  On

May 27, 2008, this Court dismissed the appeal of the Plan Confirmation Order as moot.[2]

### F.    The Bankruptcy Court Dismisses with Prejudice AlphaMed's Adversary Action

#### 1.    *The Adversary Proceeding and Its Dismissal*

On October 30, 2007, during Arriva's bankruptcy proceedings, AlphaMed filed an

adversary complaint against Arriva in the Bankruptcy Court, seeking a declaration that the

Protease License did not belong to Arriva.  (AA 59.)  AlphaMed's complaint was unusual:

AlphaMed did not seek a determination that the Protease License belonged to *AlphaMed*.

Instead, AlphaMed asked the Bankruptcy Court to conclude the Protease License *did not*

---

[2] See Case No. 08-01279-SI, docket entries 19 and 20.

-6-

belong to *Arriva*.[3]  In support of its standing to seek such unusual relief, AlphaMed alleged an unelaborated "interest" in the Protease License in two separate paragraphs.  Paragraph 5 of the complaint stated: "AlphaMed is a creditor of the Debtor, and has an interest in the intellectual property that is the subject of the purported license agreement and this adversary proceeding."  (AA 60.)  Equally vague, paragraph 11 stated: "The Debtor asserts an interest in certain property that is owned by Lezdey as inventor, Sonoran and by AlphaMed by assignment."  (AA 62.)

Arriva moved to dismiss the complaint.  (AA 139.)  In so moving, Arriva argued (1) AlphaMed failed to allege an interest in the Protease License sufficient to support its standing to bring the lawsuit; (2) the *Rooker-Feldman* doctrine barred the lawsuit; and (3) the Arizona Court's resolution of the dispositive issues precluded the lawsuit.

Bankruptcy Judge Jellen granted the motion, citing three independently sufficient bases for the dismissal.  First, Bankruptcy Judge Jellen held AlphaMed failed to allege the requisite standing to bring the adversary action.  Noting that a plaintiff must have suffered a "particularized injury" to have standing, Judge Jellen held:

> Here I don't think that there's been any particularized injury alleged at all by AlphaMed.  They're not trying to quiet their title to anything.  In fact, they disclaim any intent of trying to quiet their own title to an asset against the claim of the estate. ¶ They're not even seeking a ruling as to who, if anyone, might own the license of [Arriva].

(AA 514.)  Bankruptcy Judge Jellen supported this conclusion by reference to principles of bankruptcy law.  Judge Jellen held:

> If there were standing to assert such a cause of action it would lie in every single creditor in the estate.  And the law is that not every single creditor in the estate has the right to prosecute actions to determine what is and isn't property of the estate, rather under Bankruptcy Code Section 323(a), the trustee is the representative of the estate.

---

[3]  Accordingly, AlphaMed's complaint bore the unusual title, "Complaint for Declaratory Relief to Determine that a Purported License Agreement with Protease Science, Inc. Described in Debtor's Schedule B *Is Not Property of the Estate*."  (AA 59, emphasis added.)

(AA 515.)  Bankruptcy Judge Jellen further noted AlphaMed's vision of standing doctrines, if accepted, could create an unmanageable situation for any bankruptcy court presiding over a case with a single aggrieved creditor.

> If any creditor could bring actions that affect the estate, notwithstanding 323(a), then who has the authority to settle the case?  Who has the authority to appeal the case?

(AA 516.)

Second, Judge Jellen cited the *Rooker-Feldman* doctrine, noting that AlphaMed effectively was attempting to appeal its Arizona state court loss to a federal court.  Third, Judge Jellen determined the Arizona Court's resolution of the dispositive issues precluded AlphaMed's lawsuit.

### 2.    *Dismissal—with Prejudice and without Leave to Amend*

In its motion to dismiss, served on November 7, 2007, Arriva alerted AlphaMed to the deficiencies in its complaint, including AlphaMed's fatal failure to plead standing.  (AA 139.)  Three weeks later, on November 29, 2007, AlphaMed filed an opposition, but failed to explain in how it had standing to bring its adversary action, and failed to remedy the other deficiencies in its complaint.  (AA 258.)  On December 6, 2007, Arriva filed its reply brief; in that brief, Arriva duly showed AlphaMed and the Court that AlphaMed's opposition was unresponsive.  (SPA 8, n.1; SPA 9-10.)  Then, on December 11, 2007, a scant two days before the hearing on the motion, AlphaMed purported to file a surreply to Arriva's reply.  Still, AlphaMed did not explain or repair its failure to plead standing.  (SPA 47.)

In addition, after it filed its motion to dismiss, Arriva became aware of certain actions AlphaMed had taken to interfere unlawfully with property of Arriva's bankruptcy estate.  (SPA 8, n.1; SPA 20 et seq.)  Arriva argued these actions, coupled with AlphaMed's obstinate refusal to explain how it had standing, reflected bad faith and dilatory motive.  (SPA 9-10.)  In light of these facts, Arriva asked the Bankruptcy Court to dismiss the complaint with prejudice, and without leave to amend.  The Bankruptcy Court dismissed AlphaMed's complaint with prejudice, and without leave to amend.  (AA 463-64.)

**G.    This Appeal**

AlphaMed timely appealed to this Court.  AlphaMed also initiated four related appeals.  This Court dismissed as moot the first of these, 08-1279-SI, on May 27, 2008.  This Court has ordered briefing on the remaining appeals, 08-0691-SI, 08-0692-SI and 08-0693-SI, contemporaneous with the instant appeal.

## IV.    SUMMARY OF THE ARGUMENT

This Court should affirm the judgment of the Bankruptcy Court for three reasons.  First, AlphaMed failed to plead an interest in the Protease License sufficient to lend it standing to bring the underlying adversary action.  Second, the *Rooker-Feldman* doctrine required dismissal of the AlphaMed complaint.  Third, the Arizona Court's resolution of dispositive issues precluded AlphaMed's lawsuit.

## V.    ARGUMENT

**A.    The Bankruptcy Court Used the Correct Standard for Dismissal under Fed. R. Civ. P. 12(b)(6)**

AlphaMed agrees the Bankruptcy Court correctly articulated the applicable standard under Fed. R. Civ. P. 12(b)(6).  The allegations of material fact are taken as true and they are construed in the light most favorable to the plaintiff.  *See Parks School of Business, Inc. v. Symington*, 51 F.3d 1480, 1484 (9th Cir. 1995).  A court need not, however, accept any set of factual allegations that fail to meet a minimum threshold of plausibility.  *Bell Atl. Corp. v. Twombly*, 127 S.Ct. 1955, 1971 (2007).  Moreover, a court need not accept as true unreasonable inferences or conclusory legal allegations cast in the form of factual allegations.  *See Ileto v. Glock Inc.*, 349 F.3d 1191, 1200 (9th Cir. 2003).  Further, a court may take judicial notice of matters of public record outside the pleading without converting the motion into one for summary judgment.  *See MGIC Indemnity Corp. v. Weisman*, 803 F.2d 500, 504 (9th Cir. 1986).  In reviewing a motion to dismiss, the court primarily considers the allegations in the complaint, matters of public record, the record in the case,

1  and any exhibits to the complaint. *See Hal Roach Studios v. Richard Feiner & Co.*, 896

2  F.2d 1542, 1555 n. 19 (9th Cir. 1990); *see also Parrino v. FHP, Inc.*, 146 F.3d 699, 706 (9th

3  Cir. 1998) (plaintiffs may not survive "a Rule 12(b)(6) motion by deliberately omitting

4  references to documents upon which their claims are based."). The Bankruptcy Court

5  applied this standard, and in so doing, correctly dismissed AlphaMed's Complaint.

6  **B.    AlphaMed Lacked Standing to Bring Its Adversary Action**

7        *1.    The Constitutional Prerequisites of Standing*

8        Federal courts may hear only "actual cases and controversies." U.S. Const. Art. III,

9  § 2. "[I]n order to satisfy Article III, the plaintiff must show that he personally has suffered

10  some actual or threatened injury as a result of the challenged action." *Fisher v. Tucson*

11  *School Dist.*, 625 F.2d 834, 837 (9th Cir. 1980). "This constitutional minimum requires that

12  the plaintiff must have suffered or be threatened with a distinct and palpable injury *to*

13  *himself*." *Id* (emphasis added). "The personal nature of the injury is central to the standing

14  requirement." *Id*. Thus, the Supreme Court has emphasized that "[b]efore a stranger can

15  avail himself of the exceptional privilege of suing for a breach of an agreement, to which he

16  is not a party, he must, at least show that it was intended for his direct benefit." *German*

17  *Alliance Ins. Co. v. Home Water Supply Co.*, 226 U.S. 220, 230 (1912). *Bennett v. Spear*,

18  520 U.S. 154, 162 (1997) (confirming this same standard in the context of declaratory

19  judgment actions).[4]

20        *2.    AlphaMed Failed to Plead Standing Sufficiently*

21        In its complaint, AlphaMed alleged that Arriva's Protease License was invalid. In

22  support of this allegation, AlphaMed complained about the "invalid[ity]" of the licensing

23

---

24  [4] AlphaMed suggests the Bankruptcy Court cited inapposite cases in support of general
   principles of standing. For example, AlphaMed notes that *In re Fondiller*, 707 F.2d 441

25  (9th Cir. 1983) pertains to appellate standing, not standing to bring a lawsuit *ab initio*.
   (AOB, 15.) AlphaMed also notes *Kalb, Voorhis & Co. v. American Financial Corp.*,

26  8 F.3d 130 (2d Cir. 1993) and *In re Folks*, 211 B.R. 378 (9th Cir. BAP 2007) pertain to
   standing to bring alter ego claims. AlphaMed's points are irrelevant. The Bankruptcy

27  Court cited these cases for their statement of basic constitutional principles. These
   principles, in turn, apply in every case and at every stage of litigation. The Bankruptcy
   Court thus correctly cited these cases.

28

1   agreement between PSI and the Debtor.  (AA 61-64 ¶¶ 14-29.)  But nowhere in the

2   complaint did AlphaMed explain how it has any interest in the Protease License.  AlphaMed

3   did not, for example, allege that it was a party to the original licensing agreement or any

4   other licensing agreement.  Indeed, AlphaMed cited no fact or legal authority in support of

5   the astonishing proposition that it—admittedly a stranger to the contested licensing

6   agreement—had standing to seek a declaratory judgment.  Instead, AlphaMed simply

7   offered the bald, conclusory statement that it "has an interest in intellectual property" and

8   "asserts an interest in certain property that is owned . . . by AlphaMed by assignment."  (AA

9   60-61.)  As a result, AlphaMed failed to "show that [it] personally has suffered some actual

10  or threatened injury as a result of the challenged action." *Fisher v. Tucson School Dist.*, 625

11  F.2d at 837.  Accordingly, AlphaMed failed to plead standing sufficiently, and the

12  Bankruptcy Court correctly dismissed the adversary complaint.

13          3.      *AlphaMed Effectively Admitted It Lacked Standing*

14          Not only did AlphaMed fail to allege its interest in the Protease License, it also

15  effectively *admitted* it lacked standing to bring the adversary complaint.  Specifically, in its

16  opposition to the motion to dismiss, AlphaMed stated it "does not seek a determination the

17  [Protease] License is property of AlphaMed; it seeks a declaration that the License is not

18  property of the [bankruptcy] estate."  (AA 274.)  As Judge Jellen correctly concluded, this

19  concession was fatal:

20          Here I don't think that there's been any particularized injury
            alleged at all by AlphaMed.  They're not trying to quiet their
21          title to anything.  In fact, they disclaim any intent of trying to
            quiet their own title to an asset a against the claim of the estate.
22          ¶ They're not even seeking a ruling as to who, if anyone, might
            own the license of [Arriva].

23

24  (AA 514.)

25          And if AlphaMed does not seek a declaration that it has an interest in the Protease

26  License, then how does AlphaMed claim a "distinct and palpable injury *to [it]self*"?  *Tucson*

27  *School Dist.*, 625 F.2d at 837 (emphasis added).  Indeed, if AlphaMed, "a stranger" to the

28  licensing agreement, did indeed seek "the exceptional privilege of suing for a breach of an

-11-

1   agreement, to which [it] is not a party," then where in the complaint did AlphaMed show the

2   purported assignment "was intended for [its] direct benefit"?  *German Alliance Ins. Co.*, 226

3   U.S. at 230.

4       The answer to these two related, fundamental questions is clear: AlphaMed has

5   accomplished none of these things.  As a result, AlphaMed lacked standing to seek

6   declaratory relief.

7       *4.    AlphaMed's Vision of Standing, if Accepted, Would Contradict the*

8       *Congressionally Enacted Policies of Bankruptcy*

9       In its ruling on the motion to dismiss, the Bankruptcy Court correctly noted that

10  AlphaMed's vision of standing, if accepted, would contradict the Congressionally enacted

11  policies of bankruptcy.  It would, moreover, create a totally unmanageable situation for a

12  bankruptcy court.  Bankruptcy Judge Jellen held:

13
14      If there were standing to assert such a cause of action it would
        lie in every single creditor in the estate.  And the law is that not
        every single creditor in the estate has the right to prosecute
15      actions to determine what is and isn't property of the estate,
        rather under Bankruptcy Code Section 323(a), the trustee is the
16      representative of the estate.

17  (AA 515.)  The Ninth Circuit concurs with Bankruptcy Judge Jellen's assessment.  *See, e.g.,*

18  *Estate of Spirtos v. Superior Court Case*, 443 F.3d 1172, 1174 (9th Cir. 2006) ("We hold

19  that 11 U.S.C. § 323 vests the bankruptcy trustee with the exclusive right to sue on behalf of

20  the bankruptcy estate."); *Avalanche Mar., Ltd. v. Parekh (In re Parmatex, Inc.)*, 199 F.3d

21  1029 (9th Cir. 1999) (holding that a creditor has standing to bring a claim belonging to the

22  estate only where the trustee has stipulated that the creditor could sue on his behalf);  *In re*

23  *Van Dresser Corp.*, 128 F.3d 945 (6th Cir. 1997) (holding that a guarantor-shareholder does

24  not have standing to bring a suit against third-parties as these claims belong solely to the

25  trustee of the bankruptcy estate).

26      No doubt aware of these precedents, Bankruptcy Judge Jellen illustrated the problems

27  with AlphaMed's complaint by asking two rhetorical questions: "If any creditor could bring

28  actions that affect the estate, notwithstanding 323(a), then who has the authority to settle the

-12-

case? Who has the authority to appeal the case?" (AA 516.) In AlphaMed's overly expansive vision of standing, everyone would have such authority. But this would run afoul the principles of bankruptcy procedure and create a totally unmanageable situation for any bankruptcy court.

5.     *The Catholic Diocese Case Does Not Apply*

In its attempt to justify its overly expansive vision of standing doctrines, AlphaMed relies principally on *In re Catholic Bishop of Spokane*, 329 B.R. 304 (Bankr. E.D. Wash. 2005), *aff'd Committee of Tort Litigants v. The Catholic Diocese of Spokane*, Case No. 05-0274, 2006 U.S. Dist. LEXIS 6025 (E.D. Wash. Jan. 24, 2006).

This Court should reject *Catholic Bishop* for at least two reasons. First, in relying on *Catholic Bishop*, AlphaMed cites principally to an unpublished decision from the District Court for the Eastern District of Washington.[5] This decision does not reflect the law of the Ninth Circuit. Nor has any court in the Northern District of California adopted *Catholic Diocese*. Thus, were this Court to adopt the *Catholic Bishop* reasoning, it would adopt a totally unprecedented rule of bankruptcy standing never before used by any bankruptcy court in this District. This Court should decline to initiate a change in Ninth Circuit bankruptcy law.

Second, *Catholic Bishop* is distinguishable for reasons that are pivotal to the Congressionally enacted policies of bankruptcy. In *Catholic Bishop*, the Catholic Diocese of Spokane, Washington, filed for Chapter 11 bankruptcy. The Diocese listed on its schedules as "property held for another" a large selection of real and personal property "in the possession of other members of the diocesan family," such as schools, parishes and cemeteries. *Catholic Bishop*, 329 B.R. at 310. This property, the Diocese argued, did not constitute part of the bankruptcy estate. *Id*. In response, a U.S. Trustee-appointed "Tort Claimant's Committee" brought an action for declaratory relief against the parishes, seeking to establish their property as part of the bankruptcy estate. *Id*. at 311. The parishes moved

---

[5] AlphaMed also cites, in approximately four places, to a published bankruptcy court decision underlying the district court's unpublished decision.

1    to dismiss under Fed. R. Civ. P. 12(b)(6), contending the Committee lacked standing to

2    bring the declaratory relief action because they did not claim to own the property.

3        The Bankruptcy Court denied the motion.  "Some debtors," the Bankruptcy Court

4    explained, "have motives other than the repayment of creditors to the greatest extent

5    possible." *Catholic Bishop*, 329 B.R. at 314.  To prevent a preference or fraudulent transfer,

6    "[c]reditors' committees are specifically authorized to investigate the assets of debtors and

7    any other matters relevant to the reorganization case." *Catholic Bishop*, 329 B.R. at 314.

8    This includes filing adversary complaints with the permission of the bankruptcy court. *Id*

9    (citing 11 U.S.C. §§ 1103(c)(2), (c)(5), 1109(b)).  As a result, the Court held, the Committee

10   had standing to seek a declaration that diocesan property was part of the bankruptcy estate.

11       In this sense, *Catholic Bishop* followed a long line of cases in which courts have

12   permitted creditor's committees to bring actions to prevent the Debtor from doing harm to

13   the assets of the bankruptcy estate.  Indeed, it is well-established that a creditor's committee

14   may initiate adversary proceedings to "benefit the bankruptcy estate." *In re Feldhahn*,

15   92 B.R. 834, 835 (Bankr. D. Iowa 1988).  For example, a creditor's committee may bring an

16   action to impose a trust on the Debtor's corporate assets "wrongfully converted [or]

17   wasted . . . by those responsible for the corporation's control." *In re STN Enterprises, Inc.*,

18   73 B.R. 470, 486 (Bankr. D. Vt. 1987); *Warren v. Manufacturers Nat'l Bank*, 759 F.2d 542,

19   545 (6th Cir. 1985).  Similarly, a creditor's committee may bring an avoidance action, *In re

20   Feldhahn*, 92 B.R. at 835; a fraudulent conveyance action, *In re MortgageAmerica*, 714

21   F.2d 1266 (5th Cir. 1983); or an action for equitable subordination pursuant to 11 U.S.C.

22   510(c), *In re Tennessee Valley Steel Corp.*, 183 B.R. 795 (Bankr. E.D. Tenn. 1995).

23       But neither *Catholic Bishop* nor its kin apply to this case.  In *Catholic Bishop* and the

24   above-cited cases, a committee brought suit against the debtor because the debtor was doing

25   harm to the assets of the bankruptcy estate.  Here, by contrast, the former debtor Arriva was

26   committing no such harm—nor did AlphaMed allege Arriva committed any such harm.  To

27   the contrary, in the bankruptcy case, Arriva listed the Protease License as property of the

28   bankruptcy estate, and affirmatively took steps to *preserve* it for the benefit of all creditors.

1  AlphaMed did not file a claim to prevent a wrongful conversion, fraudulent conveyance,

2  waste, or any other action contemplated by § 1103(c) and supporting case law.  Instead,

3  AlphaMed has sought to accomplish precisely the opposite result: it wanted to take the

4  property *outside* the bankruptcy estate, beyond the reach of the Bankruptcy Court, for the

5  benefit of AlphaMed alone.  This is no technicality.  AlphaMed's selfish litigative ploy

6  plainly contradicts the purpose of § 1103(c) and supporting case law.

7       Rejecting AlphaMed's arguments below, Bankruptcy Judge Jellen adopted this very

8  same critique of *Catholic Bishop*.  As noted above, Bankruptcy Judge Jellen held:

9            I have two reasons for rejecting [*Catholic Bishop*]: ¶ First, it's
10           distinguishable on its facts.  There it was an action to bring in
             property of the estate, not to exclude property from the estate.
11           ¶ Second, at least the party in the *Catholic* [*Bishop*] case was a
             creditor where here, based on the record below as it now
12           stands, AlphaMed is not a creditor.

13  (AA 515.)  Bankruptcy Judge Jellen further held:

14           But, frankly, to carry it one step further, I just think that case
15           was wrongly decided.  And I'm not bound by it.  And I don't
             want to follow it.  ¶ The court did not cite Section 323(a) of
16           the Bankruptcy Code. . . .  It didn't cite any of the standing
             cases in bankruptcy cases that have been resolved by the Ninth
17           Circuit or the Ninth Circuit BAP.

18  (AA 515-16.)  In this way, the Bankruptcy Court thoroughly examined *Catholic Bishop* and

19  correctly determined it was both wrongly decided and did not apply in this case.

20       6.   *AlphaMed's "Party in Interest" Theory Is Also Inapplicable*

21       AlphaMed contends 11 U.S.C. § 1109(b) grants it standing to pursue its adversary

22  complaint.  This is incorrect for at least three reasons.

23       First, AlphaMed neglects that standing is a Constitutional doctrine that arises from

24  Article III of the U.S. Constitution.  Congress cannot revise the constitutional doctrine

25  through mere statutory enactment; thus § 1109(b) cannot grant standing where the

26  Constitution does not.  As noted supra, AlphaMed has failed to show the "constitutional

27  minimum requir[ing] that the plaintiff must have suffered or be threatened with a distinct

28

-15-

1   and palpable injury to himself." *Fisher v. Tucson School Dist.*, 625 F.2d at 837.  Hence

2   AlphaMed's resort to § 1109(b) merely begs the unavoidable constitutional question.

3       Second, AlphaMed mistakes the purpose of § 1109(b).  The purpose is not to extend

4   standing to parties who otherwise lack standing (indeed, this would be impossible).  Rather,

5   Congress intended the statute simply "to eliminate procedural barriers to full participation in

6   the reorganization proceedings by interested persons."  *Horowitz v. Kaplan*, 193 F.2d 64, 66

7   (1st Cir. 1951) (reviewing the predecessor statute to § 1109(b)).

8       Third, no matter what the purpose of § 1109(b), it does not alter the duties of the

9   Trustee.  As noted above, only the trustee (or the debtor-in-possession acting as Trustee) can

10  bring suits to determine property of the estate.  *Estate of Spirtos v. Superior Court Case*, 443

11  F.3d at 1174.  "In general, section 1109 does not vest a party in interest with the right to

12  usurp the trustee's role as representative of the estate with respect to the initiation of certain

13  types of litigation that belong to the estate."  1 Collier on Bankruptcy P 1109.05 (Alan N.

14  Resnick & Henry J. Summers, eds., 15th ed. rev. 2008.)  Indeed, the leading case holds that §

15  1109(b) generally does not even grant a creditor's *committee*—let alone a rogue creditor like

16  AlphaMed—the power to initiate actions over which the Trustee has exclusive power.

17  *Official Committee of Unsecured Creditors of Cybergenics Corp. ex rel. Cybergenics Corp.*

18  *v. Chinery*, 330 F.3d 548, 562 (3d Cir. 2003) (en banc) (holding that while § 1109(b)

19  "authorized creditors 'to be heard on all matters,'" it did not "authorize[] creditors to 'raise'

20  issues.")  To obtain such an extraordinary status to bring such lawsuits, a creditor's

21  committee must obtain special dispensation from the bankruptcy court, *id*., a privilege

22  AlphaMed did not request.  Hence, even if AlphaMed had constitutional standing to bring

23  the complaint (and it did not), § 1109(b) in no way lent it statutory authority to do so.

24      7.    *AlphaMed Cannot Validly Allege Any Such Interest Because, if Anything, It*

25            *Stands in the Shoes of PSI*

26      Any of AlphaMed's further attempts to plead standing would be futile.  This is

27  because AlphaMed cannot allege a valid interest in the Protease License even if it tried.

28  Crucially, the Arizona Court adjudged that Arriva possesses the only valid Protease License,

-16-

finding that "[t]he Protease-[Arriva] License Agreement [is] valid and enforceable."  (AA 356 ¶ 61.)  In addition, the Arizona Court found that the license purportedly held by PSI was "wholly void and of no effect."[6]  (AA 171-72 ¶¶ 62, 72.).  Hence, even assuming AlphaMed *did* somehow obtain a valid assignment of PSI's rights under the Protease License, then it still would lack standing to bring the complaint.  AlphaMed, as assignee, can have no more interest than PSI, and thus itself cannot allege any valid interest in the Protease License.  PSI has no valid interest.  Therefore, as a matter of judicially noticed fact, AlphaMed lacks any valid interest.

## C.    The Bankruptcy Court Correctly Dismissed AlphaMed's Complaint under the *Rooker-Feldman* Doctrine

### 1.    *The Rooker-Feldman Doctrine*

The *Rooker-Feldman* doctrine is a "well-established jurisdictional rule prohibiting federal courts from exercising appellate review over final state court judgments." *Henrichs v. Valley View Dev.*, 474 F.3d 609, 613 (9th Cir. 2007).  The doctrine requires dismissal of "cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." *Exxon Mobil Corp. v. Saudi Basic Indus.*, 544 U.S. 280, 284 (2005).[7]

The *Rooker-Feldman* doctrine also prohibits a district court from "exercising jurisdiction over a suit that is a *de facto* appeal from a state court judgment." *Reusser v. Wachovia Bank*, N.A., 525 F.3d 855, 855 (9th Cir. 2008) (O'Scannlain, J.) (quoting *Kougasian v. TMSL, Inc.*, 359 F.3d 1136, 1139 (9th Cir. 2004); *Mooney v. Boli*, 2007 U.S. Dist. LEXIS 40885 at *7 (N.D. Cal. May 21, 2007) (Illston, J.) (unpublished opinion)

---

[6] AlphaMed asserts the Florida jury found Arriva's Protease License was invalid.  This is misleading.  Judge Altonaga rendered JMOL in favor of Arriva.  This means the jury's conclusion reflected a legal impossibility, and thus no longer hold.  *See* Appellee's Brief in Case No. 08-0691, page 14 et seq.

[7] In *Exxon Mobil Corp. v. Saudi Basic Indus.*, 544 U.S. at 280 the Supreme Court synthesized *Rooker v. Fidelity Trust Co.*, 263 U.S. 413 (1923) and *D.C. Court of Appeals v. Feldman*, 460 U.S. 462 (1983).  "[W]hile the *Rooker-Feldman* doctrine has been pared back of late, it remains a viable jurisdictional bar." *Reusser*, 525 F.3d at 855, n.6.

-17-

1    (holding the *Rooker-Feldman* doctrine applies to *de facto* appeals from state court and that a

2    plaintiff cannot avoid *Rooker-Feldman* by merely reframing the state law claim).  A federal

3    action constitutes such a *de facto* appeal where "claims raised in the federal court action are

4    inextricably intertwined with the state court's decision such that the adjudication of the

5    federal claims would undercut the state ruling or require the district court to interpret the

6    application of state laws or procedural rules." *Reusser*, 525 F.3d at 855 (quoting *Bianchi v.*

7    *Rylaarsdam*, 334 F.3d 895, 898 (9th Cir. 2003) (internal quotation marks omitted)).

8             2.    *The Rooker-Feldman Doctrine Required Dismissal*

9             In this case, AlphaMed brought a complaint seeking disposition of the very same

10   issue already fully and finally resolved by the Arizona Court.  The Arizona Court concluded

11   Arriva owned the Protease License.  (AA 171-72 ¶¶ 62, 72; AA 356 ¶ 61.)  In its complaint,

12   AlphaMed seeks determination of the opposite: that the Protease License *does not* belong to

13   Arriva, and thus lies outside the bankruptcy estate.  (AA 59 et seq.)  Hence, the Arizona

14   Court's judgment, and Arriva's misbegotten adversary complaint, pertain to identical legal

15   issues and the very same Protease License.  To the extent they are not identical, they are at

16   least "inextricably intertwined . . . such that the adjudication of the federal claims would

17   undercut the state ruling or require the district court to interpret the application of state laws

18   or procedural rules." *Reusser*, 525 F.3d at 855 (quoting *Bianchi v. Rylaarsdam*, 334 F.3d

19   895, 898 (9th Cir. 2003) (internal quotation marks omitted)).  Accordingly, the *Rooker-*

20   *Feldman* doctrine properly applied, and the Bankruptcy Court correctly found it lacked

21   jurisdiction to consider AlphaMed's adversary complaint.

22            AlphaMed notes it was not a party to the Arizona Court's judgment.  (AOB 19.)  This

23   is disingenuous.  The Arizona Court explicitly bound AlphaMed by the Permanent

24   Injunction.  The Permanent Injunction enjoins the Darren Lezdey, Jarret Lezdey and J.L.

25   Technology, L.P "and any other persons or entities acting in concert with them" from

26   "taking any actions in any capacity to give effect to (or to draw to themselves *or any entity,*

27   *including AlphaMed Pharmaceuticals, Inc.,* any benefit from) the invalid License

28   Agreements between [PSI] and [AlphaMed.]"  (AA 175, emphasis added.)  The Permanent

-18-

1   Injunction (like the Preliminary Injunction) resolves on the merits the question of who owns

2   the Protease License.  (AA 171 ¶ 61.)  Challenging Arriva's ownership of the Protease

3   License in the Bankruptcy Court, AlphaMed brings a *de facto* appeal of the fully and finally

4   litigated Arizona state court loss to which it is bound.

5        AlphaMed also notes the *Rooker-Feldman* doctrine "does not bar actions by

6   nonparties."  (AOB 20.)  This, too, is an incomplete gloss.  In truth, the Supreme Court

7   specifically contemplated that courts may use the *Rooker-Feldman* doctrine to dismiss cases

8   brought by a nonparty to the state court action.  *Lance v. Dennis*, 126 S.Ct. 1198, 1202 n.2

9   (2006).  The Court provided this example: "where an estate takes a *de facto* appeal in a

10  district court of an earlier state decision involving the decedent."  *Id*.  In other words, the

11  Supreme Court held, a court may dismiss under *Rooker-Feldman* if the party appealing a

12  state court decision was a nonparty to the state court judgment in name only.

13       AlphaMed fits precisely that pattern.  AlphaMed is technically a nonparty to the

14  Arizona Court's judgment.  But the Arizona Court already held PSI lacked any valid interest

15  in the Protease License, and prohibited various entities from "taking any actions in any

16  capacity to give effect to (or to draw to themselves *or any entity, including AlphaMed*

17  *Pharmaceuticals, Inc.,* any benefit from) the invalid License Agreements between [PSI] and

18  [AlphaMed.]"  (AA 175, emphasis added.)  In this way, the Arizona Court's judgment binds

19  AlphaMed.  Thus, AlphaMed was a nonparty to the Arizona Litigation in name only, and

20  the *Rooker-Feldman* doctrine applies.

21       In addition, AlphaMed is synonymous with the Lezdeys, who were parties to the

22  Arizona Litigation.  The Lezdeys founded and incorporated AlphaMed.  (AA 172 ¶ 68.)

23  John, Jarett and Darren Lezdey served on AlphaMed's Board.  (AA 172 ¶ 68.)  Jarett and

24  Darren have served as AlphaMed's President and Vice President since the company's

25  creation and were among AlphaMed's initial stockholders.  (AA 172 ¶ 68.)  Indeed, in every

26  practical sense, the Lezdeys *are* AlphaMed.  (See also AA 183-85.)  In this way, too,

27  AlphaMed was a nonparty to the Arizona Litigation in name only, and the *Rooker-Feldman*

28  doctrine applies.

1    For these reasons, too, the Bankruptcy Court correctly applied the *Rooker-Feldman*

2    doctrine, finding it lacked jurisdiction to consider AlphaMed's complaint.

3    **D.    Full Faith and Credit Required Dismissal of AlphaMed's Complaint**

4        *1.    The Rule on Full Faith and Credit and Issue Preclusion*

5        Congress requires federal courts to respect the decisions of state courts.  The Full

6    Faith and Credit statute provides: The "judicial proceedings of any court of any such State . .

7    . shall have the same full faith and credit in every court within the United States." 28 U.S.C.

8    § 1738.  In this case, the Bankruptcy Court afforded full faith and credit to Arizona,[8]

9    concluding the Arizona Court's judgment precluded AlphaMed's complaint.

10        The doctrine of "[i]ssue preclusion refers to the effect of a judgment in foreclosing

11   relitigation of a matter that has been litigated and decided . . . . This effect also is referred to

12   as direct or collateral estoppel."  *Migra v. Warren City School Dist. Bd. of Education*, 465

13   U.S. 75, 77 (1984) (Blackmun, J.) (internal citation omitted).  The Supreme Court has held

14   that a "federal court must give to a state-court judgment the same preclusive effect as would

15   be given that judgment under the law of the State in which the judgment was rendered."

16   *Migra*, 465 U.S. at 81; *see also In re Nourbakhsh*, 162 B.R. 841, 843 (9th Cir. BAP 1994).

17   In so doing, a federal court may *not* look "to the common law or to the policies supporting

18   res judicata and collateral estoppel."  *In Allen v. McCurry*, 449 U.S. 90, 96 (1980).  To the

19   contrary, "Congress specifically has required all federal courts to give preclusive effect to

20   state-court judgments whenever the courts of the State from which the judgments emerged

21   would do so . . . ."  *Id.*; 28 USCS § 1738.

22        In Arizona, "[c]ollateral estoppel, or issue preclusion, applies when an issue was [1]

23   actually litigated in a previous proceeding, [2] there was a full and fair opportunity to

24   litigate the issue, [3] resolution of the issue was essential to the decision, [4] a valid and

25   _____

26   [8] AlphaMed purports the Bankruptcy Court attempted to give full faith and credit to the
     Florida Federal Court's judgment.  (AOB 24: 16-18.)  Nonsense.  The Bankruptcy Court
     clearly lent full faith and credit to the Arizona Court's judgment.  In mentioning the Florida

27   Court, Judge Jellen simply misspoke.  (AA 517: 19-20.)  This is obvious for a number of
     reasons, not least because the Full Faith and Credit Statute only governs relationship

28   between federal and state courts, not between federal districts.

APPELLEE'S BRIEF

final decision on the merits was entered, [5] and there is common identity of parties."

*Hullett v. Cousin*, 204 Ariz. 292, 298 (2003).  Significantly, a prior judgment will bind not

only parties to the previous lawsuit, but also their privies.  *Farmers Ins. Co. v. Vagnozzi*,

138 Ariz. 443, 446 (1983) (stating that under issue preclusion, "the determination of a

litigated fact or law which is essential to a valid and final judgment is conclusive between

the parties *or their privies* in a subsequent claim") (emphasis added); *Dressler v. Morrison*,

212 Ariz. 279, 282 (2006); *Wetzel v. Arizona State Real Estate Dep't*, 151 Ariz. 330, 332

(Ct. App. 1986); *Matusik v. Arizona Pub. Serv. Co.*, 141 Ariz. 1, 3 (Ct. App. 1984).

    To determine that there is "privity between a party and a non-party," a court must

find "a substantial identity of interests and a working or functional relationship in which the

interests of the non-party are presented and protected by the party in the litigation."  *Hall v.

Lalli*, 194 Ariz. 54, 57 (1999) (quoting *Phinisee v. Rogers*, 229 Mich. App. 547, 582 (1998))

(internal quotation marks and alterations omitted).  The party and non-party must have

common objectives, and not merely similar interests.  *Id.* at 58.  While Arizona case law is

sparse on the matter, the Ninth Circuit has found privity in a wide range of circumstances,

and especially between corporations and their major shareholders.  *See Montana v. United

States*, 440 U.S. 147, 154 (1979) (holding that "one . . . who assists in the prosecution or

defense of an action in aid of some interest of his own . . . is as much bound . . . as he would

be if he had been a party to the record") (citation and internal quotation marks omitted); *W.

Radio Servs. Co. v. Glickman*, 123 F.3d 1189, 1196 (9th Cir. 1997) (finding privity between

president and corporation); *In re Gottheiner*, 703 F.2d 1136, 1139-40 (9th Cir. 1983)

(finding privity between corporation and majority shareholder who controls corporation's

affairs); *Blitch Ford, Inc. v. MIC Prop & Cas. Ins. Corp.*, 90 F. Supp. 2d 1377, 1380 &

1381, n.2 (M.D. Ga. 2000) (finding privity between secretary/minority shareholder and

corporation for purposes of collateral estoppel).

    A judgment remains "final" for purposes of preclusion even if the losing party has

appealed.  The Ninth Circuit has held: "The established rule in the federal courts is that a

final judgment retains all of its res judicata consequences pending decision of the appeal . . .

1    ." *Tripati v. Henman*, 857 F.2d 1366, 1367 (9th Cir. 1988) (citing 18 C. Wright, A. Miller

2    & E. Cooper, Federal Practice and Procedure § 4433, at 308 (1981)); cf. *Campbell v. Szl*

3    *Props.*, 204 Ariz. 221, 222 (Ct. App. 2003) (holding that a lower court's decision is final for

4    preclusion purposes unless vacated).  Echoing the Ninth Circuit, the Restatement (Second)

5    of Judgments § 13 (1982) provides that a "judgment otherwise final remains so despite the

6    taking of an appeal."  Comment f.  Indeed, "finality is not affected" even if an appellate

7    court's stay "prevents [the judgment's] execution or enforcement."  *Id*; *Campbell v. Szl*

8    *Props.*, 204 Ariz. at 224 (citing with approval the Restatement 2d of Judgments § 13, and

9    noting that the "majority of jurisdictions follow the Restatement position").

10           2.    *AlphaMed's Challenge to the Protease License Is Precluded by the Arizona*

11                 *Court Judgment*

12           AlphaMed's complaint presented a textbook case of issue preclusion.  First,

13    AlphaMed advanced the same claims as were advanced in the Arizona Litigation.  In the

14    Arizona Litigation, the Arizona Court considered the Lezdeys' assertions that the Protease

15    License was not properly executed by PSI.  (AA 347 et seq.).  The Permanent Injunction

16    also makes this abundantly clear.  (AA 162 et seq.)  The Arizona Court held that the

17    "purported . . . licenses from [PSI] to AlphaMed are wholly void and of no effect."  (AA 173

18    ¶ 72.)  In its complaint, AlphaMed attempted to relitigate this very issue, seeking a

19    "declaratory judgment that the [Protease] License is not property of the estate and is

20    invalid," and therefore, that all patents subject to the License are invalid.  (AA 66-67.)

21           Second, there was a full and fair opportunity to litigate this same issue in the Arizona

22    Court.  The Arizona Court conducted a full trial, complete with evidentiary hearings and

23    testimony from the Lezdeys.  Third, resolution of the issue of validity of the Debtor's

24    Protease License was self-evidently essential to that earlier judgment.  Fourth, the Arizona

25    Litigation resulted in a valid and final decision on the merits.  After trial, the Arizona Court

26    made the Preliminary Injunction a Permanent Injunction (AA 162) and entered a money

27    judgment in favor of Dr. Wachter (AA 381).  This decision remains a "final judgment" for

28    the purposes of issue preclusion.  *Tripati*, 857 F.2d at 1367; *Campbell v. Szl Props.*, 204

Ariz. at 224; *City of Glendale v. Aldabbagh*, 189 Ariz. 140, 144 (Ariz. 1997) (See also SPA 381.)

Fifth, there is identity, in the form of privity, between Arizona Litigation defendant PSI and AlphaMed. If indeed AlphaMed intended to allege that it received an assignment of an interest in the Protease License from PSI, then AlphaMed as assignee stands in the shoes of PSI for purposes of the result of the Arizona Litigation. Even if there is no privity between AlphaMed and PSI, or if AlphaMed intended to allege that it obtained its interest from another source, this element is still present because there also is privity between AlphaMed and the Lezdeys. The Arizona Litigation included eight named defendants (and 100 Does), including John, Darren and Jarett Lezdey. The relationship between the Lezdeys and AlphaMed could not be closer. The Lezdeys founded and incorporated AlphaMed. (AA 172 ¶ 68.) John, Jarett and Darren Lezdey served on AlphaMed's Board. (AA 172 ¶ 68.) Jarett and Darren have served as AlphaMed's President and Vice President since the company's creation and are AlphaMed's initial stockholders. (AA 172 ¶ 68.) Indeed, in every practical sense, the Lezdeys *are* AlphaMed. (See also AA 183-85.) As a result, there was "a substantial identity of interests and a working or functional relationship," *Hall v. Lalli*, 194 Ariz. at 57, and a commonality of interests, *id.* at 58, between the Lezdeys, parties to the Arizona Litigation, and AlphaMed, the complainant below. As a result of that close working relationship, the interests of AlphaMed duly were "presented and protected," *id.*, in the Arizona Litigation.

Hence each of the elements of issue preclusion is present. This Court should affirm the Bankruptcy Court in affording full faith and credit, 28 U.S.C. § 1738, to the Arizona Court's judgment. Issue preclusion barred AlphaMed's adversary complaint, and the Bankruptcy Court properly dismissed.

W02-WEST:5TIP1\400889439.1

**E.    The Bankruptcy Court Did Not Abuse Its Discretion in Denying Leave to Amend**

In footnote 4 of its opening brief, AlphaMed asks this Court to reverse the Bankruptcy Court's denial of leave to amend. This Court should not grant such an extraordinary remedy.

AlphaMed's bad faith and dilatory tactics justified the Bankruptcy Court's discretionary decision to deny leave to amend. Of course, this Court reviews a bankruptcy court's denial of leave to amend for abuse of discretion. *Gompper v. VISX, Inc.*, 298 F.3d at 898; *Lopez v. Smith*, 203 F.3d at 1130 (en banc). Under this deferential standard, this Court must affirm the denial of leave to amend unless it left with (1) "a definite and firm conviction that the [bankruptcy] court committed a clear error of judgment . . . upon weighing the relevant factors, (2) the [bankruptcy] court applied the wrong law, or (3) the [bankruptcy] court rested its decision on clearly erroneous findings of fact." *Delay v. Gordon*, 475 F.3d 1039, 1043 (9th Cir. 2007).

Although a court may grant leave to amend in its discretion, *United Union of Roofers, etc. No. 40 v. Insurance Corp. of America*, 919 F.2d 1398, 1402 (9th Cir. 1990), factors such as "undue delay, bad faith, dilatory motive, repeated failure to cure deficiencies by previous amendments . . . and futility" militate strongly against granting such leave, *Moore v. Kayport Package Express*, 885 F.2d 531, 538 (9th Cir. 1989).

In this case, several of these factors were present. In its motion to dismiss, Arriva alerted AlphaMed to the deficiencies in its complaint, including AlphaMed's fatal failure to plead standing. (AA 139.) Three weeks later, on November 29, 2007, AlphaMed filed an opposition, but failed to explain in how it had standing to bring its adversary action, and failed to remedy the other deficiencies in its complaint. (AA 258.) On December 6, 2007, Arriva filed its reply brief; in that brief, Arriva duly showed AlphaMed and the Court that AlphaMed's opposition was unresponsive. (SPA 8, n1.; SPA 9-10.) Then, on December 11, 2007, a scant two days before the hearing on the motion (and in violation of the Federal

-24-

Rules), AlphaMed purported to file (in violation of the Federal Rules) a surreply to Arriva's reply. Still, AlphaMed did not explain or repair its failure to plead standing. (SPA 47.)

By that time, AlphaMed already had requested, and received, a continuance of the hearing on the motion to dismiss. (SPA 9:20-21.) Accordingly, Arriva argued any further delay in the adversary proceedings would cause prejudice to Arriva and all its creditors by further postponing the resolution of a question pivotal to the bankruptcy case. (SPA 9-10.) Arriva further argued the unusually vague wording of paragraphs 5 and 11 of the complaint suggested AlphaMed had intentionally obfuscated its so-called interest in intellectual property. (SPA 9.) Such obfuscation, in turn, indicated AlphaMed's bad faith effort to conjure the appearance of merit when none in fact existed. In any event, as outlined above, any amendment to the complaint would have been futile: AlphaMed simply lacked standing to bring the case. Finally, Arriva argued that certain actions AlphaMed had taken to interfere unlawfully with property of Arriva's bankruptcy estate also evidenced bad faith. (SPA 8, n.1; SPA 9-10; SPA 20 et seq.) Taking into account these factors, the Bankruptcy Court, exercising its broad discretion, denied AlphaMed leave to amend. (AA 463.) This was not an abuse of discretion. As a result, this Court should affirm the denial of leave to amend.

## VI.    CONCLUSION

For the reasons presented above, this Court should affirm the judgment of the Bankruptcy Court.

DATED:  June 25, 2008

SHEPPARD, MULLIN, RICHTER & HAMPTON LLP

By    _____/s/ Timothy C. Perry_____
                            TIMOTHY C. PERRY

Attorneys for
ARRIVA PHARMACEUTICALS, INC.

-26-