1  Squire, Sanders & Dempsey L.L.P.
   Douglas J. Rovens (State Bar # 106582)
2  *drovens@ssd.com*
   James E. McDonald (admitted *Pro Hac Vice*)
3  *jmcdonald@ssd.com*
   Daniel T. Balmat (State Bar # 230504)
4  *dbalmat@ssd.com*
   One Maritime Plaza, Suite 300
5  San Francisco, CA  94111
   Telephone:   +1.415.954.0383
6  Facsimile:    +1.415.393.9887

7  Attorneys for
   ALPHAMED PHARMACEUTICALS CORP.
8

9              UNITED STATES DISTRICT COURT

10           NORTHERN DISTRICT OF CALIFORNIA

11     On Appeal from the United States Bankruptcy Court
            for the Northern District of California
12                  Hon. Edward D. Jellen

13

| 14 | In re | Case No.  08-0825-SI |
|----|-------|---------------------|
| 15 | ARRIVA PHARMACEUTICALS, INC., a California Corporation, | (Appeal from Adversary Proceeding No. 07-4181 in Chapter 11 Bankruptcy Case No. 07-42767 AJ) |
| 16 | Debtor. | |
| 17 | Tax ID: 94-3287067 | **E-FILING** |
| 18 | AlphaMed Pharmaceuticals Corp., | **PLAINTIFF-APPELLANT ALPHAMED'S REPLY BRIEF IN APPEAL FROM BANKRUPTCY ADVERSARY PROCEEDING** |
| 19 | Plaintiff, | |
| 20 | vs. | **Hearing:** |
| 21 | Arriva Pharmaceuticals, Inc., | Date:     July 24, 2008 |
| 22 | Defendant. | Time:      3:30 p.m. Location: Courtroom 10, 19th Floor |
| 23 | | 450 Golden Gate Ave. San Francisco, CA 94102 |

24

25

26

27

28

SQUIRE, SANDERS &
DEMPSEY L.L.P.
One Maritime Plaza, Ste. 300
San Francisco, CA 94111

ALPHAMED'S REPLY BRIEF
Case No. 08-0825

1

**TABLE OF CONTENTS**

2

3    I.    INTRODUCTION ................................................................................................... 1

4    II.   ARGUMENT ......................................................................................................... 4

5          A.    AlphaMed Has Standing To Seek Declaratory Relief In This Case. .................. 4

6          B.    The Bankruptcy Court Erroneously Applied *Rooker-Feldman* As An
                 Alternative Ground For Dismissing AlphaMed's Complaint ........................... 7

7

8          C.    The Bankruptcy Court Erred In Dismissing AlphaMed's Complaint Under
                 Full Faith And Credit And Collateral Estoppel.................................................... 10

9    III.  CONCLUSION.................................................................................................... 15

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

SQUIRE, SANDERS &
DEMPSEY L.L.P.
One Maritime Plaza, Ste. 300
San Francisco, CA 94111

-i-    ALPHAMED'S REPLY BRIEF
       Case No. 08-0825

# TABLE OF AUTHORITIES

## Federal Cases

*AlphaMed Pharms. Corp. v. Arriva Pharms., Inc.,*
    432 F. Supp.2d 1319 (S.D. Fla. 2006) ..................................................................*passim*

*Appling v. State Farm Mut. Auto Ins. Co.,*
    340 F.3d 769 (9th Cir. 2003) ............................................................................... 13

*Bennett v. Yoshina,*
    140 F.3d 1218 (9th Cir. 1998) ............................................................................... 7

*Bianchi v. Rylaarsdam,*
    334 F.3d 895 (9th Cir. 2003) ............................................................................... 9

*In re Bledsoe,*
    350 B.R. 513 (Bankr. D. Or. 2006).......................................................................... 8

*Blonder-Tongue Lab., Inc. v. University of Ill. Found.,*
    402 U.S. 313 (1971)............................................................................................ 15

*In re Catholic Bishop of Spokane,*
    329 B.R. 304 (Bankr. D. Wash. 2005)............................................................... 1, 4, 5, 6

*Chaney Building Co. v. City of Tucson,*
    716 P.2d 28 (Ariz. 1986) ............................................................................... 12, 13, 14

*Church of Scientology v. Linberg,*
    529 F. Supp. 945 (C.D. Cal. 1981) ......................................................................... 14

*Collins v. D.R. Horton, Inc.,*
    505 F.3d 874 (9th Cir. 2007) ............................................................................... 13

*Committee of Tort Litigants v. The Catholic Diocese of Spokane,*
    2006 U.S. Dist. LEXIS 6025 (E.D. Wash. Jan. 24, 2006)........................................*passim*

*Corbett v. Manorcare of Am., Inc.,*
    126 P.3d 1027 (Ariz. 2006) ................................................................................. 15

*Exxon Mobil Corp. v. Saudi Basic Indus.,*
    544 U.S. 280 (2005)........................................................................................ 8, 10

*Fuller v. Hartford Accident & Indem. Co.,*
    601 P.2d 1360 (Ariz. Ct. App. 1979)....................................................................... 15

SQUIRE, SANDERS &
DEMPSEY L.L.P.
One Maritime Plaza, Ste. 300
San Francisco, CA 94111

ALPHAMED'S REPLY BRIEF
Case No. 08-0825

1

**TABLE OF AUTHORITIES**
(continued)

2

3                                                                                    **Page**

4    *Garcia v. General Motors Corp.,*
        990 P.2d 1069 (Ariz. App. 1999)........................................................................... 12, 13, 14
5

6    *In re Gruntz,*
        202 F.3d 1074 (9th Cir. 2007) ............................................................................... 7

7

8    *In re Harbin,*
        486 F.3d 510 (9th Cir. 2007) ................................................................................. 7

9    *Hart v. Yamaha-Parts Distributors, Inc.,*
        787 F.2d 1468 (11th Cir. 1986) ............................................................................. 13
10

11   *Herendeen v. U.S. Fidelity & Guar. Co.,*
        507 P.2d 1011 (Ariz. Ct. App. 1973)..................................................................... 15
12

13   *Hoblock v. Albany County Bd. of Elections,*
        422 F.3d 77 (2d Cir. 2005) .................................................................................... 7

14

15   *Hous. Rights Ctr. v. Sterling,*
        404 F. Supp. 2d 1179 (C.D. Cal. 2004) ................................................................ 9

16   *Johnson v. De Grandy,*
        512 U.S. 997 (1994)............................................................................................... 7
17

18   *Khanna v. State Bar of Cal.,*
        505 F. Supp. 2d 633 (N.D. Cal. 2007) .................................................................. 10
19

20   *Kougasian v. TMSL, Inc.,*
        359 F.3d 1136 (9th Cir. 2004) ............................................................................... 9, 10

21   *Lance v. Dennis,*
        546 U.S. 459 (2006)............................................................................................... 8, 9
22

23   *Lohman v. General American Life Ins. Co.,*
        478 F.2d 719 (8th Cir. 1973) ................................................................................. 15
24

25   *In re Lopez,*
        367 B.R. 99 (B.A.P. 9th Cir. 2007) ....................................................................... 7, 8, 10
26

27   *Mooney v. Boli,*
        2007 U.S. Dist. LEXIS 40885 (N.D. Cal. May 21, 2007) ..................................... 9

28

**SQUIRE, SANDERS &**
**DEMPSEY L.L.P.**
One Maritime Plaza, Ste. 300
San Francisco, CA 94111

ALPHAMED'S REPLY BRIEF
Case No. 08-0825

# TABLE OF AUTHORITIES
## (continued)

**Page**

*Noel v. Hall,*
     341 F.3d 1148 (9th Cir. 2003) ............................................................................... 7, 10

*In re Nordstrom,*
     8 Fed. Appx. 823 (9th Cir. 2001).................................................................... 13

*Official Comm. of Unsecured Creditors of Cybergenics Corp. ex rel*
  *Cybergenics Corp. v. Chinery,*
     330 F.3d 548 (3d Cir. 2003) .................................................................... 7

*Parklane Hosiery Co. v. Shore,*
     439 U.S. 322 (1979)........................................................................... 13, 15

*Reusser v. Wachovia Bank, N.A.,*
     525 F.3d 855 (9th Cir. 2008) .................................................................... 9

*S. Cal. Edison Co. v. Lynch,*
     307 F.3d 794 (9th Cir. 2002) .................................................................... 7

*Turner v. Crawford Square Apts., III, L.P.,*
     449 F.3d 542 (3d Cir. 2006) .................................................................... 9

*In re Van Dresser Corp.,*
     128 F.3d 945 (6th Cir. 1997) .................................................................... 5

*Webber v. Grindle Audio Productions, Inc.,*
     60 P.3d d224 (Ariz. Ct. App. 2002)............................................................ 14

**Federal Statutes**

11 U.S.C. § 1109.......................................................................................... 7

28 U.S.C. § 1738.......................................................................................... 10

SQUIRE, SANDERS &
DEMPSEY L.L.P.
One Maritime Plaza, Ste. 300
San Francisco, CA 94111

ALPHAMED'S REPLY BRIEF
Case No. 08-0825

SQUIRE, SANDERS &
DEMPSEY L.L.P.
One Maritime Plaza, Ste. 300
San Francisco, CA 94111

**I.    INTRODUCTION**

In this appeal, there are two primary issues which this Court must decide:

(1)    Did the Bankruptcy Court err as a matter of law in holding that AlphaMed lacks standing to seek a declaration that the alleged Protease/Arriva License is not property of the estate given that AlphaMed validly alleges an ownership interest in the intellectual property that is the subject of that purported license (as reflected in official records at the United States Patent and Trademark Office ("USPTO"))?

(2)    Is AlphaMed barred or precluded from filing its Complaint as a result of the Arizona State Action or the Florida Federal Action under either (a) the *Rooker-Feldman* doctrine, or (b) the collateral estoppel doctrine pursuant to the full faith and credit statute?

As demonstrated below, the Bankruptcy Court erred as a matter of law in holding that AlphaMed lacked standing to bring its claim for declaratory relief, and alternatively holding that the Arizona or Florida actions barred or precluded AlphaMed's claims.

**AlphaMed Has Standing To Seek Declaratory Relief**

The Bankruptcy Court erroneously rejected the well-reasoned *Catholic Diocese* opinions, which upheld a party's right to bring an adversary complaint seeking a declaration regarding whether or not certain assets are part of the bankruptcy estate. *See In re Catholic Bishop of Spokane*, 329 B.R. 304 (Bankr. D. Wash. 2005); *Committee of Tort Litigants v. The Catholic Diocese of Spokane*, 2006 U.S. Dist. LEXIS 6025 (E.D. Wash. Jan. 24, 2006). The *Catholic Diocese* opinions are directly on point and fully support AlphaMed's standing to seek a declaration that the alleged Protease/Arriva License is not property of Arriva's estate.

In its brief, Arriva suggests AlphaMed somehow has "refused to allege that it was the rightful owner of the Protease License." (Arriva Brief at 1). This is completely false. AlphaMed never "refused" to make such an allegation, and it certainly never "admitted it lacked standing," as Arriva wrongfully charges. Indeed, AlphaMed consistently has claimed that it has a valid ownership interest in the intellectual property that is the subject of the alleged Protease/Arriva License. As the official records from the USPTO reflect, Sonoran validly transferred the Sonoran Patents to AlphaMed in January 2007. (*See* Arriva's Appendix at 4, 24-26). For purposes of the

1    notice pleading requirements under the Federal Rules of Civil Procedure, it was sufficient for

2    AlphaMed to allege (as it did) that AlphaMed "has an interest in the intellectual property that is

3    the subject of the purported license agreement and this adversary proceeding," and that "[t]he

4    Debtor asserts an interest in certain property that is owned by [John] Lezdey as inventor, Sonoran

5    and by AlphaMed by assignment." (Appellant's Combined Appendix ("Apx.") at 060-061). No

6    additional allegations were necessary. Nor was AlphaMed required to seek an additional

7    declaration that it owned an interest in the patents underlying Arriva's purported license (as

8    opposed to simply a declaration that the interest was not property of the estate). After all,

9    Arriva's purported ownership interest was the only issue directly relevant to the administration of

10    Arriva's bankruptcy estate.[1]

## AlphaMed's Complaint Is Not Barred Or Precluded

12    Ultimately, Arriva's attack on the AlphaMed Complaint is not really based on a purported

13    failure by AlphaMed to allege its interest with sufficient specificity and plausibility. Rather,

14    Arriva's standing argument is based on the flawed premise that the Arizona State Action bars or

15    precludes AlphaMed's Complaint. It does not, and cannot.

16    First, there is no legal basis for dismissing the AlphaMed Complaint under the *Rooker-*

17    *Feldman* doctrine, as the Bankruptcy Court erroneously held. The *Rooker-Feldman* doctrine is a

18    very limited doctrine which strictly applies to losing parties from a prior state court proceeding—

19    *not* to "non-parties," and *not* to privies. In its opposition brief, Arriva admits (as it must) that

20    AlphaMed was not a party to the Arizona State Action. (Arriva Brief at 18-19). Nonetheless,

21    Arriva urges this Court to broadly expand the *Rooker-Feldman* doctrine so that it also can bar

22    *non-parties* to the earlier state court judgment. Arriva's novel argument must be rejected. There

23    is absolutely no support for such an unprecedented expansion of the *Rooker-Feldman* doctrine.

24    Indeed, Arriva does not cite a *single* case in which a court applied the *Rooker-Feldman* doctrine

25    against a non-party to a prior state action. The law is clear, and the Bankruptcy Court erred as a

26    matter of law by invoking the *Rooker-Feldman* doctrine to dismiss AlphaMed's Complaint.

27    _____

[1] To the extent the Bankruptcy Court believed that AlphaMed was required to seek
a declaration of ownership (and AlphaMed was not so required), the court should have granted
28    AlphaMed leave to amend.

SQUIRE, SANDERS &
DEMPSEY L.L.P.
One Maritime Plaza, Ste. 300
San Francisco, CA 94111

-2-                ALPHAMED'S REPLY BRIEF
Case No. 08-0825

1    Second, there is no legal basis for dismissing the AlphaMed Complaint under full faith

2    and credit and collateral estoppel.  Indeed, Judge Altonaga in the Florida Federal Action flatly

3    rejected the exact same argument that Arriva is pressing here, holding that the Arizona State

4    Action cannot have preclusive effect against AlphaMed, "a nonparty to that litigation."

5    *AlphaMed Pharms. Corp. v. Arriva Pharms., Inc.*, 432 F. Supp. 2d 1319, 1323 n.6 (S.D. Fla.

6    2006).[2]  Similarly, this Court (Illston, J., presiding) expressly recognized that even John Lezdey

7    would "have the opportunity to once again litigate the license issue in the upcoming trial against

8    him in Arizona state court."  (Apx. 190).  Two separate federal courts, in other words, already

9    have discounted the collateral estoppel effect of the Arizona State Action.

10    The Bankruptcy Court also properly recognized that AlphaMed could not be collaterally

11    estopped by the Arizona State Action because the requirements for invoking collateral estoppel

12    could not be satisfied (at least not without violating AlphaMed's due process rights).  Despite the

13    clear record, Arriva nevertheless asserts that the Bankruptcy Court did in fact give collateral

14    estoppel effect to the Arizona State Action pursuant to the full faith and credit statute, and that

15    Judge Jellen "simply misspoke" at the December 13, 2007 hearing when he said on the record

16    that he was giving full faith and credit to the Florida Federal Action (as opposed to the Arizona

17    State Action).  This is nonsense.  As explained below, it is crystal clear from the transcript that

18    Judge Jellen meant what he said, and he did not misspeak as Arriva now contends for the first

19    time.  Moreover, Arriva had multiple opportunities to correct the transcript for purposes of appeal

20    if it truly believed that Judge Jellen made a mistake, but Arriva remained silent.  Arriva's

21    revisionist approach to the appellate record should be rejected.

22    As demonstrated below, it is apparent why Arriva refuses to defend the Bankruptcy

23    Court's decision to give full faith and credit to the Florida Federal Action in order to dismiss

24    AlphaMed's Complaint.  That is because the Florida Federal Action *cannot* bar the AlphaMed

25

26    [2] In its brief in this case (Arriva Brief at 6), and in its briefs in Case Nos. 08-0691, 08-0692, and 08-0693, Arriva blatantly misconstrues the record.  Arriva asserts that Judge Altonaga viewed the purported findings in the Arizona State Action as determinative of the alleged

27    Protease/Arriva License when in fact she ruled just the opposite in rejecting Arriva's collateral estoppel argument (and this exact issue was decided against Arriva by the jury). *See AlphaMed*

28    *Pharms. Corp.*, 432 F. Supp. 2d at 1323 n.6.

SQUIRE, SANDERS &
DEMPSEY L.L.P.
One Maritime Plaza, Ste. 300
San Francisco, CA 94111

-3-

ALPHAMED'S REPLY BRIEF
Case No. 08-0825

1  Complaint as a matter of law, and the Bankruptcy Court erred in holding otherwise.  To the extent

2  the Florida Federal Action can have any effect in bankruptcy court, it would be to bar *Arriva* (not

3  AlphaMed) from re-litigating the validity of the Protease/Arriva License given that Arriva fully

4  and fairly litigated this issue against AlphaMed before a jury and suffered a loss.

5  For the reasons set forth below and in AlphaMed's opening brief, the Bankruptcy Court's

6  dismissal of the AlphaMed Complaint should be reversed.

7  **II.    ARGUMENT**

8  **A.    AlphaMed Has Standing To Seek Declaratory Relief In This Case.**

9  In its brief, Arriva does not dispute that there is a two-part analysis for determining

10  standing, as set forth by the bankruptcy court in *Catholic Diocese*:

11      (1)    Does the subject matter of the complaint present a justiciable controversy?

12      (2)    Does the person seeking the relief have a direct interest in the resolution of the
            controversy?

13

14  *Catholic Bishop of Spokane*, 329 B.R. at 316.  Arriva also does not dispute that the AlphaMed

15  Complaint sets forth a justiciable controversy.[3]  Thus, the only question is whether AlphaMed

16  alleged sufficient facts to demonstrate its direct interest in the resolution of the controversy.

17  The answer here is yes.  AlphaMed alleged that it had a direct interest in property that was

18  wrongfully included in Arriva's bankruptcy estate, and it sought a declaration that the property

19  was not part of the estate because it rightfully belongs to AlphaMed.  (Apx. at 060-061, 066).

20  Thus, unlike third parties or other strangers to the intellectual property at issue (who would not

21  have standing), AlphaMed has alleged a personal stake in the outcome of the bankruptcy

22  proceeding that is sufficient to satisfy the requirements for standing under Ninth Circuit law.

23

24       [3] Here, there clearly exists a live dispute over whether the alleged Protease/Arriva License
is property of the estate, and this is the type of controversy that is routinely decided by
bankruptcy courts.  *See Catholic Diocese*, 2006 U.S. Dist. LEXIS 6025, at *8 (recognizing that "it
25  is essential that the creditors and the court know what the assets of the estate are in order to vote
and rule upon a Chapter 11 reorganization plan.").  Indeed, on June 9, 2008, Arriva filed its own
26  declaratory relief action against AlphaMed in the bankruptcy court alleging that "an actual
controversy has arisen and now exists" between Arriva and AlphaMed, and claiming that the
27  alleged Protease/Arriva License is part of the bankruptcy estate.  *See Arriva Pharms., Inc. v.
AlphaMed Pharms. Corp., et al.*, Case No. 07-42767.  Arriva's new adversary action is simply the
28  flip side of the adversary action that AlphaMed filed in this case.

SQUIRE, SANDERS &
DEMPSEY L.L.P.
One Maritime Plaza, Ste. 300
San Francisco, CA 94111

-4-

ALPHAMED'S REPLY BRIEF
Case No. 08-0825

1    The facts of AlphaMed's case are remarkably similar to the *Catholic Diocese* case. There,

2    both the bankruptcy court and the district court, in two carefully-reasoned opinions, affirmed a

3    party's right to file an adversary action against a wrongfully motivated debtor in which the party

4    sought a declaration to determine whether or not certain assets are part of the bankruptcy estate.

5    Contrary to Arriva's assertions, *Catholic Diocese* did not announce some new rule of bankruptcy

6    standing at odds with Ninth Circuit law. To the contrary, the bankruptcy court in *Catholic*

7    *Diocese* cited cases from both the U.S. Supreme Court and the Ninth Circuit in thoroughly

8    analyzing the requirements for constitutional standing, and it simply applied those well-settled

9    principles of standing in the context of an adversary proceeding where a dispute existed over

10    certain alleged assets of the estate. *Catholic Bishop of Spokane*, 329 B.R. at 317. As the

11    bankruptcy court in *Catholic Diocese* properly recognized, "there can be no doubt that this is the

12    type of controversy which is to be addressed in a judicial proceeding." *Id.* at 316.

13    In rejecting *Catholic Diocese*, the bankruptcy court relied on cases that have nothing to do

14    with the right of a creditor to seek a declaration that a key asset is or is not part of the bankruptcy

15    estate. (*See* AlphaMed Opening Brief at 15-16). In its brief, Arriva likewise cites cases involving

16    completely distinct fact patterns and claims. (Arriva Brief at 11-12).[4] Arriva does not come

17    forward with a single case that dismisses an adversary complaint on standing grounds under facts

18    similar to those presented in *Catholic Diocese*.

19    Instead, in its brief, Arriva presents a skewed version of the facts from *Catholic Diocese*.

20    Arriva omits the material fact that *two* adversary actions were initiated in *Catholic Diocese*—one

21    by the creditors' committee, which the Arriva correctly notes, but also one by a single unsecured

22    creditor (similar to AlphaMed), which Arriva inexplicably fails to mention (just as it failed to

23    mention in its briefing before the bankruptcy court). Both adversary actions in *Catholic Diocese*

24    sought a declaration regarding whether certain assets were part of the bankruptcy estate, and both

25    were challenged by the debtor on the grounds that the plaintiffs (including both the individual

26    creditor and the creditors' committee) each lacked standing to seek the requested declaratory

27    _____

[4] Arriva's cited cases simply hold that the trustee has the "exclusive right to assert *the debtor's* claims," and are inapplicable to situations in which a creditor is bringing a claim against

28    the estate. *See In re Van Dresser Corp.*, 128 F.3d 945, 947 (6th Cir. 1997).

SQUIRE, SANDERS &
DEMPSEY L.L.P.
One Maritime Plaza, Ste. 300
San Francisco, CA 94111

-5-

ALPHAMED'S REPLY BRIEF
Case No. 08-0825

1    relief.  The debtor's challenge was rejected soundly by both the bankruptcy court and the district

2    court on appeal.  *See Catholic Diocese*, 2006 U.S. Dist. LEXIS 6025, at *16-*17.  In affirming

3    the bankruptcy court's denial of the motions to dismiss, the district court recognized that

4    "[c]learly it is essential that the assets of the debtor . . . be determined."  *Id.* at *9.  "[I]f the

5    actions had not been brought, there is no way the creditors and the Court could know what assets

6    are available for creditors' claims."  *Id.* at *17.

7         Thus, contrary to Arriva's suggestion (Arriva Brief at 14), *Catholic Diocese* does *not* limit

8    standing solely to creditors' committees.  Moreover, the court's decision in *Catholic Diocese* did

9    not turn on the fact that the creditors sought a determination that certain property was part of the

10   estate as opposed to a determination that it was outside of the estate.  The Bankruptcy Court erred

11   in attempting to distinguish *Catholic Diocese* on this basis.  (Apx. at 515).

12        In its opening brief, AlphaMed presented a hypothetical (which Arriva never addresses) in

13   which AlphaMed likened itself to the owner of the Joe Montana autographed football who

14   initiates an adversary proceeding seeking a declaration that the prized football does not belong to

15   the debtor, who wrongfully is claiming that the football is part of the bankrupt estate and thus is

16   subject to other creditors.  As AlphaMed demonstrated, the aggrieved football owner clearly has

17   standing to seek declaratory relief to protect its ownership rights against the wrongfully motivated

18   debtor (who would never bring an action to challenge its own claimed asset).  AlphaMed is no

19   different than the football owner in the hypothetical.  It has standing to seek declaratory relief.

20        Ultimately, the Bankruptcy Court's ruling on AlphaMed's standing is fundamentally

21   flawed.  If only the debtor in possession has standing to bring an action to determine whether or

22   not a key claimed asset is property of the bankruptcy estate (as the Bankruptcy Court concluded,

23   Apx. at 516), this would allow a dishonest and improperly motivated debtor to profit from its

24   wrongful behavior, thereby undermining the goals and policies of bankruptcy law.  *See Catholic*

25   *Bishop of Spokane*, 329 B.R. at 314.  To prevent a party such as AlphaMed from disputing that an

26   asset is in the estate would be to allow the debtor to co-opt assets with impunity.  Such a narrow

27   view of standing was expressly (and properly) rejected in *Catholic Diocese*.  This Court likewise

28   / / /

SQUIRE, SANDERS &
DEMPSEY L.L.P.
One Maritime Plaza, Ste. 300
San Francisco, CA 94111

-6-

ALPHAMED'S REPLY BRIEF
Case No. 08-0825

1    should reject the narrow view of standing adopted by the Bankruptcy Court by reversing the

2    Bankruptcy Court's dismissal of AlphaMed's Complaint on standing grounds.[5]

3    **B.    The Bankruptcy Court Erroneously Applied *Rooker-Feldman* As An Alternative Ground For Dismissing AlphaMed's Complaint.**

4

5        The Bankruptcy Court also erred in alternatively holding that "AlphaMed is, indeed,

6    subject to the *Rooker-Feldman* doctrine." (Apx. at 517). The law is clear that the *Rooker-*

7    *Feldman* doctrine applies only to losing parties to the prior state court proceeding—not to non-

8    parties, and not to privies. AlphaMed is not a losing party seeking to appeal or overturn an

9    unfavorable state court judgment against it. Thus, as a matter of law, AlphaMed cannot be barred

10   from litigating the invalidity of the purported Protease/Arriva License.

11       Courts across the country have repeatedly and uniformly held that the *Rooker-Feldman*

12   doctrine applies only to losing parties in state court, and is inapplicable against non-parties to the

13   prior state action.[6] Indeed, the Supreme Court recently confirmed that *Rooker-Feldman* is strictly

14       [5] As AlphaMed further demonstrated in its opening brief, AlphaMed has standing as a "party in interest" under 11 U.S.C. § 1109 because it has alleged both a financial interest and

15   practical stake in the outcome of this adversary proceeding. *See* 11 U.S.C. § 1109(b); *Catholic Diocese*, 2006 U.S. Dist. LEXIS 6025 at *9. In arguing that § 1109 does not support AlphaMed's

16   right to be heard in this case, Arriva relies on the Third Circuit's decision in *Official Comm. of Unsecured Creditors of Cybergenics Corp. ex rel. Cybergenics Corp. v. Chinery*, 330 F.3d 548,

17   562 (3d Cir. 2003) (en banc). But Arriva misrepresents the actual holding of this case. (Arriva Brief at 16). Arriva claims that the case holds that while § 1109(b) authorizes creditors to be

18   heard on all matters, it did not authorize creditors to "raise" issues. (Arriva Brief at 16). Not true. In fact, the Third Circuit in *Chinery* held that § 1109(b) *does* allow creditors to raise issues, in

19   contrast to previous bankruptcy provisions. *See Chinery*, 330 F.3d at 562.

20       [6] *See, e.g., Johnson v. De Grandy*, 512 U.S. 997, 1006 (1994) ("[T]he invocation of Rooker/Feldman is . . . inapt here, for unlike Rooker or Feldman, the [plaintiff] was not a party in

21   the state court."); *In re Harbin*, 486 F.3d 510, 519 (9th Cir. 2007) ("the *Rooker-Feldman* doctrine bars a losing party in state court . . . ."); *Hoblock v. Albany County Bd. of Elections*, 422 F.3d 77,

22   85 (2d Cir. 2005) (for *Rooker-Feldman* to apply, "the federal-court plaintiff must have lost in state court"); *Noel v. Hall*, 341 F.3d 1148, 1159 (9th Cir. 2003) ("*Rooker-Feldman* does not apply

23   to a federal court suit brought by a non-party to the state court suit."); *S. Cal. Edison Co. v. Lynch*, 307 F.3d 794, 805 (9th Cir. 2002) ("[t]he *Rooker-Feldman* doctrine does not bar the

24   exercise of federal court jurisdiction when the federal court litigant was not a party to the state court action"); *In re Gruntz*, 202 F.3d 1074, 1079 n.3 (9th Cir. 2000) (*Rooker-Feldman* is

25   "inapplicable to federal cases involving parties other than those before the state court"); *Bennett v. Yoshina*, 140 F.3d 1218, 1224 (9th Cir. 1998) ("the *Rooker/Feldman* doctrine applies only

26   when the federal plaintiff was a party to the state case"); *In re Lopez*, 367 B.R. 99, 104 (B.A.P. 9th Cir. 2007) (the *Rooker-Feldman* doctrine "does not bar actions by nonparties to the earlier

27   state-court judgment . . . .") (citation omitted); *In re Bledsoe*, 350 B.R. 513, 516 (Bankr. D. Or. 2006) ("[t]he doctrine applies only to individuals that were parties to the state-court proceeding;

28   nonparties to the state-court proceeding cannot be bound").

1    confined to "cases brought by state-court losers complaining of injuries caused by state-court

2    judgments rendered before the district court proceedings commenced and inviting district court

3    review and rejection of those judgments." *Exxon Mobil Corp. v. Saudi Basic Indus.*, 544 U.S.

4    280, 284 (2005).

5         In its brief, Arriva expressly concedes that AlphaMed was never a party to the Arizona

6    State Action, and therefore AlphaMed is not a losing party seeking to appeal or overturn an

7    unfavorable state court judgment against it.  Arriva nevertheless asserts that AlphaMed's status as

8    a non-party to the Arizona action is a mere "technicality" because AlphaMed purportedly "is

9    synonymous with the Lezdeys, who were parties to the Arizona Litigation," and thus AlphaMed

10   was a non-party "in name only."  (Arriva Brief at 19).  This argument fails as a matter of law.

11        Even if Arriva had submitted evidence demonstrating privity between AlphaMed and the

12   losing defendants in the Arizona State Action (and Arriva did not submit such evidence), Arriva

13   mistakenly ignores that the *Rooker-Feldman* doctrine *does not apply to privies*.  As the Supreme

14   Court recently made clear in *Lance v. Dennis*, 546 U.S. 459 (2006), "[t]he *Rooker-Feldman*

15   doctrine does not bar actions by nonparties to the earlier state-court judgment *simply because, for*

16   *purposes of preclusion law*, *they could be considered in privity with* a party to the judgment."

17   *Lance*, 546 U.S. at 466 (emphasis added); *see also In re Lopez*, 367 B.R. at 104 ("Whatever the

18   impact of privity principles on preclusion rules, *Rooker-Feldman* is not simply preclusion by

19   another name.") (citation omitted).  Thus, AlphaMed's relationship with any of the parties to the

20   Arizona State Action cannot serve as a basis for denying jurisdiction over AlphaMed's Complaint

21   in this case.  The fact that the *Rooker-Feldman* doctrine does not apply to those in privity with

22   parties from a prior state action only further confirms the fact that the doctrine is strictly limited

23   to state court losers and does not apply to non-parties to the prior state action.[7]

24        [7] Arriva cites dicta from a footnote in *Lance v. Dennis* to suggest that the Court held that
     the *Rooker-Feldman* doctrine can apply to a non-party such as AlphaMed (Arriva Brief at 16), but
25   the Court did *not* so hold.  Quite the opposite, the Court in *Lance* made clear that "*Rooker-
     Feldman* is not simply preclusion by another name" and that "[t]he *Rooker-Feldman* doctrine
26   *does not bar actions by nonparties to the earlier state-court judgment . . . .*"  *Lance*, 546 U.S. at
     466.  The Court in *Lance* refused to apply the *Rooker-Feldman* doctrine because the plaintiffs in
27   that case were not parties to an underlying state court proceeding.  *Id.* at 464-67.  Clearly, *Lance*
     does not support Arriva's argument for an unprecedented expansion of *Rooker-Feldman*.

28

SQUIRE, SANDERS &
DEMPSEY L.L.P.
One Maritime Plaza, Ste. 300
San Francisco, CA 94111

-8-

ALPHAMED'S REPLY BRIEF
Case No. 08-0825

1    In addition to its misguided effort to expand the scope of the *Rooker-Feldman* doctrine by

2    relying on principles of privity, Arriva claims that the *Rooker-Feldman* doctrine applies in this

3    case because the AlphaMed Complaint purportedly constitutes a "de facto appeal" of the Arizona

4    State Action.  Once again, Arriva's argument misconceives the *Rooker-Feldman* doctrine.

5    A careful review of Arriva's cited cases addressing "de facto appeals" from a prior state

6    court judgment reveals that each of those cases involved a party who actually lost in the prior

7    state court proceeding.[8]  Not a single one of those cases applied the *Rooker-Feldman* doctrine

8    against a non-party to the prior state court action, as Arriva is seeking to do in this case against

9    AlphaMed.  In fact, Arriva does not a cite a single case *anywhere* in its brief in which *any* court

10   applied the *Rooker-Feldman* doctrine against a non-party to a prior state court action.

11   Arriva's discussion of "de facto appeals" ultimately is misleading.  No one disputes that a

12   state court loser should not be able to avoid application of the *Rooker-Feldman* doctrine simply

13   by reframing a state law claim that it previously litigated and lost in a prior state court

14   proceeding.  *See, e.g., Mooney v. Boli*, 2007 U.S. Dist. LEXIS 40885, at * 7 (N.D. Cal. May 21,

15   2007) ("Plaintiff cannot avoid the *Rooker-Feldman* doctrine by framing his challenge as a

16   constitutional one.") (Illston, J.).  The notion of prohibiting "de facto appeals," however, does *not*

17   dispense with the requirement that the party must have lost in state court; a non-party to a prior

18   state court proceeding cannot be bound by the *Rooker-Feldman* doctrine simply because the non-

19   party is asserting a claim that is similar to one lost by *others* to the prior action.[9]  Again, not a

20   single case cited by Arriva supports the application of the *Rooker-Feldman* doctrine against a

21   non-party to a prior state court judgment (like AlphaMed in this case).

22   [8] *See Reusser v. Wachovia Bank, N.A.*, 525 F.3d 855, 859-60 (9th Cir. 2008) (involving
state court losers seeking review of state court judgment against them); *Bianchi v. Rylaarsdam*,
23   334 F.3d 895, 898-99 (9th Cir. 2003) (involving plaintiff who was a losing party to the prior state
action) ; *Mooney v. Boli*, 2007 U.S. Dist. LEXIS 40885, at *7 (N.D. Cal. May 21, 2007) (same);
24   *see also Kougasian v. TMSL, Inc.*, 359 F.3d 1136, 1140 (9th Cir. 2004) (concluding that the
*Rooker-Feldman* doctrine was inapplicable).

25

26   [9] *See Turner v. Crawford Square Apts. III, L.P.*, 449 F.3d 542, 547-48 (3d Cir. 2006) ("a
district court is not divested of subject-matter jurisdiction [by *Rooker-Feldman*] simply because a
party attempts to litigate in federal court a matter previously litigated in state court"); *Hous.*
27   *Rights Ctr. v. Sterling*, 404 F. Supp. 2d 1179, 1187 (C.D. Cal. 2004) ("The *Rooker-Feldman*
doctrine does not apply where, as here, a plaintiff asserts an independent claim, even if it is
28   inconsistent with a state court judgment in an earlier case.") (emphasis in original).

SQUIRE, SANDERS &
DEMPSEY L.L.P.
One Maritime Plaza, Ste. 300
San Francisco, CA 94111

-9-                    ALPHAMED'S REPLY BRIEF
Case No. 08-0825

1    In the end, this Court should reject Arriva's invitation to radically expand the scope of the

2  *Rooker-Feldman* doctrine.  Arriva's novel arguments are directly at odds with the very limited

3  nature of the doctrine.[10]  As the Ninth Circuit properly has recognized, *Rooker-Feldman* does not

4  "give greater preclusive effect to state court judgments than the states themselves would give

5  those judgments."  *Kougasian*, 359 F.3d at 1143.  Indeed, "[s]uch super-preclusive effect would

6  violate the requirement of 28 U.S.C. § 1738 that federal courts give the same (not more and not

7  less) preclusive effect the rendering state courts would give to those judgments."  *Id.*[11]  Yet this is

8  exactly what Arriva is urging in this case.  Arriva is asking this Court to apply the *Rooker-*

9  *Feldman* doctrine to avoid application of full faith and credit and collateral estoppel, neither of

10  which can apply against AlphaMed in this case as a matter of law (as demonstrated next).

11    For these various reasons, the Bankruptcy Court erred in alternatively dismissing the

12  AlphaMed Complaint on *Rooker-Feldman* grounds.[12]

13  **C.    The Bankruptcy Court Erred In Dismissing AlphaMed's Complaint Under Full Faith And Credit And Collateral Estoppel.**

14

15    Finally, the Bankruptcy Court erred in dismissing the AlphaMed Complaint on the basis

16  of full faith and credit and collateral estoppel.  In reviewing the Bankruptcy Court's decision, it is

17  important to recognize what the bankruptcy court did do, and what it did not do.  The Bankruptcy

18  Court expressly applied 28 U.S.C. § 1738 to give full faith and credit to the Florida Federal

19    [10] *See Exxon Mobil*, 544 U.S. at 283 (admonishing that "the doctrine has sometimes been

20  construed to extend far beyond the contours of the *Rooker* and *Feldman* cases"); *Noel*, 341 F.3d
at 1158-59 ("The Supreme Court has never, outside of *Rooker* and *Feldman* themselves,
employed the doctrine to hold that a federal district court is without subject matter jurisdiction.");

21  *In re Lopez*, 367 B.R. at 103 ("The Supreme Court [has] severely constrained *Rooker-Feldman* . .
. ."); *Khanna v. State Bar of Cal.*, 505 F. Supp. 2d 633, 641 (N.D. Cal. 2007) ("caution[ing] that

22  the *Rooker-Feldman* doctrine needs to be narrowly construed").

23    [11] *See also Noel*, 341 F.3d at 1160 ("The Supreme Court has never construed the *Rooker-*

24  *Feldman* doctrine to give greater preclusive effect to a state court judgment in federal court than
the judgment would have under § 1738."); *In re Lopez*, 367 B.R. at 105 (recognizing that the

25  *Rooker-Feldman* doctrine "does not override or supplant issue and claim preclusion doctrines").

26    [12] Ultimately, the Bankruptcy Court's decision to apply the *Rooker-Feldman* doctrine was
surprising given that Arriva never substantively briefed this defense in its moving papers.
Arriva's counsel pressed this argument for the first time during the December 13, 2007 hearing

27  on Arriva's motion to dismiss.  (Apx. at 475-483).  AlphaMed respectfully submits that if
Arriva's *Rooker-Feldman* argument had been fully briefed and the requirements of the doctrine

28  carefully analyzed, the Bankruptcy Court would not have invoked the doctrine against AlphaMed.

SQUIRE, SANDERS &
DEMPSEY L.L.P.
One Maritime Plaza, Ste. 300
San Francisco, CA 94111

-10-    ALPHAMED'S REPLY BRIEF
Case No. 08-0825

1   Action in order to dismiss AlphaMed's Complaint (an erroneous ruling that even Arriva does not

2   seek to defend).  At the same time, Bankruptcy Court did *not* lend full faith and credit to the

3   Arizona State Action through the application of the collateral estoppel doctrine.  The Bankruptcy

4   Court properly recognized that AlphaMed's Complaint could not be precluded by the Arizona

5   State Action (at least not without violating AlphaMed's constitutional rights).[13]

6          Despite the clear record, Arriva nevertheless asserts that the Bankruptcy Court did in fact

7   give collateral estoppel effect to the Arizona State Action pursuant to the full faith and credit

8   statute.  Arriva claims that Judge Jellen "simply misspoke" when he said on the record that he

9   was giving full faith and credit to the Florida Federal Action.  According to Arriva, Judge Jellen

10  *really* meant to give full faith and credit to the *Arizona State Action* by applying the collateral

11  estoppel doctrine.  Arriva's startling attempt to revise the appellate record must be rejected.

12         It is clear from the transcript that Judge Jellen meant what he said: "And here I have to

13  give full faith and credit to the *Florida court's ruling*.  This of course, is all subject to

14  modification should *that ruling* be overturned *on appeal*."  (Apx. at 517) (emphasis added).  First,

15  the context of Judge Jellen's statement clearly indicates that he was in fact referring to the Florida

16  Federal Action.  The only current appeal between the parties at that time was the Eleventh Circuit

17  appeal, so Judge Jellen could not have been referring to the Arizona State Action.

18         Second, Arriva erroneously asserts that Judge Jellen must have meant the Arizona State

19  Action because it claims that "the Full Faith and Credit Statute only governs relationship between

20  federal and state courts, not between federal districts."  (Arriva Brief at 20 n.8).  Not so.  Federal

21  courts sitting in diversity are treated like state courts for purposes of full faith and credit, and thus

22  Judge Jellen could lend full faith and credit to the Florida Federal Action (a diversity action) by

23  applying principles of federal common law.  (*See* AlphaMed Opening Brief at 23).

24  ///

25

26        [13] Indeed, as noted previously, Judge Altonaga in the Florida Federal Action flatly rejected
the exact same argument that Arriva is pressing here, holding that the Arizona State Action
cannot have preclusive effect against AlphaMed, "a nonparty to that litigation." *AlphaMed*

27  *Pharms.*, 432 F. Supp. 2d at 1323 n.6.  Thus, it is Arriva which should be precluded under the
doctrine of collateral estoppel from relitigating the same collateral estoppel defense that it

28  previously litigated and lost.  (Apx. 276-278).

SQUIRE, SANDERS &
DEMPSEY L.L.P.
One Maritime Plaza, Ste. 300
San Francisco, CA 94111

-11-

ALPHAMED'S REPLY BRIEF
Case No. 08-0825

1          Third, and finally, it bears noting that Arriva's counsel was present at the hearing when

2     Judge Jellen made his statements for the record.  Arriva's counsel could have clarified the record

3     if Arriva truly believed that Judge Jellen "misspoke."  Judge Jellen's words, however, were met

4     with accepting silence.  Nor did Arriva seek to correct the transcript when it was later released.

5          It is clear why Arriva seeks to obscure the record and refuses to defend the bankruptcy

6     court's decision to give full faith and credit to the Florida Federal Action.  That is because the

7     Florida Federal Action cannot bar the AlphaMed Complaint as a matter of law.  After more than

8     three months of trial during which the validity of the alleged Protease/Arriva License was directly

9     in issue, the jury in the Florida Federal Action unanimously found that the alleged

10    Protease/Arriva License was *invalid* and that the Arriva *knew* that it was invalid.  (Apx. at 124-

11    38; *see also AlphaMed*, 432 F. Supp. 2d at 1332).  As AlphaMed argues in its concurrent appeal

12    in Case No. 08-0691, the Florida jury's finding of liability remains intact despite the District

13    Court's entry of JNOV for alleged failure to prove damages.  However, *even if* the jury finding

14    ultimately is nullified by the Eleventh Circuit on appeal, such a ruling would not serve as an

15    opposite finding that the alleged Protease/Arriva is valid.  The jury never made any such finding,

16    and no evidence supports such a finding.  Thus, to the extent the Florida Federal Action does have

17    any effect, it should be to bar Arriva from re-litigating the validity of the Protease/Arriva License

18    because Arriva fully and fairly litigated this issue against AlphaMed and lost.  The Bankruptcy

19    Court clearly erred in concluding that the outcome in the Florida Federal Action somehow

20    precluded AlphaMed from filing its Complaint seeking declaratory relief.

21         However, even assuming arguendo that the Bankruptcy Court truly meant to give full faith

22    and credit to the Arizona State Action (as Arriva persists), there nevertheless exists no legal basis

23    for giving collateral estoppel effect to the Arizona State Action against AlphaMed.[14]

24         [14] Under Arizona law, collateral estoppel (or issue preclusion) is applicable when (1) the
       issue or fact to be litigated was actually litigated in a previous suit, (2) the party against whom the
25     doctrine is to be invoked had a full and fair opportunity and motive to litigate the issue and
       actually did litigate it, (3) a valid and final decision on the merits was entered, (4) resolution of
26     the issue was essential to the decision, and (5) there is common identity of the parties.  *See
       Chaney Bldg. Co. v. City of Tucson,* 716 P.2d 28, 30 (Ariz. 1986); *Garcia v. Gen. Motors Corp.*,
27     990 P.2d 1069, 1073 (Ariz. Ct. App. 1999).  Arriva in this case seeks to invoke offensive non-
       mutual collateral estoppel, which is a version of the collateral estoppel doctrine that arises when a
28     plaintiff seeks to estop a defendant from relitigating an issue which the defendant previously

SQUIRE, SANDERS &
DEMPSEY L.L.P.
One Maritime Plaza, Ste. 300
San Francisco, CA 94111

-12-          ALPHAMED'S REPLY BRIEF
              Case No. 08-0825

1    **First**, AlphaMed was not a party to the Arizona State Action—a fact that is of paramount

2    importance, as the judge in the Florida Federal Action expressly recognized when she rejected the

3    same exact argument that Arriva once again is advancing here.  *See AlphaMed Pharms.*, 432 F.

4    Supp. 2d at 1323 n.6.  In fact, it is undisputed that none of the parties to the Arizona State Action

5    are parties in this lawsuit (unlike in the Florida Federal Action, which involved the same parties

6    as here).  Thus, there is no common identity of the parties (or claims) as required for collateral

7    estoppel to apply.  *See Chaney*, 716 P.2d at 30; *Garcia*, 990 P.2d at 1073.[15]

8    In an effort to ignore the inconvenient fact that AlphaMed was not a party to the Arizona

9    State Action and did not control the parties to that litigation (and its interests were not sufficiently

10   represented), Arriva conclusorily asserts that there is privity between AlphaMed and Protease.

11   (*See* Arriva Brief at 21).  Arriva, however, ignores the critical fact that Protease is not enjoined by

12   the Arizona injunctions.  (Apx 161-81, 347-59).  Thus, AlphaMed's relationship with Protease

13   cannot support Arriva's collateral estoppel defense, even assuming that Arriva could establish

14   that privity exists (and it does not and cannot).[16]

15   Furthermore, contrary to Arriva's conclusory claims, AlphaMed and the Lezdeys are not

16   in privity for purposes of collateral estoppel.  Shareholders of a corporation generally are not in

17   privity with the corporation unless they are found to be alter egos.[17]  None of Arriva's cited cases

18

19   litigated and lost against another plaintiff.  *See Appling v. State Farm Mut. Auto. Ins. Co.*, 340
     F.3d 769, 775 (9th Cir. 2003) (citing *Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 329 (1979)).
20   Courts have recognized that this form of collateral estoppel should be applied with great caution
     because it represents the outer limit of the collateral estoppel doctrine.  *See Collins v. D.R.
     Horton, Inc.*, 505 F.3d 874, 882 (9th Cir. 2007); *Appling v. State Farm Mut. Auto. Ins. Co.*, 340
21   F.3d 769, 776 (9th Cir. 2003).

22   [15] Wachter (along with Arriva, which was financing Wachter) never named AlphaMed nor
     sought leave to bring AlphaMed into the Arizona State Action as a defendant.  In addition, Arriva
23   strategically elected not to join the Arizona State Action as a plaintiff because it wanted to have a
     second bite at the apple in the event that Wachter lost.

24   [16] In a similar fashion, Arriva asserts that AlphaMed cannot validly allege standing
     because it "stands in the shoes of [Protease]" (Arriva at 16), but Arriva misleadingly omits the
25   critical fact that Wachter dropped all receivership claims against Protease (the only claims against
     Protease) in the Arizona State Action *before* any injunction was issued.  (Apx. 310-46).  Protease
26   is not enjoined by any of the Arizona injunctions, and no claim for injunctive relief was pending
     against Protease that would support an injunction.  (Apx. 161-81).

27   [17] *See Hart v. Yamaha-Parts Distributors, Inc.*, 787 F.2d 1468, 1473 (11th Cir. 1986); *In
     re Nordstrom*, 8 Fed. Appx. 823, 828 n.2 (9th Cir. 2001); *Church of Scientology v. Linberg*, 529
28   F. Supp. 945, 963 (C.D. Cal. 1981); Restatement (Second) of Judgments, § 59 (1982).

SQUIRE, SANDERS &
DEMPSEY L.L.P.
One Maritime Plaza, Ste. 300
San Francisco, CA 94111

-13-    ALPHAMED'S REPLY BRIEF
Case No. 08-0825

1    support a contrary holding as to AlphaMed. (Arriva Brief at 21). Here, the Lezdeys are not the

2    alter ego of AlphaMed, and Arriva does not contend otherwise. Nor did Arriva come forward

3    with any evidence in the bankruptcy court demonstrating that privity exists between the Lezdeys

4    and AlphaMed. There is simply no common identity of the parties, and thus collateral estoppel

5    cannot apply on this basis alone.[18]

6        **Second**, collateral estoppel also cannot apply to bar the AlphaMed Complaint because the

7    validity of the alleged Protease/Arriva License was ***not*** litigated on the merits in the Arizona State

8    Action. Under Arizona law, collateral estoppel can *only* be applied when the issue or fact to be

9    litigated was *actually* litigated in a previous suit, and the party against whom the doctrine is to be

10   invoked had a full and fair opportunity and motive to litigate the issue and actually did litigate it.

11   *See Chaney,* 716 P.2d at 30; *Garcia*, 990 P.2d at 1073.

12       While Arriva claims that the Arizona Court conducted a "full trial, complete with

13   evidentiary hearings and testimony from the Lezdeys" (Arriva Brief at 22), the true facts paint a

14   different picture. On January 9, 2002—a week **before** trial was scheduled to begin on January

15   15, 2002—the Arizona state court entered a liability judgment against Darren and Jarett Lezdey

16   as a sanction for refusing to appear for depositions. (Apx. 281). Accordingly, the subsequent

17   trial in Arizona proceeded on the issue of damages only. The factual findings in the Permanent

18   Injunction and Judgment thus were never litigated.

19       Although the precise issue of whether a discovery sanction constitutes a determination on

20   the merits has not been decided in Arizona, Arizona courts have held that a default judgment does

21   *not* meet the "actually litigated" requirement.[19] Other courts that have considered the issue have

22

23   [18] Arriva should be precluded by the collateral estoppel doctrine from even asserting its
     baseless privity arguments. In the Florida Federal Action, Arriva advanced virtually the same
24   privity arguments that it is advancing here. (Apx. 278). In holding that the Arizona State Action
     does not bind AlphaMed, "a nonparty to that litigation," *AlphaMed*, 432 F. Supp. 2d at 1323 n.6,
25   Judge Altonaga necessarily ruled that privity does not exist between the Arizona defendants and
     AlphaMed.

26   [19] *See Chaney*, 716 P.2d at 30 ("in the case of a judgment entered by confession, consent
     or default, none of the issues is actually litigated."); *Webber v. Grindle Audio Prods., Inc.*, 60
27   P.3d 224, 229 (Ariz. Ct. App. 2002) ("Arizona law provides that collateral estoppel or issue
     preclusion is only applicable when the issue or fact in question was actually litigated in the
28   previous suit. In the case of a default judgment, the issues were not actually litigated.").

SQUIRE, SANDERS &
DEMPSEY L.L.P.
One Maritime Plaza, Ste. 300
San Francisco, CA 94111

-14-

ALPHAMED'S REPLY BRIEF
Case No. 08-0825

1   determined that a dismissal entered as a discovery sanction does *not* constitute a judgment on the

2   merits.[20]  Here, because the validity of the alleged Protease/Arriva License was not actually

3   litigated in the Arizona State Action, that court's findings are not binding on AlphaMed

4      **Third**, collateral estoppel does not apply because the Arizona court's finding regarding

5   the validity of the alleged Protease/Arriva License was not essential to the judgment, as required

6   under Arizona law.[21]  Wachter in his individual capacity sued several of the Lezdeys in their

7   individual capacity for breach of fiduciary duties, and the validity of the alleged Protease/Arriva

8   License was not essential to the injunctions entered.  Collateral estoppel thus cannot apply.  *See*

9   *Fuller v. Hartford Accident & Indem. Co.*, 601 P.2d 1360, 1362 (Ariz. Ct. App. 1979) (finding

10  the defendant was not precluded from relitigating a non-essential fact to the judgment).

11     In the end, AlphaMed's Complaint is hardly a "textbook case of issue preclusion," as

12  Arriva claims.  For the various reasons set forth above, it would be a violation of due process to

13  apply collateral estoppel against AlphaMed.  *See Parklane Hosiery*, 439 U.S. at 327 n.7; *Blonder-*

14  *Tongue Lab., Inc. v. Univ. of Ill. Found.*, 402 U.S. 313, 329 (1971).

## III.    CONCLUSION

16     For the reasons set forth herein, and in AlphaMed's opening brief, the bankruptcy court's

17  decision should be reversed.

18  Dated:  July 7, 2008                Respectfully submitted,

19                                      Squire, Sanders & Dempsey L.L.P.

                                        By:_____/s/ Daniel T. Balmat_____
20                                              Daniel T. Balmat
                                        Attorneys for ALPHAMED PHARMACEUTICALS
21                                      CORP.

22  CLEVELAND/991199

---

23     [20] *See, e.g., Lohman v. Gen. Am. Life Ins. Co.*, 478 F.2d 719, 722 (8th Cir. 1973) (district
    court order dismissing case for failure of plaintiff to answer interrogatories was not a judgment on
24  the merits).  Indeed, one highly respected treatise has stated that "[t]he actual litigation question
    also may prove troubling when an issue is resolved as a sanction, not on the basis of trial and
25  findings.  Because there is no actual litigation or decision of the issue, it is better to deny issue
    preclusion."  Wright & Miller, 18 Federal Practice & Procedure, Juris. 2d § 4419.
26
       [21] *See Corbett v. Manorcare of Am. Inc.*, 146 P.3d 1027, 1033 (Ariz. Ct. App. 2006); *see*
27  *also Herendeen v. U.S. Fidelity & Guar. Co.*, 507 P.2d 1011, 1013 (Ariz. Ct. App. 1973) ("The
    estoppel of a judgment extends only to the question directly involved in the issue, and not to any
28  incidental or collateral matter, though it may have arisen and passed upon . . . .").

SQUIRE, SANDERS &
DEMPSEY L.L.P.
One Maritime Plaza, Ste. 300
San Francisco, CA 94111

-15-

ALPHAMED'S REPLY BRIEF
Case No. 08-0825